1  HENNIGAN, BENNETT & DORMAN LLP
   BRUCE BENNETT (Cal. Bar No. 105430)
2  JOSHUA M. MESTER (Cal. Bar No. 194783)
   MICHAEL C. SCHNEIDEREIT (Cal. Bar No. 234956)
3  865 South Figueroa Street, Suite 2900
   Los Angeles, California 90017
4  Telephone: (213) 694-1200
   Fax: (213) 694-1234
5

6  *Proposed Reorganization Counsel for*
   *Debtors and Debtors in Possession*
7

8          **UNITED STATES BANKRUPTCY COURT**
           **CENTRAL DISTRICT OF CALIFORNIA**
9              **SANTA ANA DIVISION**

10

11  *In re*                                   ) Case No. 8:09-21712-TA
                                              )
12  ☐ CALIFORNIA COASTAL                      ) Jointly Administered with Case Nos.
       COMMUNITIES, INC.                      ) 8:09-21713-TA; 8:09-21714-TA;
13  ☐ SIGNAL LANDMARK HOLDINGS INC.           ) 8:09-21715-TA; 8:09-21717-TA;
    ☐ SIGNAL LANDMARK                         ) 8:09-21718-TA; 8:09-21719-TA;
14  ☐ HEARTHSIDE HOLDINGS, INC.               ) 8:09-21720-TA; 8:09-21721-TA;
    ☐ HEARTHSIDE HOMES, INC.                  ) 8:09-21722-TA; 8:09-21723-TA
15  ☐ HHI CHANDLER, L.L.C.                    )
    ☐ HHI CHINO II, L.L.C.                    )
16  ☐ HHI CROSBY, L.L.C.                      ) Chapter 11
    ☐ HHI HELLMAN, L.L.C.                     )
17  ☐ HHI LANCASTER I, L.L.C.                 ) **EMERGENCY MOTION FOR ENTRY OF**
    ☐ HHI SENECA, L.L.C.                      ) **INTERIM ORDER (I) AUTHORIZING**
18                                            ) **USE OF CASH COLLATERAL;**
    ☒ All Debtors                             ) **(II) PROVIDING ADEQUATE**
19                                            ) **PROTECTION TO PREPETITION**
                                              ) **LENDERS; (III) MODIFYING THE**
20              Debtors.                       ) **AUTOMATIC STAY; AND**
                                              ) **(IV) SCHEDULING A FINAL HEARING;**
21                                            ) **DECLARATION OF RAYMOND J.**
                                              ) **PACINI AND MEMORANDUM OF**
22                                            ) **POINTS AND AUTHORITIES IN**
                                              ) **SUPPORT THEREOF**
23                                            )
                                              ) <u>Interim Hearing</u>
24                                            )
                                              ) Date:  November 10, 2009
25                                            ) Time:  11:00 a.m.
                                              ) Place: Courtroom "5B"
26                                            )        411 West Fourth Street
                                              )         Santa Ana, CA 92701-4593
27  _____  )

28

*(left margin vertical text:)* HENNIGAN, BENNETT & DORMAN LLP  LAWYERS  LOS ANGELES, CALIFORNIA

760775                              -1-

**TO THE HONORABLE THEODOR C. ALBERT AND ALL INTERESTED PARTIES:**

California Coastal Communities, Inc., et al., the debtors and debtors in possession herein (collectively, the "Debtors") hereby move this Court for entry of an order, in substantially the form of the proposed order (the "Interim Order") attached hereto as Exhibit A, (a) authorizing the Debtors to use Cash Collateral pursuant to sections 361 and 363 of the Bankruptcy Code on an interim basis; (b) approving the form of adequate protection provided to the Prepetition Lenders pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code; (c) modifying the automatic stay; (d) scheduling a Final Hearing on the Motion to consider entry of the Final Cash Collateral Order; and (e) granting related relief.

In support of this Application, the Debtors submit the accompanying Declaration Of Raymond J. Pacini" (the "Pacini Declaration") and respectfully represent as follows:

## STATEMENT PURSUANT TO LOCAL BANKRUPTCY RULE 4001-2

Local Bankruptcy Rule 4001-2 requires a debtor to highlight for the Court's scrutiny certain terms and provisions in a cash collateral order (the "Highlighted Provisions"). The following Highlighted Provisions represent important components to the Interim Order or Final Cash Collateral Order without which the Prepetition Agent and the Prepetition Lenders are unwilling to consent to the Debtors' use of the Cash Collateral:

| Description | Page |
|---|---|
| Cross-collateralization clauses.<br><br>[**Note:  Cross-collateralization is limited to the category of assets defined as "Catch-All Collateral".**] | Par. 7(c) on pgs. 17-18 |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's lien or debt.<br><br>[**Note:  Rights of parties in interest and Committee to challenge findings are preserved for 75 days after the Petition Date.**] | Pars. E and 18 |

760775

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

| Description | Page |
|---|---|
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's lien and liens held by persons who are not party to the stipulation, or which create a lien senior or equal to any existing lien.<br><br>**[Note:  Rights of parties in interest and Committee to challenge findings are preserved for 75 days after the Petition Date.]** | Par. E and 18 |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the debtor is authorized to use cash collateral or borrow funds.<br><br>**[Note:  Section 506(c) waiver is only requested in connection with the entry of a Final Order.]** | Par. 6 on pgs 15-16. |
| Releases of liability for the creditor's alleged prepetition torts or breaches of contract.<br><br>**[Note:  Rights of parties in interest and Committee to bring claims are preserved for 75 days after the Petition Date.]** | Pars. 18 and 21 |
| Waivers of avoidance actions arising under the Bankruptcy Code.<br><br>**[Note:  Rights of parties in interest and Committee to bring claims are preserved for 75 days after the Petition Date.]** | Pars. 18 and 21 |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | Par. 19 on pgs. 29-30. |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549.<br><br>**[Note:  The granting of liens on avoidance actions are only requested with respect to the entry of a Final Order and are limited to  the  diminution in value of Prepetition Agent's interest in the Prepetition Collateral, which could be more or less than the amount of cash collateral authorized to be used.]** | Par. 7(c) and (d) on pgs. 17-20. |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order.<br><br>**[Note:  The Adequate Protection Liens to be granted against "Fresh Collateral" are measured by diminution in value of Prepetition Agent's interest in the Prepetition Collateral, which could be more or less than the amount of cash collateral authorized to be used.]** | Par. 7(c) on pgs. 17-19. |

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

760775

**JURISDICTION**

This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**BACKGROUND**

1.    On October 27, 2009 (the "Petition Date"), the Debtors commenced their reorganization cases by filing voluntary petitions under chapter 11 of the Bankruptcy Code.

2.    The Debtors are continuing in possession of their assets and are operating and managing their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.    Debtor California Coastal Communities, Inc. ("CALC"), a publicly traded company on the NASDAQ (ticker: CALC), and its subsidiaries are in the business of residential land development and homebuilding with properties owned or controlled in various counties in Southern California.  The Debtors' principal activities are: (1) obtaining zoning and other entitlements for land that they own or for other landowners under consulting contracts; (2) improving the land for residential development; and (3) designing, constructing, and selling single-family homes on that land.  Debtor Hearthside Homes, Inc. ("Hearthside Homes") performs construction and marketing functions for the Debtors' projects.  Since 1994, the Debtors have delivered 2,200 homes to families in Southern California.

4.    Currently, the Debtors' largest project is "Brightwater," a 356 unit master planned community located on 105 acres of the Bolsa Chica mesa in the City of Huntington Beach in Orange County, California.  Brightwater offers a broad mix of four different neighborhoods (The Trails, The Sands, The Cliffs, and The Breakers) with home choices ranging from 1,710 to 4,339 square feet and overlooks the Pacific Ocean and the recently restored 1,300-acre Bolsa Chica Wetlands.  The Brightwater project is one of the last remaining ocean-front developments in Southern California.  To date, the Debtors have delivered 54 homes in Brightwater to individual home buyers and 17 model homes to an investor, and have 16 homes in escrow to be delivered to individual home buyers starting November 9, 2009.

760775

5.      The Debtors also have two other projects.  Debtor Signal Landmark owns The Ridge, which is being planned for 22 homes on five acres located near Brightwater, and Debtor HHI Lancaster I, LLC owns 73 unimproved lots in Lancaster, California and 54 improved lots at Quartz Hill in Lancaster, California.  The first two of these projects are in early stages of development. Quartz Hill is partially constructed having delivered 23 completed homes to individual home buyers.

**The Prepetition Credit Facilities**

6.      On September 15, 2006, the Debtors entered into that certain Senior Secured Revolving Credit Agreement (the "Prepetition Revolving Credit Agreement") with KeyBank National Association, as agent (the "Revolver Agent") and lender and the lenders a party thereto (the "Revolving Lenders") in the maximum amount of $100,000,000.  The obligations under the Prepetition Revolving Credit Agreement are secured by, among other security, (i) the Deed of Trust with Assignment of Rents, Security Agreement and Fixture Filing, by Signal Landmark, a California corporation ("Signal Landmark") for the benefit of Revolver Agent, recorded in the Official Records of Orange County, California as Instrument No. 2006000617267 (as modified, amended, restated, supplemented, renewed or replaced from time to time, the "First Deed of Trust"), granting the Agent a first priority security interest in the Brightwater project as described therein (the "Property"), (ii) the Collateral Assignment of Contracts, Development Rights, Licenses, Permits, Warranties and Guaranties and Subordination Agreement, dated as of September 15, 2006, by and among CALC, Signal Landmark and Agent (as modified, amended, restated, supplemented, renewed or replaced from time to time, the "Collateral Assignment"), and (iii) certain other collateral assignments or security agreements for the benefit of the Agent.  As of the Petition Date, approximately $81,679,317.58 in principal, plus accrued and unpaid interest, fees and expenses, remained outstanding under the Prepetition Revolving Credit Agreement.

7.      On September 15, 2006, the Debtors entered into that certain Senior Secured Term Credit Agreement (the "Prepetition Term Loan Agreement" and together with the Prepetition Revolving Credit Agreement, the "Prepetition Credit Agreements") with KeyBank National Association, as agent (the "Term Loan Agent" and together with the Revolver Agent, the "Agent") and lender and the lenders a party thereto (the "Term Loan Lenders" and together with the

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

760775

Revolving Lenders, the "Prepetition Secured Lenders") in the maximum amount of $125,000,000.
The obligations under the Prepetition Term Loan Agreement are secured by, among other security,
(i) the Deed of Trust with Assignment of Rents, Security Agreement and Fixture Filing, by Signal
Landmark for the benefit of the Term Loan Agent, recorded in the Official Records of Orange
County, California as Instrument No. 2006000617268 (as modified, amended, restated,
supplemented, renewed or replaced from time to time, the "Second Deed of Trust"), granting the
Agent a perfected second priority security interest in the Property, (ii) Pledge and Security
Agreement, dated as of September 15, 2006, by CALC, in favor of Term Loan Agent (as modified,
amended, restated, supplemented, renewed or replaced from time to time), pursuant to which CALC
pledged to the Term Loan Agent the ownership interests in Hearthside Holdings, Inc. and Signal
Landmark Holdings, Inc., (iii) Pledge and Security Agreement, dated as of September 15, 2006, by
Hearthside Holdings, Inc., in favor of Agent (as modified, amended, restated, supplemented,
renewed or replaced from time to time), pursuant to which such pledgor pledged to Agent as
additional security for the Loan its ownership interests in Hearthside Homes, Inc.), (iv) Pledge and
Security Agreement, dated as of September 15, 2006, by Signal Landmark Holdings, Inc., in favor
of the Term Loan Agent, pursuant to which such pledgor pledged to the Term Loan Agent its
ownership interests in Signal Landmark (as modified, amended, restated, supplemented, renewed or
replaced from time to time), (v) Pledge and Security Agreement, dated as of September 15, 2006, by
Hearthside Homes, Inc., in favor of Agent (as modified, amended, restated, supplemented, renewed
or replaced from time to time), pursuant to which such pledgor pledged to term Loan Agent its
ownership interests in it subsidiaries identified therein, and (vi) certain other collateral assignments
or security agreements for the benefit of the Term Loan Agent.  As of the Petition Date,
approximately $99,800,000 in principal, plus accrued and unpaid interest, fees and expenses,
remained outstanding under the Prepetition Term Loan Agreement.

8.      As of the Petition Date, the Debtors and the Prepetition Agent dispute whether the
Prepetition Agent and the Prepetition Lenders have an interest in the cash and funds that existed as
of the Petition Date in the Debtors' deposit and investment accounts, including approximately $1.5
million in deposit accounts maintained with Union Bank and investment accounts maintained with

760775

1   UBS and approximately $3 million in accounts maintained with KeyBanc Capital Markets, Inc.  The

2   Debtors, however, do concede that the proceeds from the sale of homes at Brightwater constitute the

3   Prepetition Agent's cash collateral.

4          9.     The Debtors also contend that the Prepetition Agent and the Prepetition Lenders do

5   not have an interest in other real and personal property owned by various Debtors on the Petition

6   Date.  Attached hereto as Exhibit C is a list of property that the Debtors contend is not subject to the

7   Prepetition Agent's liens.  The Interim Order treats the assets listed on Exhibit C as "Fresh

8   Collateral."[1]  The Prepetition Agent and the Prepetition Lenders, however, have reserved their right

9   to assert an interest in all or a portion of this property.

10  **The Budget**

11        10.    As described in the Pacini Declaration, the Debtors have the immediate need for use

12  of cash collateral.  The Debtors have prepared a budget (the "Budget"), attached hereto as Exhibit B,

13  for the first 13 weeks of these cases.  The Budget reflects expected proceeds from the sale of homes

14  at Brightwater, the costs of constructing homes at Brightwater, the Debtors general administrative

15  and overhead costs, restructuring costs, and the adequate protection payments proposed in the

16  Interim Order.  The Budget was prepared by the Debtors senior management and has been provided

17  to the Prepetition Agent.  The Debtors anticipate that the Budget will be agreed to prior to the

18  hearing on the Motion.  As shown in the Budget, the Debtors' expect to use approximately $3.3

19  million through December 9, 2009, which is the proposed deadline for obtaining a Final Order

20  authorizing use of cash collateral.

21  **The Need For Use of Cash Collateral**

22        11.    The Debtors' have a critical need to use cash collateral.  Access to cash collateral is

23  essential to ensure timely payment of employee's wages, salaries, and other employee-related

24  obligations to maintain employee morale and not risk the loss of personnel critical to the Debtors'

---

[1]  Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Interim Order.  To the extent that there is any inconsistency between any summary of the Interim Order and the provisions contained in the Interim Order, the terms of the Interim Order shall control.

760775

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    operations and reorganization.  Without access to cash collateral, the Debtors may be required to

2    cease their operations and the Debtors, their estates and their creditors would be irreparably harmed.

3         12.    In addition, the ability to use cash collateral has certain intangible benefits that are

4    critical to the Debtors' restructuring efforts.  The Debtors' reorganization hinges on the ongoing

5    cooperation of suppliers, vendors, and employees to ensure a restructuring in an orderly and

6    reasonable manner which seeks to preserve and enhance value of the Debtors' business for the

7    benefit of all parties in interest.  These parties need to be assured that not only will the Debtors'

8    business continue, but that the Debtors will have access to the necessary funds in the coming

9    months.  Similarly, the Debtors' customers require the confidence that the Debtors will have the

10   resources to continue to construct and close on the sale of homes already under contract and that

11   may be sold by new contracts.

12        13.    Accordingly, the Debtors have an immediate need to use cash collateral.

13                  **MEMORANDUM OF POINTS AND AUTHORITIES**

14        14.    By this Motion, the Debtors seek entry of the Interim Order granting the following

15   relief, including without limitation:

16              a.    authorizing the Debtors to use Cash Collateral pursuant to sections 361
                      and 363 of the Bankruptcy Code;

17
18              b.    approving the form of adequate protection provided to the Prepetition
                      Lenders pursuant to sections 361, 362, and 363 of the Bankruptcy
19                    Code;

20              c.    scheduling a Final Hearing on the Motion to consider entry of the
                      Final Cash Collateral Order; and

21              d.    granting related relief.

22        15.    A debtor-in-possession's use of cash collateral is governed by 11 U.S.C. § 363(c)

23   which provides:

24
25              (2) The trustee may not use, sell, or lease cash collateral under
                paragraph (1) of this subsection unless –

26              (A)    each entity that has an interest in such cash collateral
                consents; or

27
28              (B)    the court, after notice and a hearing, authorizes such use,
                sale, or lease in accordance with the provisions of this section.

760775

11 USC § 363; *see also Wattson Pac. Ventures v. Valley Fed. Sav. & Loan (In re Safeguard Self-Storage Trust)*, 2 F.3d 967, 969-970 (9th Cir. 1993). "'Cash collateral' is defined as 'cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest….'" *Wattson Pac. Ventures*, 2 F.3d at 969-970.

16.    Section 363(e) of the Bankruptcy Code provides that, prior to approving the use of cash collateral, the court must find that a secured creditor's liens are adequately protected. 11 U.S.C. § 363(e) ("[A]t any time, on request of an entity that has an interest in property used . . . by the trustee, the court, with or without a hearing, shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest.").

17.    The Bankruptcy Code does not set forth a specific definition of "adequate protection." Rather, § 361 provides three non-exclusive examples of treatment that suffices to adequately protect the interests of a secured creditor:

> When adequate protection is required . . . of an interest of an entity in property, such adequate protection may be provided by –
>
> (1)    requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the . . . use . . . under section 363 of this title . . . results in a decrease in the value of such entity's interest in such property;
>
> (2)    providing to such entity an additional or replacement lien to the extent that such . . . use . . . results in a decrease in the value of such entity's interest in such property; or
>
> (3)    granting such other relief, . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

**A.    The Budget.**

18.    As the first measure of adequate protection to the Prepetition Lenders, the Debtors have proposed the Budget to govern their operations. *See* Interim Order at ¶ 4; Exhibit B. The Budget reflects the Debtors' anticipated receipt and use of cash on a weekly basis through the week of January 25, 2010. While the Budget extends through the week of January 25, 2010, the Prepetition Agent and the Prepetition Lenders have only consented to those portions of the Budget

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

760775

1    through December 9, 2009.  Paragraph 5 of the Interim Order contains several provisions that could

2    terminate the Debtors' right to use cash collateral.  *See* Interim Order at 13-15.  Those events

3    include, among others, an outside date of December 9, 2009.  The Interim Order further provides

4    that the Budget may be amended with the consent of the Prepetition Agent without further order of

5    the Court.

### B.    Adequate Protection Payments.

7        19.    Section 361 also provides that adequate protection may take the form of periodic cash

8    payments.  11 U.S.C. § 361(1).  Under the Interim Order, the Debtors propose to make periodic

9    payments to the Prepetition Agent for the benefit of the Prepetition Lenders equal to (a) current

10   interest at the non-default rates and at the times specified under the Prepetition Credit Agreements,

11   (b) on November 15, 2009 a cash payment equal to the accrued and unpaid interest on the

12   Prepetition Indebtedness (in exchange for which the Prepetition Lenders have agreed to waive any

13   claim to the default rate of interest for such prepetition period), and (c) on an ongoing basis, the

14   payment of the reasonable fees and expenses of professionals retained by the Prepetition Agent,

15   provided that the Debtors, counsel for the Debtors, counsel for the Committee, and the U.S. Trustee

16   and such parties shall have 14 days after receipt of an invoice to object such fees and expenses and,

17   if no objection is raised, the Debtors shall pay such invoice within three days following the

18   expiration of the objection period (and to the extent an objection is raised, the Debtors shall pay the

19   undisputed amount of such fees and expenses within three days of the expiration of the objection

20   period).

### C.    Replacement Liens.

22       20.    As indicated by section 361, additional or replacement liens are common forms of

23   adequate protection.  11 U.S.C. § 361(2); *see MBank Dallas, N.A., v. O'Connor (In re O'Connor)*,

24   808 F.2d 1393, 1396-97 (10th Cir. 1987).  When a debtor is authorized to use its cash collateral, the

25   secured creditor "has the corresponding right to seek, from the court, both a lien on property and

26   priority to the extent necessary to insure adequate protection." *Arkison v. Frontier Asset Mgmt. (In*

27   *re Skagit Pac. Corp.)*, 316 B.R. 330, 336 n.5 (9th Cir. BAP 2004); *see also United States v. Nat'l*

28   *Westminster Bank USA (In re Q-C Circuits Corp.)*, 231 B.R. 506, 511 (E.D.N.Y. 1999) (finding that

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

760775

1    the Bankruptcy Court was "well within its powers" when it provided replacement liens as adequate

2    protection for the debtor's use of the cash collateral).

3         21.     The Debtors propose to grant the Prepetition Agent for the benefit of the Prepetition

4    Lenders the following liens:

5         a.     <u>Fresh Collateral</u>:  The Interim Order proposes to grant Adequate Protection

6    Liens against "Fresh Collateral" solely to the extent of any Collateral Diminution.  The Fresh

7    Collateral consists of the assets listed on Exhibit C attached hereto, which are comprised of

8    either property in which the Debtors contend that the Prepetition Agent does not have an

9    interest in as of the Petition Date or property in which there is clearly a dispute between the

10   Debtors and the Prepetition Agent as to whether the Prepetition Agent had an interest as of

11   the Petition Date that is finally resolved in favor of the Debtors.  Avoidance Actions are

12   included on the list of Fresh Collateral, but the liens granted against those actions shall be

13   subject to the entry of the Final Order.  Collateral Diminution is defined as the diminution in

14   value of the Prepetition Agent's interest in the Prepetition Collateral.

15        b.     <u>Catch-All Collateral</u>:  The Interim Order proposed to grant liens against

16   Catch-All Collateral to secure the Prepetition Indebtedness.  Catch-All Collateral is defined

17   to include all of the Debtors' other respective real and personal property and assets, of any

18   kind or nature whatsoever, whether now owned or hereafter acquired by the Debtors, and all

19   Proceeds (as defined in the Interim Order) thereof or therefrom, including, but not limited to,

20   homes constructed on Prepetition Collateral for which construction was commenced,

21   continued or completed after the Petition Date and any improvements in value to the

22   Prepetition Collateral resulting from post-petition construction of improvements or changes

23   in market value, but excluding Fresh Collateral.  The Debtors have endeavored to identify all

24   existing assets that are not subject to the Prepetition Lenders' liens (or that are alleged by the

25   Debtors not to be subject to the Prepetition Lenders' liens, where there is a dispute as to such

26   assets) on the schedule of Fresh Collateral so as to minimize any assets that may qualify as

27   Catch-All Collateral.

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

760775

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1       c.     <u>Carve-Out.</u>  The liens granted under the Interim Order will be subject to a

2    carve-out in the amount of $75,000.  *See* Interim Order at ¶ 12.

3       **D.     <u>Superpriority Claims.</u>**

4       22.     The Interim Order proposes to grant the Prepetition Agent and the Prepetition

5    Lenders superpriority claims solely to the extent of any Collateral Diminution.  The Interim Order

6    provides subject to the entry of a Final Order, such Superpriority Claims will be entitled to the

7    proceeds of any Avoidance Actions.

8       **E.     <u>Other Relief.</u>**

9       23.     As set forth in section 361 of the Bankruptcy Code, such "other relief" as is necessary

10    to come close to providing a secured claimholder with the "indubitable equivalent" of its interest in

11    the collateral constitutes a permissible form of adequate protection.  11 U.S.C. § 361(3); *see*

12    *O'Connor*, 808 F.2d at 1396-97.

13       24.     <u>Financial Reporting and Compliance with Prepetition Credit Agreements</u>.  Under the

14    Interim Order the Debtors have agreed to comply with the covenants under the Prepetition Credit

15    Agreements, to the extent that such covenants have not been superseded by the Interim Order or any

16    other order entered by this Court.  In addition, the Debtors have agreed to provide the Prepetition

17    Agent with a Budget Reconciliation on a weekly basis (Interim Order at ¶ 4) and other financial

18    reports.  *See* Interim Order at ¶ 7(e).

19       25.     <u>506(c) Waiver</u>.  Subject to entry of the Final Order and except to the extent of the

20    Carve-Out, as a condition to the use of Cash Collateral, the Prepetition Agent and the Prepetition

21    Lenders are requiring that no expenses of administration of the chapter 11 cases or any future

22    proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings

23    under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral or

24    postpetition collateral under section 506(c) of the Bankruptcy Code or any similar principle of law,

25    without the prior written consent of the Prepetition Agent.

26       26.     <u>Debtors' Admissions and Committee Investigation Period</u>.  The Interim Order

27    provides admissions from the Debtors regarding the validity, priority, and extent of the Prepetition

28    Lenders' Liens against the Prepetition Collateral.  Section 18 of the Interim Order specifically

760775

1  preserves the Committee's and any party in interests' rights to challenge the Debtors' admissions

2  within seventy-five (75) days of the Petition Date.  The Interim Order places a $25,000 limit on the

3  amount of Cash Collateral that may be used to investigate challenges to the Prepetition Lenders'

4  liens and claims.

5

6  ## **CONCLUSION**

7       WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially

8  in the form of the proposed Order attached hereto as <u>Exhibit A</u>, granting the following relief: (a)

9  authorizing the Debtors to use Cash Collateral pursuant to sections 361 and 363 of the Bankruptcy

10  Code on an interim basis; (b) approving the form of adequate protection provided to the Prepetition

11  Lenders pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code; (c) modifying the

12  automatic stay; (d) scheduling a Final Hearing on the Motion to consider entry of a Final Cash

13  Collateral Order; and (e) granting related relief.

14  DATED:  November 6, 2009            HENNIGAN, BENNETT & DORMAN LLP
                                        865 South Figueroa Street, Suite 2900
15                                      LOS ANGELES, CA 90017

16

17                                      By:  */s/ Joshua M. Mester*
18                                           Bruce Bennett
                                             Joshua M. Mester
19                                           Michael C. Schneidereit

20

21                                      *Proposed Reorganization Counsel for the Debtors
                                        and Debtors in Possession*

22

23

24

25

26

27

28

760775

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS