HENNIGAN, BENNETT & DORMAN LLP
BRUCE BENNETT (Cal. Bar No. 105430)
JOSHUA M. MESTER (Cal. Bar No. 194783)
MICHAEL C. SCHNEIDEREIT (Cal. Bar No. 234956)
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200
Fax: (213) 694-1234

*Reorganization Counsel for
Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SANTA ANA DIVISION

| | |
|---|---|
| *In re* <br> ☐ CALIFORNIA COASTAL COMMUNITIES, INC <br> ☐ SIGNAL LANDMARK HOLDINGS INC. <br> ☐ SIGNAL LANDMARK <br> ☐ HEARTHSIDE HOLDINGS, INC. <br> ☐ HEARTHSIDE HOMES, INC. <br> ☐ HHI CHANDLER, L.L.C. <br> ☐ HHI CHINO II, L.L.C. <br> ☐ HHI CROSBY, L.L.C. <br> ☐ HHI HELLMAN, L.L.C. <br> ☐ HHI LANCASTER I, L.L.C. <br> ☐ HHI SENECA, L.L.C. <br><br> ☒ All Debtors <br><br> Debtor. | Case No. 8:09-21712-TA <br><br> Jointly Administered with Case Nos. <br> 8:09-21713-TA; 8:09-21714-TA; <br> 8:09-21715-TA; 8:09-21717-TA; <br> 8:09-21718-TA; 8:09-21719-TA; <br> 8:09-21720-TA; 8:09-21721-TA; <br> 8:09-21722-TA; 8:09-21723-TA <br><br> <u>Chapter 11</u> <br><br> **NOTICE OF APPLICATION AND APPLICATION FOR ORDER AUTHORIZING RETENTION OF IMPERIAL CAPITAL, LLC AS FINANCIAL ADVISOR FOR THE DEBTORS AND DEBTORS IN POSSESSION** <br><br> <u>No Hearing Required</u> |

-1-

**TO THE HONORABLE THEODOR C. ALBERT AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE THAT** California Coastal Communities, Inc. ("CALC"), and its affiliated debtors and debtors in possession herein (collectively, the "Debtors"), hereby apply to this Court for the entry of an order, in substantially the form of the proposed Order attached hereto as Exhibit A, authorizing the Debtors to employ the firm of Imperial Capital, LLC ("Imperial") as financial advisor for the Debtors, on the terms and conditions set forth in the engagement letter dated February 1, 2010 attached hereto as Exhibit B (the "Engagement Letter"), pursuant to section 327 and 328 of title 11 of the United States Code (the "Bankruptcy Code").

**Applicant:** Imperial Capital, LLC.

**Compensation:** Imperial will seek compensation pursuant to 11 U.S.C. § 328(a).

**Arrangements for Compensation:** The Debtors have agreed to compensate Imperial on a fixed fee basis as follows: A monthly fee of $100,000, with the first month payable upon approval of the Application, and each subsequent month payable in advance. A witness fee of $100,000 if Imperial provides any deposition or expert witness testimony in a 30-day period. The Debtors have also agreed to reimburse Imperial for its expenses and have agreed to provide Imperial with an expense deposit in the amount of $15,000.

**Contact:** Copies of this application are available by contacting Joshua M. Mester at Hennigan, Bennett & Dorman LLP, 865 S. Figueroa Street, Suite 2900, Los Angeles, California 90017; Telephone No. (213) 694-1200.

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to Local Bankruptcy Rule 2014-1(b), **any response to or request for a hearing on the relief requested in this Application must be in the form required by Local Bankruptcy Rule 9013-1(a)(7) and filed with the Bankruptcy Court and served upon Hennigan, Bennett & Dorman LLP, as counsel for the Debtors, at the address set forth in the caption to this Application, and upon the Office of the United States Trustee for the Central District of California, at 411 West Fourth St. Suite 9041**

**Santa Ana, CA 92701,** *no later than fourteen (14) days from the date of service of this Motion*. If there is no timely objection or timely request for hearing on the requested relief, the Court may enter an order granting such relief without further notice or hearing.

In support of this Application, the Debtors submit the accompanying "Declaration Of Robert Warshauer In Support Of Application For Order Authorizing Retention Of Imperial Capital, LLC As Financial Advisor For The Debtors And Debtors In Possession" (the "Warshauer Declaration"), and respectfully represent as set forth below.

## JURISDICTION

This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

1. On October 27, 2009 (the "Petition Date"), the Debtors commenced their reorganization cases by filing voluntary petitions under chapter 11 of the Bankruptcy Code.

2. The Debtors are continuing in possession of their assets and are operating and managing their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. Debtor California Coastal Communities, Inc. ("CALC"), a publicly traded company on the NASDAQ (ticker: CALC), and its subsidiaries are in the business of residential land development and homebuilding with properties owned or controlled in various counties in Southern California. The Debtors' principal activities are: (1) obtaining zoning and other entitlements for land that they own or under consulting contracts for other landowners; (2) improving the land for residential development; and (3) designing, constructing, and selling single-family homes on that land. Debtor Hearthside Homes, Inc. is the homebuilder for the Debtors' projects, and performs construction and marketing functions for the Debtors' projects. Since 1994, the Debtors have delivered over 2,200 homes to families in Southern California.

4. Currently, the Debtors' largest project is "Brightwater," a 356 unit master planned community located on 105 acres of the Bolsa Chica mesa in the City of Huntington Beach in Orange

-3-

County, California, approximately 35 miles south of downtown Los Angeles.  Brightwater offers a broad mix of four different neighborhoods (the Trails, the Sands, the Cliffs, and the Breakers) with home choices ranging from 1,710 to 4,339 square feet and overlooks the Pacific Ocean and the recently restored 1,300-acre Bolsa Chica Wetlands.  The Brightwater project is one of the last remaining ocean-front developments in Southern California.  As of the Petition Date, the Debtors had delivered 53 homes in Brightwater to individual home buyers and 17 model homes to an investor.

5.  The Debtors also have one other project – Debtor Signal Landmark, Inc. owns The Ridge, located near Brightwater, which is in the beginning stages of development, with no construction having been commenced.  Debtor HHI Lancaster I, LLC ("HHI Lancaster") owns 73 unimproved lots in Lancaster, California.  On December 29, 2009, HHI Lancaster closed the sale of 54 improved lots at Quartz Hill in Lancaster, California, to Richmond American Homes of Maryland, Inc.

## RELIEF REQUESTED AND THE BASIS THEREFOR

6.  By this Application, the Debtors request that the Court authorize the Debtors to employ Imperial pursuant to section 327 and 328 of the Bankruptcy Code, on the terms and conditions set forth in the Engagement Letter, as their financial advisor.  The Debtors submit that Imperial's employment is in the best interest of the estates and otherwise satisfies the requirements of section 327 and 328.

7.  Bankruptcy Code section 327(a) provides that the "the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a).

10.  Section 328(a) of the Bankruptcy Code expressly allows for fixed or percentage based fees such as those proposed in the Engagement Letter. Section 328(a) of the Bankruptcy Code specifically provides:

-4-

> The trustee, or a committee appointed under Section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, **on a fixed or percentage fee basis**, or on a contingent fee basis.

11 U.S.C. § 328(a) (emphasis added). Thus, section 328(a) of the Bankruptcy Code plainly permits the Court to approve the terms of Imperial's engagement as set forth in the Engagement Letter, including the Fee and Expense Structure and the Indemnification Provisions.

11. Section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *In re National Gypsum Company*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978, the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. The uncertainty continues under the present § 330 of the Bankruptcy Code, which provided that the court award to professional consultants reasonable compensation based on relevant factors of time and comparable costs, etc. Under present § 328, the professionals may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (citations omitted); *see also In re Federal Mogul-Global Inc.*, 348 F.3d 390, 397 (3d Cir. 2003). Owing to this inherent uncertainty, courts have approved arrangements similar to the Fee and Expense Structure under section 328 of the Bankruptcy Code where such arrangements contain "reasonable" terms and conditions.

8. The Fee and Expense Structure and the Indemnification Provisions appropriately reflect the nature and scope of services to be provided by Imperial and Imperial's substantial experience with respect to financial advisory services, and are consistent with the fee structures typically utilized by Imperial and other leading financial advisors who do not bill their clients on an hourly basis.

-5-

## **IMPERIAL CAPITAL'S QUALIFICATIONS**

9.  Founded in 1997, Imperial has more than 170 employees and operates from offices in Los Angeles, New York, Boston, Minneapolis, Houston and San Francisco. Imperial is a nationally recognized, full-service investment banking and institutional securities firm offering a wide range of sophisticated capital markets, independent advisory services and institutional sale and trading capabilities.

10. The Debtors selected Imperial because it has well-regarded, national restructuring and recapitalization practices. Imperial has advised companies, creditors, financial institutions, institutional investors and funds, trade creditors, equity participants and acquirers in both out-of-court restructurings and complex chapter 11 proceedings.

11. Imperial's senior banking professionals have been involved in restructurings across virtually every industry, including some of the largest restructurings in the United States. Imperial has provided financial services for debtors, creditors, and other constitutes in numerous chapter 11 cases. *See, e.g., In re MagnaChip Semiconductor Finance Co.*, No. 09-12008 (PJW) (Bankr. D. Del.); *In re Monaco Coach Corp.*, No. 09-10750 (KJC) (Bankr. D. Del.); *In re Qimonda Richmond LLC*, No. 09-10589 (MFW) (Bankr. D. Del.); *In re Landsource Communities Development LLC*, No. 08-11111 (KJC) (Bankr. D. Del.); *In re Aloha Airlines, Inc.*, No. 08-00337 (LK) (Bankr. D. Haw.); *In re Movie Galley Inc.*, No. 07-33849 (DOT) (Bankr. E.D. Va.); *In re Custom Food Products, Inc.*, No. 07-10495 (PJW) (Bankr. D. Del.); *In re Fairfield Residential LLC*, No. 09-14378 (BLS) (Bankr. D. Del.); and *In re Mesaba Aviation, Inc.*, No. 05-39258 (GFK) (Bankr. D. Minn.).

12. The resources, capabilities and experience of Imperial are necessary to assist the Debtors in these bankruptcy cases. Among other things, Imperial will provide critical services to the Debtors in connection with these chapter 11 cases, including, providing detailed capital markets analysis that will include, among other things, market terms for interest rates, maturities, covenants, for use by the Debtors in restructuring their secured debt obligations. Imperial has considerable experience with rendering such services to debtors and other parties in the context of a chapter 11 case. As such, Imperial is well qualified to perform the work required in these cases.

-6-

## IMPERIAL'S PROPOSED ENGAGEMENT

12. In its capacity as the Debtors' financial advisor as outlined in the Engagement Letter, Imperial is prepared to perform the following post-petition services:[1]

    a. <u>Phase 1</u>: provide detail capital markets analysis which will include, among other things, market terms for interest rates, maturities, covenants, for use by the Company in a Restructuring.

    b. <u>Phase 2</u>: (i) analysis of the Company's business, operations, properties, financial condition, competition, forecast, prospects and management; (ii) financial valuation of the ongoing operations of the Company; (iii) assisting the Company in developing, evaluating, structuring and negotiating the terms and conditions of a potential Restructuring plan, including the value of the securities, if any, that may be issued to certain creditors under the Restructuring plan; (iv) analysis of potential divestitures by the Company; and (v) providing such other financial advisory services with respect to the Company's financial issues as may from time to time be agreed upon between the Company and Imperial Capital.

13. At this time, the Debtors are not seeking approval of the retention of Imperial to provide services described in Phase 2. Moreover, the Fee Structure (as defined herein) does not include the compensation for the services described in Phase 2. Should the Debtors elect to engage Imperial to perform Phase 2 services, the Debtors will seek approval from the Court at that time.

## IMPERIAL IS DISINTERESTED

14. Except as disclosed below and in the Warshauer Declaration, to the best of the Debtors' knowledge, based upon the Warshauer Declaration, Imperial and its professionals (a) are disinterested as defined by section 101(14) of the Bankruptcy Code; (b) do not hold or represent an interest adverse to the Debtors or their estates; and (c) do not have any connection with the Debtors, their significant creditors, or any other significant party in interest in this case.

---

[1] To the extent that this summary differs from the terms of the Engagement Letter, the terms of the Engagement Letter control.

14. The Debtors are informed that, to check and clear potential conflicts of interest in this case, and based upon information known on or near the date of this Application, Imperial researched its client database to determine whether it had any relationships with the following entities (collectively, the "Interested Parties"):

    a. The Debtors and their affiliates

    b. The Debtors' current officers and directors;

    c. The Debtors' secured lenders and other holders of secured and unsecured debt;

    d. Significant shareholders of the Debtors

    e. Significant creditors holding unsecured claims against the Debtors (determined on a consolidated basis); and

    f. Certain professionals and other interested parties that the Debtors and/or Imperial have identified as possibly being involved in these chapter 11 cases.

15. Imperial has advised the Debtors that, except as disclosed in the Warshauer Declaration or attachments thereto and summarized below, Imperial does not have any connections with an Interested Party, and that Imperial has not, does not, and will not represent any Interested Party with respect to matters related to the Debtors' chapter 11 cases.

16. Moreover, to the best of the Debtors' knowledge, based upon the Warshauer Declaration, Imperial and its professionals that will be providing services to the Debtors:

    a. are not and have not been a creditor;

    b. are not an equity security holder or an insider of the Debtors;

    c. are not and have not been a director, officer or employee of the Debtors within two years before the Petition Date;

    d. subject to the disclosures contained in the Warshauer Declaration, have no interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or for any other reason; and

-8-

e.     have no connections with the United States Trustee's Office for the Central District of California.

## TERMS OF COMPENSATION

15.  Imperial's decision to accept this engagement to advise and assist the Debtors is contingent upon its ability to be retained in accordance with its customary terms and conditions of employment and compensated for its services in accordance with the Engagement Letter. The Engagement Letter also provides the Debtors with the right to terminate the engagement upon five (5) days notice to Imperial.

16.  The proposed overall compensation structure is comparable to compensate generally charged by financial advisors of similar statute for comparable engagements. As compensation for the services provided under Phase 1 of the Engagement Letter, the Debtors have agreed to pay Imperial the following fees (the "Fee Structure") in cash, which are presented in summary form:

   a.  A cash advisory fee (the "Monthly Fee") of $100,000 per month, with the first month to be paid upon approval of the Application and each successive month paid in advance at the beginning of the month.

   b.  A cash fee for expert testimony (the "Witness Fee") of $100,000 in the event that Imperial provides expert witness, deposition or trial testimony during a given 30 day period.

17.  In addition, all fees, disbursements and out-of-pocket expenses (the "Expenses") incurred by Imperial in connection with the services to be rendered (including, without limitation, reasonable attorneys' fees, travel and lodging expenses, word processing chargers, messenger services, duplicating services, facsimile expenses and other customary expenditures) shall be reimbursed to Imperial, or paid on behalf of Imperial, promptly as billed. Imperial has requested, and the Debtors have agreed, to provide Imperial with a deposit for Expenses in the amount of $15,000 (the "Expense Deposit"). In light of the Fee Structure and general industry practice, the Debtors, along with Imperial, request that notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable orders of this Court or any

guidelines regarding submission and approval of fee applications, Imperial and its professionals shall only be required to provide summary time records for services rendered postpetition, if requested by the Court.

18. The Debtors agree that the fee arrangements in the Engagement Letter are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code, given (i) the issues that Imperial may be required to address in the performance of its services under the Engagement Letter, (ii) Imperial's commitment to the variable level of time and effort necessary to address these issues, and (iii) the market prices for Imperial's services for engagements of this nature in both out-of-court and chapter 11 contexts.

19. The Debtors believe that Imperial's proposed fees are reasonable and comparable to the financial advisory fees in other complex chapter 11 cases. Accordingly, Imperial's engagement is appropriate under section 328(a) of the Bankruptcy Code and Imperial should be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and not subject to the standard of review set forth in section 330 of the Bankruptcy Code.

20. Imperial will not share or agree to share any compensation to be paid by the Debtors, in connection with services to be performed after the Petition Date, with any other person, other than other principals and employees of Imperial, in accordance with section 504 of the Bankruptcy Code.

21. The Debtors respectfully submit that employment of Imperial is in the best interests of the Debtors, their creditors and their estates.

## INDEMNITY

22. As set forth in the Engagement Letter and subject to the terms and conditions therein, the Debtors agreed to indemnify Imperial and certain related parties from losses directly or indirectly in connection with, arising out of, based upon, or related to the engagement of Imperial under the Engagement Letter. The Debtors believe that the indemnity provision is a reasonable term and condition of Imperial's engagement. Unlike the market for other professionals that the Debtors may retain, indemnification is a standard term of the market for financial advisors. Imperial and the

-10-

Debtors believe that the indemnity provisions are comparable to those generally obtained by other advisory firms of similar stature for Imperial and for comparable engagements, both in and out of court. The proposed indemnification will not include gross negligence, willful misconduct, or fraud of Imperial.

23. The payment of indemnity pursuant to the Engagement Letter will be subject to an application of the Court (interim or final as the case may be) and will be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought.

## **NOTICE**

17. Concurrently with the filing of this Application, the Debtors have served copies of the Application and certain related pleadings and documents, by electronic mail (where available) or overnight delivery (where no electronic mail information is available), on: (a) the Debtors; (b) the Office of the United States Trustee for the Central District of California; (c) any official committee of creditors of the Debtors (or, prior to the time that such a committee is appointed, to the creditors identified on the list of creditors holding the twenty-five (25) largest unsecured claims against the Debtors on a consolidated basis, but excluding homebuyers); (d) counsel to KeyBank National Association, the agent to the Debtors' prepetition secured lenders; and (e) all parties having filed a request for special notice pursuant to Bankruptcy Rule 2002(i).

18. For those parties for whom the Debtors have facsimile information but not electronic mail information, the Debtors served notice of the Application, in the form of the Notice, by facsimile transmission. The Debtors submit that such notice is reasonable and sufficient under the circumstances and that no other or further notice need be given.

## CONCLUSION

**WHEREFORE**, the Debtors submit that Imperial's employment is in the best interest of the estates and satisfies the requirements of sections 327 and 328 of the Bankruptcy Code, and the Debtors respectfully request that the Court enter an order, substantially in the form of the order attached hereto as <u>Exhibit A</u>, (a) authorizing the Debtors to employ Imperial as their financial advisor, (b) approving the Engagement Letter, and (c) granting the Debtors such other relief as is just and proper.

DATED: February 8, 2010

California Coastal Communities, Inc., for itself and the other Debtors (of which CALC is the 100% direct or indirect owner)

By: _____
Raymond J. Pacini, President and Chief Executive Officer