HENNIGAN, BENNETT & DORMAN LLP
BRUCE BENNETT (Cal. Bar No. 105430)
JOSHUA M. MESTER (Cal. Bar No. 194783)
MICHAEL C. SCHNEIDEREIT (Cal. Bar No. 234956)
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200
Fax: (213) 694-1234

*Reorganization Counsel for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA DIVISION**

| | |
|---|---|
| *In re* <br> ☐ CALIFORNIA COASTAL COMMUNITIES, INC. <br> ☐ SIGNAL LANDMARK HOLDINGS, INC. <br> ☐ SIGNAL LANDMARK <br> ☐ HEARTHSIDE HOLDINGS, INC. <br> ☐ HEARTSIDE HOMES, INC. <br> ☐ HHI CHANDLER, L.L.C. <br> ☐ HHI CHINO II, L.L.C. <br> ☐ HHI CROSBY, L.L.C. <br> ☐ HHI HELLMAN, L.L.C. <br> ☐ HHI LANCASTER I, L.L.C. <br> ☐ HHI SENECA, L.L.C. <br> ☒ All Debtors <br><br> Debtors. | Case No. 8:09-21712-TA <br><br> Jointly Administered with Case Nos. <br> 8:09-21713-TA; 8:09-21714-TA; <br> 8:09-21715-TA; 8:09-21717-TA; <br> 8:09-21718-TA; 8:09-21719-TA; <br> 8:09-21720-TA; 8:09-21721-TA; <br> 8:09-21722-TA; 8:09-21723-TA <br><br> Chapter 11 <br><br> **SECOND EMERGENCY MOTION FOR ENTRY OF INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL; (II) PROVIDING ADEQUATE PROTECTION TO PREPETITION LENDERS; (III) MODIFYING THE AUTOMATIC STAY; AND (IV) SCHEDULING A FINAL HEARING; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RAYMOND J. PACINI** <br><br> Hearing <br><br> **Date: TBD** <br> **Time: TBD** <br> **Place: Courtroom "5B"** <br> **411 West Fourth Street** <br> **Santa Ana, CA 92701-4593** |

779302.2

**TO THE HONORABLE THEODOR C. ALBERT AND ALL INTERESTED PARTIES:**

California Coastal Communities, Inc., et al., the debtors and debtors in possession herein (collectively, the "Debtors") hereby move this Court for entry of an order, in substantially the form of the proposed order (the "Interim Order") attached hereto as Exhibit A, (a) authorizing the Debtors to use Cash Collateral pursuant to sections 361 and 363 of the Bankruptcy Code on an interim basis; (b) approving the form of adequate protection offered to the Prepetition Lenders pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code; (c) modifying the automatic stay; (d) scheduling a Final Hearing on the Motion to consider entry of the Final Cash Collateral Order; and (e) granting related relief.

In support of this Motion, the Debtors submit the accompanying Declaration Of Raymond J. Pacini" (the "Pacini Declaration") and Declaration of Carl DiStefano (the "DiStefano Declaration") and respectfully represent as follows:

## STATEMENT PURSUANT TO LOCAL BANKRUPTCY RULE 4001-2

Local Bankruptcy Rule 4001-2 requires a debtor to highlight for the Court's scrutiny certain terms and provisions in a cash collateral order (the "Highlighted Provisions"). The following Highlighted Provisions represent important components to the Interim Order or Final Cash Collateral Order:

| Description | Page |
|---|---|
| Cross-collateralization clauses.<br><br>[**Note: Cross-collateralization is limited to the category of assets defined as "Catch-All Collateral".**] | Par. 7(c) |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | Par. 19 |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order.<br><br>[**Note: The Adequate Protection Liens to be granted against "Fresh Collateral" are measured by diminution in value of Prepetition Agent's interest in the Prepetition Collateral, which could be more or less than the amount of cash collateral authorized to be used.**] | Par. 7(c) |

-2-

779302.2

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

## I. INTRODUCTION

1. The Debtors have used cash collateral for the previous five months of these cases with the consent of the Prepetition Agent and the Prepetition Secured Lenders and the authorization of this Court. The Sixth Interim Cash Collateral Order provides for the termination of the consensual use of cash collateral upon the filing of a plan of reorganization that is not supported by the Prepetition Agent and the Prepetition Secured Lenders. Despite extensive dialogue, the Debtors have been unable to obtain the consent of the Prepetition Agent and the Prepetition Lenders on the terms of a plan. The Debtors need to move these cases forward and emerge from chapter 11 as soon as possible. Accordingly, contemporaneously with the filing of this Motion, the Debtors filed their Joint Plan of Reorganization and a proposed disclosure statement.

2. Given the anticipated termination of the use of cash collateral on a consensual basis, the Debtors have filed this Motion for authority to use the Prepetition Agent and Prepetition Secured Lenders' cash collateral without their consent to enable the Debtors to proceed with confirmation of their joint plan. Use of cash collateral without the consent of the Prepetition Agent and Prepetition Secured Lenders is appropriate in this case, because, among other things, the Prepetition Secured Lenders are adequately protected through a significant equity cushion. The Debtors' appraiser, Mr. DiStefano, has concluded that Brightwater, the largest portion of the prepetition collateral securing the obligations to the Prepetition Secured Lenders, has an "as is" market value of $219.7 million, which exceeds the $181.5 million owed to the Prepetition Secured Lenders with an equity cushion of at least 17.39%. As this Court is aware, courts have found adequate protection to exist with equity cushions of as little as 10%. *See In re McGowan*, 6 B.R. 241, 243 (Bankr. E.D. Pa. 1980). Accordingly, this equity cushion alone would be sufficient to demonstrate adequate protection and authorize the use of the Prepetition Secured Lenders' cash collateral without their consent.

3. But, the Debtors also propose to grant the Prepetition Secured Lenders additional adequate protection consistent with the terms and conditions contained in the five prior Interim Cash Collateral Orders. The Debtors are offering to provide the Prepetition Secured Lenders with replacement liens in fresh collateral in which the Prepetition Secured Lenders did not otherwise have an interest. The Debtors are also proposing to pay the Prepetition Secured Lenders interest at the

-3-

779302.2

contract non-default rate and pay the Prepetition Agent the reasonable fees and expenses of one law firm and one financial advisor. Finally, the Debtors are offering to comply with a budget and provide the Prepetition Agent and Prepetition Secured Lenders with other protection as described in the proposed order attached hereto as Exhibit A. A comparison of the proposed Interim Order against the Sixth Interim Cash Collateral Order is attached hereto as Exhibit B.

4. When taken as a whole, the Debtors are able to provide the Prepeition Secured Lenders with sufficient adequate protection to justify the use of cash collateral over their objection. The Debtors are seeking use of cash collateral on an interim basis until the Court can schedule a final hearing on the Motion.

5. Accordingly, the Court should grant the Motion on an interim basis and schedule a final hearing on the Motion within two to three weeks of the interim hearing on the Motion.

## II.  BACKGROUND

6. Debtor California Coastal Communities, Inc. ("<u>CALC</u>"), a publicly traded company on the NASDAQ (ticker: CALC), and its subsidiaries are in the business of residential land development and homebuilding with properties owned or controlled in various counties in Southern California. The Debtors' principal activities are: (1) obtaining zoning and other entitlements for land that they own or under consulting contracts for other landowners; (2) improving the land for residential development; and (3) designing, constructing, and selling single-family homes on that land. Debtor Hearthside Homes, Inc. is the homebuilder for the Debtors' projects, and performs construction and marketing functions for the Debtors' projects. Since 1994, the Debtors have delivered over 2,200 homes to families in Southern California.

### A.  Brightwater And The Debtors' Other Assets.

7. Currently, the Debtors' largest project is "<u>Brightwater</u>," a 356 unit master planned community located on 105 acres of the Bolsa Chica mesa in the City of Huntington Beach in Orange County, California. Brightwater offers a broad mix of four different neighborhoods (the Trails, the Sands, the Cliffs, and the Breakers) with home choices ranging from 1,710 to 4,339 square feet. Located near Pacific Coast Highway and overlooking the Pacific Ocean, Huntington Harbor and the recently restored 1,300-acre Bolsa Chica Wetlands, 63 of the 356 homes at Brightwater will have

-4-

779302.2

unobstructed ocean and/or wetlands views. This project is located on one of the last large undeveloped coastal properties in Southern California. Brightwater is bordered on the north and east by residential development in the City of Huntington Beach and Huntington Harbor, to the south by open space and the 1,300-acre Bolsa Chica wetlands, and to the west by 120 acres of publicly-owned conservation land and open space on the lower bench of the Bolsa Chica mesa, Pacific Coast Highway, Bolsa Chica State Beach, and the Pacific Ocean. Brightwater also has 37 acres of open space and conservation area.

8. As of the Petition Date, the Debtors had delivered 53 homes in Brightwater to individual home buyers and 17 model homes to an investor.

9. The Debtors also have one other project – Debtor Signal Landmark owns The Ridge, located near Brightwater, which is in the beginning stages of development, with no construction having been commenced. Debtor HHI Lancaster I, LLC ("HHI Lancaster") also owns 73 unimproved lots in Lancaster, California.

**B.    The Prepetition Secured Lenders and the Prior Cash Collateral Orders.**

10. On September 15, 2006, the Debtors entered into that certain Senior Secured Revolving Credit Agreement (the "Prepetition Revolving Credit Agreement") with KeyBank National Association, as agent (the "Revolver Agent") and lender and the lenders a party thereto (the "Revolving Lenders") in the maximum amount of $100,000,000. The obligations under the Prepetition Revolving Credit Agreement are secured by, among other security, (i) the Deed of Trust with Assignment of Rents, Security Agreement and Fixture Filing, by Signal Landmark, a California corporation ("Signal Landmark") for the benefit of Revolver Agent, recorded in the Official Records of Orange County, California as Instrument No. 2006000617267 (as modified, amended, restated, supplemented, renewed or replaced from time to time, the "First Deed of Trust"), granting the Agent a first priority security interest in the Brightwater project as described therein (the "Property"), (ii) the Collateral Assignment of Contracts, Development Rights, Licenses, Permits, Warranties and Guaranties and Subordination Agreement, dated as of September 15, 2006, by and among CALC, Signal Landmark and Agent (as modified, amended, restated, supplemented, renewed or replaced from time to time, the "Collateral Assignment"), and (iii) certain other collateral assignments or

-5-

779302.2

1  security agreements for the benefit of the Agent.  As of the Petition Date, approximately

2  $81,679,317.58 in principal, plus accrued and unpaid interest, fees and expenses, remained

3  outstanding under the Prepetition Revolving Credit Agreement.

4        11.      On September 15, 2006, the Debtors entered into that certain Senior Secured Term

5  Credit Agreement (the "Prepetition Term Loan Agreement" and together with the Prepetition

6  Revolving Credit Agreement, the "Prepetition Credit Agreements") with KeyBank National

7  Association, as agent (the "Term Loan Agent" and together with the Revolver Agent, the "Agent")

8  and lender and the lenders a party thereto (the "Term Loan Lenders" and together with the

9  Revolving Lenders, the "Prepetition Secured Lenders") in the maximum amount of $125,000,000.

10  The obligations under the Prepetition Term Loan Agreement are secured by, among other security,

11  (i) the Deed of Trust with Assignment of Rents, Security Agreement and Fixture Filing, by Signal

12  Landmark for the benefit of the Term Loan Agent, recorded in the Official Records of Orange

13  County, California as Instrument No. 2006000617268 (as modified, amended, restated,

14  supplemented, renewed or replaced from time to time, the "Second Deed of Trust"), granting the

15  Agent a perfected second priority security interest in the Property, (ii) Pledge and Security

16  Agreement, dated as of September 15, 2006, by CALC, in favor of Term Loan Agent (as modified,

17  amended, restated, supplemented, renewed or replaced from time to time), pursuant to which CALC

18  pledged to the Term Loan Agent the ownership interests in Hearthside Holdings, Inc. and Signal

19  Landmark Holdings, Inc., (iii) Pledge and Security Agreement, dated as of September 15, 2006, by

20  Hearthside Holdings, Inc., in favor of Agent (as modified, amended, restated, supplemented,

21  renewed or replaced from time to time), pursuant to which such pledgor pledged to Agent as

22  additional security for the Loan its ownership interests in Hearthside Homes, Inc.), (iv) Pledge and

23  Security Agreement, dated as of September 15, 2006, by Signal Landmark Holdings, Inc., in favor

24  of the Term Loan Agent, pursuant to which such pledgor pledged to the Term Loan Agent its

25  ownership interests in Signal Landmark (as modified, amended, restated, supplemented, renewed or

26  replaced from time to time), (v) Pledge and Security Agreement, dated as of September 15, 2006, by

27  Hearthside Homes, Inc., in favor of Agent (as modified, amended, restated, supplemented, renewed

28  or replaced from time to time), pursuant to which such pledgor pledged to term Loan Agent its

779302.2

1  ownership interests in it subsidiaries identified therein, and (vi) certain other collateral assignments
2  or security agreements for the benefit of the Term Loan Agent. As of the Petition Date,
3  approximately $99,800,000 in principal, plus accrued and unpaid interest, fees and expenses,
4  remained outstanding under the Prepetition Term Loan Agreement.

5      12.    On November 6, 2009, the Debtors filed the Cash Collateral Motion pursuant to
6  which the Debtors requested authority to use cash collateral in which the Prepetition Secured
7  Lenders had an interest. On November 12, 2009, the Court entered the "Interim Order pursuant to
8  Section 105, 362, 363, 503 and 507 of the Bankruptcy Code and Bankruptcy Rule 4001 (I)
9  Authorizing Use of Cash Collateral; (II) Providing Adequate Protection to Prepetition Lenders;
10 (III) Modifying the Automatic Stay and (IV) Scheduling Final Hearing" (the "<u>First Interim Order</u>").
11 Thereafter the Agent and the Lenders have consented to, and the Court has entered, five more
12 interim orders authorizing the use of cash collateral (collectively, the "<u>Interim Orders</u>").

13     13.    The Sixth Interim Order authorized the use of cash collateral through May 12, 2010,
14 but provided that if the Debtors filed a plan of reorganization that was not supported by the
15 Prepetition Secured Lenders that authority to use cash collateral would terminate seven calendar
16 days after the filing of the plan of reorganization. On March 26, 2010, the Debtors filed their Joint
17 Plan of Reorganization that does not have the support of the Prepetition Secured Lenders.
18 Accordingly, the Debtors' authority to use cash collateral under the Sixth Interim Order will
19 terminate automatically on April 2, 2010.

20     **C.**    **Valuation of Brightwater.**

21     14.    The Debtors have engaged Mr. Carl DiStefano, MAI of DiStefano Company to
22 provide a Self-Contained Report of a Complete Appraisal for the Brightwater Project (the "<u>2010
23 Appraisal</u>"). A copy of the 2010 Appraisal is attached as Exhibit B to the DiStefano Declaration.
24 Mr. DiStefano is a Certified General Real Estate Appraiser, has an MBA from Stanford University
25 with an emphasis in real estate and finance, and a BGS from University of Nebraska with an
26 emphasis in economics. Mr. DiStefano has extensive experience appraising residential and
27 commercial real estate projects.

-7-

779302.2

15. Mr. DiStefano believes that Brightwater has an "as is" value of approximately $219.7 million.[1] Mr. DiStefano provides an "as is" market value for Brightwater that represents "the value to a single buyer intending to resell the individual units, taking into consideration appropriate reductions and discounts from retail value." DiStefano Decl. Ex. B at 56. Mr. DiStefano reaches his valuation using "the discounted cash flow method (in the case of residential subdivisions, sometimes called the development method) under the income capitalization approach." *Id.*

16. To determine the net revenues generated from the construction and sale of units in Brightwater, Mr. DiStefano compared the current sale prices for the Trails, Sands, Cliffs, and Breakers to sale prices for comparable new home sales and individual resales of homes. Mr. DiStefano identified six comparable homes to the Trails and Sands homes in Brightwater, which include Salt Pond in Costa Mesa, three individual homes in Costa Mesa, Sycamore Stream in Costa Mesa, one re-sale in Corona del Mar, the Village of Woodbury in Irvine, and one re-sale in Seal Beach. None of the properties identified as comparable are located on the coast. After making a series of adjustments to the six comparable properties, Mr. DiStefano estimates that the current market rates for homes comparable to the Trails and the Sands range from $449.75 to $567.08.

17. Mr. DiStefano employed a similar process to determine the market rates for homes in the Cliffs and Breakers neighborhoods. Mr. DiStefano identified six comparable homes to the Cliffs and Breakers, including SeaPoint at Crystal Cove in Newport Beach, The Tides at Crystal Cove in Newport Beach, two re-sale homes in Huntington Beach, one re-sale home in Manhattan Beach, and one re-sale home in Corona del Mar. After making a series of adjustments to the six comparable properties, Mr. DiStefano estimates that the current market rates for homes comparable to the Cliffs and the Breakers without a view range from $506.92 to $515.87 per square foot and with a view range from $828.88 to $956.67 per square foot.

---

[1] Mr. DiStefano prepared an appraisal of Brightwater in October 2009 that placed an "as is" value on the project of approximately $232 million. Approximately $9.1 million of the $12.3 million difference between the 2009 appraisal and the 2010 appraisal is attributable to the fact that the Debtors closed the sale of 10 homes in Brightwater that are not included in the 2010 Appraisal. *See*, DiStefano Decl. at ¶6.

-8-

779302.2

18. Finally, Mr. DiStefano considered the actual sales history of units in Brightwater as a basis for determining the retail prices for the units in the discounted cash flow analysis. Mr. DiStefano found that the actual sales of the Trails and the Sands resulted in a range from $462.78 to $533.37 per square foot, the Cliffs and Breakers without a view ranged from $429.22 to $509.50 per square foot, and the Cliffs and Breakers with a view ranged from $632.73 to $863.36. Primarily relying on the actual sales history at Brightwater, as supported from the comparable sales outside of Brightwater, Mr. DiStefano concluded that "[t]he Brightwater actual prices are within (or below) the range of the comparable data off Brightwater, so it can be concluded that the Brightwater units are reasonably priced." DiStefano Decl. Ex. B at 77.

19. After forecasting the revenues for the sale of units in Brightwater, Mr. DiStefano deducts costs of construction and sale, referred to as "development costs." Mr. DiStefano relies upon the Debtors' projected development costs for the 2010 Appraisal.

20. Mr. DiStefano considered two additional factors in his analysis – the rate of appreciation in sales prices and the rate of sales of the remaining units in Brightwater. Mr. DiStefano modeled three different sale price appreciation scenarios. As a basis for setting his three different price appreciation scenarios, Mr. DiStefano considered, among other things, data from Real Estate Economics and Dr. Walter Hahn, an experienced real estate economist. In addition, Mr. DiStefano modeled three different sales rate scenarios. The first scenario projected the completion of Brightwater in 2015, the second scenario in 2014, and the third scenario in 2013. In reaching his opinion on the value of Brightwater, Mr. DiStefano concludes that the second scenario for sales rate and price appreciation is the most reasonable scenario.

21. Finally, Mr. DiStefano discounts the cash flows from the projected sales of units at Brightwater back to February 1, 2010 using a discount rate of 16%. Mr. DiStefano considered many factors in reaching his discount rate, including the uniqueness of Brightwater, market rates of return on residential real estate developments, and the internal rate of return from the Debtors' prepetition sale of the model homes to IHP in December 2008. Using his discount rate, Mr. DiStefano concludes that Brightwater has an "as is" value of approximately $219.7 million.

### D. The Need For Cash Collateral And The Budget.

22. The Debtors' have a critical need to use cash collateral. Access to cash collateral is essential to ensure timely payment of employees' wages, salaries, and other employee-related obligations to maintain employee morale and not risk the loss of personnel critical to the Debtors' operations and reorganization. Without access to cash collateral, the Debtors may be required to cease their operations and the Debtors, their estates and their creditors would all be irreparably harmed.

23. In addition, the ability to use cash collateral has certain intangible benefits that are critical to the Debtors' restructuring efforts. The Debtors' reorganization hinges on the ongoing cooperation of suppliers, vendors, and employees to ensure a restructuring in an orderly and reasonable manner which seeks to preserve and enhance value of the Debtors' business for the benefit of all parties in interest. These parties need to be assured that not only will the Debtors' business continue, but that the Debtors will have access to the necessary funds in the coming months. Similarly, the Debtors' customers require the confidence that the Debtors will have the resources to continue to construct and close on the sale of homes already under contract and that may be sold by new contracts.

24. As described in the Pacini Declaration, the Debtors currently hold approximately $4.1 million of cash collateral in which the Prepetition Secured Lenders have an interest. The Debtors have prepared a budget (the "Budget"), attached hereto as Exhibit C, showing their cash collateral needs through the end of April 2010. The Budget reflects expected proceeds from the sale of homes at Brightwater, the costs of constructing homes at Brightwater, the Debtors general administrative and overhead costs, restructuring costs, and the adequate protection payments proposed in the Interim Order. As shown in the Budget, the Debtors' expect to use approximately $2 million through April 19, 2010, which is the proposed deadline for obtaining a Final Order authorizing use of cash collateral.

## III. ARGUMENT

25. By this Motion, the Debtors seek entry of the Interim Order granting the following relief, including without limitation:

> a. authorizing the Debtors to use Cash Collateral pursuant to sections 361 and 363 of the Bankruptcy Code;
>
> b. approving the form of adequate protection provided to the Prepetition Secured Lenders pursuant to sections 361, 362, and 363 of the Bankruptcy Code;
>
> c. scheduling a Final Hearing on the Motion to consider entry of the Final Cash Collateral Order; and
>
> d. granting related relief.

26. A debtor-in-possession's use of cash collateral is governed by 11 U.S.C. § 363(c), which provides:

> The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless --
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c). *see also Wattson Pac. Ventures v. Valley Fed. Sav. & Loan (In re Safeguard Self Storage Trust)*, 2 F.3d 967, 969-970 (9th Cir. 1993). "'Cash collateral' is defined as 'cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest….'" 11 U.S.C. § 363(a).

### A. The Court Has Authority To Authorize Use Of Cash Collateral Without The Consent Of The Prepetition Agent.

27. The Agent and the Prepetition Secured Lenders' prior consent to use cash collateral will terminate on April 2, 2010 and they have not indicated that they are willing to consent to any further use of cash collateral thereafter. Section 363(c)(2)(B) permits the Court to authorize the Debtors to use cash collateral without the consent of the party that has an interest in cash collateral provided that the Court finds that the secured party is adequately protected. 11 U.S.C. § 363(e)

-11-

779302.2

("[A]t any time, on request of an entity that has an interest in property used . . . by the trustee, the court, with or without a hearing, shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest."); *see, In re Plaza Family P'ship*, 95 B.R. 166, 172 (E.D. Cal. 1989).

28. The Bankruptcy Code does not set forth a specific definition of "adequate protection." Rather, section 361 provides three non-exclusive examples of treatment that suffices to adequately protect the interests of a secured creditor:

> When adequate protection is required . . . of an interest of an entity in property, such adequate protection may be provided by –
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the . . . use . . . under section 363 of this title . . . results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such . . . use . . . results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361. The Debtors need only prove adequate protection by a preponderance of the evidence. *In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 268 (Bankr. C.D. Cal. 1988).

29. As shown below, the Debtors have satisfied their burden and demonstrated that the Prepetition Secured Lenders' interests in Brightwater and cash collateral are adequately protected through the following: an equity cushion of at least 17.39%, the granting of replacement liens in assets in which the Prepetition Secured Lenders previously had no interest, the payment of interest and the reasonable fees and expenses of the Prepetition Agent, compliance with a budget, and additional protections in the proposed order.

**B.  The Prepetition Secured Lenders Are Adequately Protected Through An Equity Cushion In Brightwater.**

30. A sufficient equity cushion – the amount by which the secured property's actual value exceeds the amount owed to a secured creditor – is "the classic" form of adequate protection. *See, In re Mellor*, 734 F.2d 1396 (9th Cir. 1984) ("Although the existence of an equity cushion as a

-12-

779302.2

method of adequate protection is not specifically mentioned in § 361, it is the classic form of protection for a secured debt justifying the restraint of lien enforcement by a bankruptcy court."); *Plaza Family P'ship*, 95 B.R. at 172 (*citing In re San Clemente Estates*, 5 B.R. 605, 610 (S.D. Cal. 1980); 2 Collier on Bankruptcy, § 361.02[3] at 361-69 (15th ed. 1979)); *see also Mendoza v. Temple-Inland Mortgage Corp. (Matter of Mendoza)*, 111 F.3d 1264, 1272 (5th Cir. 1997) (*quoting In re Indian Palms Assoc., Ltd.*, 61 F.3d 197, 207 (3d Cir. 1995) ("[I]n determining whether a secured creditor's interest is adequately protected, most courts engage in an analysis of the property's "equity cushion.")). Whether an equity cushion exists is a question of fact. *Id.*

31.     The Bankruptcy Appellate Panel for the Ninth Circuit has implied that a 10% equity cushion satisfies the adequate protection standard. *Pacific First Bank ex rel. RT Capital Corp. v. Boulders on the River (In re Boulders on the River)*, 164 B.R. 99, 104 (B.A.P. 9th Cir. Or. 1994) (*citing Mellor*, 734 F.2d at 1401); *see also In re McGowan*, 6 B.R. 241 (Bankr. E.D. Pa. 1980) (finding a 10% equity cushion sufficient to provide adequate protection); *but see Principal Mut. Life Ins. Co. v. Atrium Dev. Co. (In re Atrium Dev. Co.)*, 159 B.R. 464, 471 (Bankr. E.D. Va. 1993) (stating that an equity cushion of less than 11% is probably insufficient to provide adequate protection). The Ninth Circuit Bankruptcy Appellate Panel relied on this implied holding to find that an 11.45% equity cushion constituted adequate protection. *Boulders on the River*, 164 B.R. at 104.

32.     Currently, approximately $181,500,000 remains outstanding under the Prepetition Credit Agreements. The obligations under the Prepetition Credit Agreements are secured by liens against Brightwater and the Debtors' cash. As of the filing of this Motion, the Debtors held approximately $4.1 million in cash in various deposit accounts that are subject to liens in favor of the Prepetition Agent. As discussed above, Mr. DiStefano has placed a market value of Brightwater at $219.7 million. When taken together with the Debtors' cash, the value of the Prepetition Secured Lenders' collateral is approximately $223.8 million, which gives the Prepetition Secured Lenders an equity cushion of approximately 18.90%, which is significantly above the minimum threshold approved in other cases in the Ninth Circuit.

33. The Prepetition Agent will likely contend that the Court should use a liquidation value in determining whether an equity cushion exists to support use of cash collateral. Several courts have held, including this Court recently, that "where a reorganization is in process and there is every reason to believe that it will be successful, assets of the debtor should be valued on a going concern basis." *In re Helionetics, Inc.*, 70 B.R. 433, 439 (Bankr. C.D. Cal. 1987); *see also In re QPL Components, Inc.*, 20 B.R. 342 (Bankr. E.D. N.Y. 1982). Recently, in *In re BLX Group, Inc.*, 419 B.R. 457 (Bankr. D. Mon. 2009), the Bankruptcy Court for the District of Montana used an "as is" appraised value for a golf course containing several residences in determining whether a secured lender was adequately protected. *Id.* at 470-1; *see also In re Deep River Warehouse, Inc.*, No. 04-52749, 2005 Bankr. LEXIS 1090 (Barnk. M.D. N.C. March 14, 2005).

34. Similarly, the Court should adopt Mr. DiStefano's "as is" market valuation of Brightwater. The Debtors have reasonable prospects at reorganizing as they continue to attract customers, have closed on the sale of 11 homes since the commencement of these cases and entered into at least four sales contracts this year and have 11 homes in backlog. The Debtors have also filed their joint plan of reorganization and accompanying disclosure statement. Given the equity value in the Debtors' primary asset, the Debtors are on the path to reorganization. Accordingly, the "as is" valuation provided by Mr. DiStefano is appropriate.

**C.     The Debtors Are Offering Additional Adequate Protection.**

35. While the equity cushion in the Prepetition Secured Lenders' collateral alone supports authorization to use cash collateral over the objection of the Prepetition Agent and the Prepetition Secured Lenders, the Debtors are offering additional forms of protection that taken together more than adequately protect the Prepetition Agent and the Prepetition Secured Lenders' interests in cash collateral. The Court should consider the totality of the protection offered to determine whether adequate protection exists.

**1.     Replacement Liens In Fresh Collateral.**

36. As indicated by section 361, additional or replacement liens are common forms of adequate protection. 11 U.S.C. § 361(2); *see MBank Dallas, N.A., v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987). When a debtor is authorized to use its cash collateral, the

-14-

779302.2

secured creditor "has the corresponding right to seek, from the court, both a lien on property and priority to the extent necessary to insure adequate protection." *Arkison v. Frontier Asset Mgmt. (In re Skagit Pac. Corp.)*, 316 B.R. 330, 336 n.5 (9th Cir. BAP 2004); *see also United States v. Nat'l Westminster Bank USA (In re Q-C Circuits Corp.)*, 231 B.R. 506, 511 (E.D.N.Y. 1999) (finding that the Bankruptcy Court was "well within its powers" when it provided replacement liens as adequate protection for the debtor's use of the cash collateral).

37. In the Interim Cash Collateral Orders, the Debtors granted the Prepetition Agent for the benefit of the Prepetition Secured Lenders, liens (the "Adequate Protection Liens"), to the extent of diminution in value of the Prepetition Agent's collateral, against assets in which the Prepetition Agent and the Prepetition Secured Lenders did not previously have an interest (the "Fresh Collateral"). A list of the Fresh Collateral is attached hereto as Exhibit D. The Fresh Collateral includes the following assets:

- The Ridge – a five acre parcel of real estate in Huntington Beach near Brightwater on which the Debtors intend to develop the first "green" neighborhood in Orange County consisting of a 22-lot master planned community;

- 73 unimproved lots in Lancaster, California;

- Equity interest in non-debtor subsidiaries, including New Henley Holdings Inc., which owns approximately 100 acres of land in Huntington Beach; and

- Other personal real and personal property as identified as "Fresh Collateral" on Exhibit D hereto.

38. These assets serve as additional collateral to protect the Prepetition Secured Lenders against diminution in value of their prepetition collateral.

**2. Periodic Cash Payments of Interest and Reasonable Fees And Expenses of The Prepetition Agent.**

39. Another form of adequate protection under section 361 is periodic cash payments. 11 U.S.C. § 361(1). Under the prior Interim Orders, the Debtors have timely made periodic cash payments of interest at the contract non-default rate provided under the Prepetition Credit Agreements. The Debtors propose to continue to pay interest at the contract non-default rate as and when due and payable under the Prepetition Credit Agreements during the period in which the

-15-

779302.2

1  Debtors are authorized to use cash collateral. *See, In re Sunnymead Shopping Center Co.*, 178 B.R.
2  284, 296 (9th Cir. B.A.P. 1998).

3      40.    In addition, under the Interim Cash Collateral Orders the Debtors have paid the
4  reasonable fees and expenses of professionals retained by the Prepetition Agent. The Debtors
5  currently propose to pay the reasonable fees and expenses of one law firm for the Prepetition Agent
6  and one financial advisor for the Prepetition Agent. The Debtors understand that certain of the
7  Prepetition Secured Lenders have engaged independent counsel in these cases. The Interim Orders
8  did not require the Debtors to pay the fees and expenses of individual Prepetition Secured Lenders.
9  The Debtors believe that the individual Prepetition Secured Lenders are not entitled to compensation
10  for their independent counsel. Accordingly, the Debtors do not propose to pay the fees and expenses
11  incurred by individual Prepetition Secured Lenders.

### 3. Compliance with a Budget and Other Protections.

13      41.    The Interim Orders required the Debtors to use cash collateral in accordance with a
14  budget. The Debtors propose to continue to use cash collateral within a budget with certain
15  modifications to the provisions in the Interim Orders as another form of adequate protection. *See In
16  Federal Nat'l Mortgage Ass'n v. Dacon Bolingbrook Assocs. Ltd. P'ship*, 153 B.R. 204, 209 (N.D.
17  Ill. 1993) (recognizing that compliance with a budget may be an element of adequate protection).
18  Attached hereto as Exhibit C is the proposed budget showing expenditures through the end of April
19  2010. The budget reflects that the Debtors will only use approximately $2 million of cash collateral
20  through April 19, 2010 until the Court can hold a final hearing on the Motion.

21      42.    With respect to final approval of use of cash collateral, the Debtors are requesting
22  that the final order include some additional flexibility in the Budget that was not previously included
23  in the short term uses of cash collateral authorized by the Interim Orders. First, the Debtors request
24  the final order include a provision that to the extent that any amounts in any category are not used in
25  a given month, that such amounts will be rolled over to the next month for that category. In
26  addition, to account for timing differences, the Debtors request, in the final order, the ability to
27  spend up to 10% above the amount budgeted in any specific category.

43. Finally, with respect to final approval of use of cash collateral, the Debtors require some flexibility in the Budget to account for the possibility that sales activity at Brightwater picks up faster than projected in the Budget. While the Debtors have a certain amount of standing inventory that is partially completed, the Debtors also sell homes that need to be constructed from the ground up. Generally, the Debtors would only start construction on these homes when they sign a sales contract and all contingencies have been removed. However, there are times when adjacent unsold homes at the Trails and/ or Sands have to be constructed at the same time due to the small lot nature of these homes. The Budget projects a certain number of sales during the budget period that requires a certain amount of construction. To the extent that the Debtors' sales activities perform better than projected, the construction cost line item in the Budget would need to be increased to account for the additional cost of constructing the new home that is subject to a sales contract. The proposed final order would include a mechanism that would increase the construction cost line item in the Budget by an aggregate amount of $300,000 per home (which would be spread over a period of four months consistent with the schedule of construction for such home) for a Trails or Sands home and an aggregate amount of $500,000 per home (which would be spread over a period of six months consistent with the schedule of construction for such home) for a Cliffs or Breakers home to the extent that the Debtors sign a sales contract for a home that is not already included in the Budget and that all contingencies to the sale have been removed. Such an increase in the Budget inures to the benefit of the Prepetition Secured Lenders as it facilitates the closing of a sale of a home in Brightwater to generate future cash in which the Prepetition Agent has a lien.

44. In addition to operating within a Budget, the Interim Cash Collateral Orders contained several events of default and required the Debtors to comply with numerous provisions in the Prepetition Credit Agreements. The Debtors propose to continue to perform in accordance with the Prepetition Credit Agreements as provided in the Interim Cash Collateral Orders. The Debtors also propose to keep many of the events of default. However, the Debtors have eliminated certain events of default to reflect the fact that use of cash collateral is authorized on a non-consensual basis, such as the elimination of the events of default related to the outside date and the Debtors request to use cash collateral on a non-consensual basis.

45.     Finally, the Interim Orders previously included a waiver of the surcharge under section 506(c) of the Bankruptcy Code for so long as the Prepetition Agent and the Prepetition Secured Lenders had consented to the use of cash collateral. Given that the Prepetition Agent and the Prepetition Secured Lenders do not consent, the Debtors have removed the 506(c) wavier from their proposed order. But, the Debtors have preserved the rights of the Prepetition Agent and the Prepetition Secured Lenders to seek to terminate the use of cash collateral in the future, along with the Debtors' rights to oppose such a request.

**IV.    CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form of the proposed Order attached hereto as Exhibit A, granting the following relief: (a) authorizing the Debtors to use Cash Collateral pursuant to sections 361 and 363 of the Bankruptcy Code on an interim basis; (b) approving the form of adequate protection provided to the Prepetition Secured Lenders pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code; (c) modifying the automatic stay; (d) scheduling a Final Hearing on the Motion to consider entry of a Final Cash Collateral Order; and (e) granting related relief.

DATED:  March 26, 2010

HENNIGAN, BENNETT & DORMAN LLP
865 South Figueroa Street, Suite 2900
Los Angeles, CA 90017


By: */s/ Joshua M. Mester*
    Bruce Bennett
    Joshua M. Mester
    Michael C. Schneidereit

*Reorganization Counsel for Debtors
and Debtors in Possession*