HENNIGAN, BENNETT & DORMAN LLP
BRUCE BENNETT (Cal. Bar No. 105430)
JOSHUA M. MESTER (Cal. Bar No. 194783)
MICHAEL C. SCHNEIDEREIT (Cal. Bar No. 234956)
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200
Fax: (213) 694-1234

*Reorganization Counsel for Debtors*
*and Debtors in Possession*

MILBANK, TWEED, HADLEY & McCLOY LLP
ROBERT J. MOORE
LINDA DAKIN-GRIMM
DAVID ZOLKIN
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone: (213) 892-4000

*Counsel for Wilmington Trust, FSB, as Agent*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| *In re* | ) Case No. 8:09-21712-TA |
| ☐ CALIFORNIA COASTAL COMMUNITIES, INC. | ) |
| ☐ SIGNAL LANDMARK HOLDINGS, INC. | ) Jointly Administered with Case Nos. |
| ☐ SIGNAL LANDMARK | ) 8:09-21713-TA; 8:09-21714-TA; |
| ☐ HEARTHSIDE HOLDINGS, INC. | ) 8:09-21715-TA; 8:09-21717-TA; |
| ☐ HEARTHSIDE HOMES, INC. | ) 8:09-21718-TA; 8:09-21719-TA; |
| ☐ HHI CHANDLER, L.L.C. | ) 8:09-21720-TA; 8:09-21721-TA; |
| ☐ HHI CHINO II, L.L.C. | ) 8:09-21722-TA; 8:09-21723-TA |
| ☐ HHI CROSBY, L.L.C. | ) |
| ☐ HHI HELLMAN, L.L.C. | ) <u>Chapter 11</u> |
| ☐ HHI LANCASTER I, L.L.C. | ) |
| ☐ HHI SENECA, L.L.C. | ) **JOINT MOTION FOR ORDER** |
| | ) **APPROVING SETTLEMENT AMONG THE** |
| ☐ All Debtors | ) **DEBTORS, THE AGENT, AND THE** |
| | ) **PREPETITION SECURED LENDERS** |
| Debtors. | ) **PURSUANT TO FED. R. BANKR. P. 9019;** |
| | ) **DECLARATION OF RAYMOND J. PACINI** |
| | ) **IN SUPPORT** |
| | ) |
| | ) <u>Hearing</u> |
| | ) |
| | ) **Requested Date**:  July 28, 2010 |
| | ) **Requested Time**:  2:00 p.m. |
| | ) Place:  Courtroom "5B" |
| | )         411 West Fourth Street |
| | )         Santa Ana, CA 92701-4593 |
| | ) |

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1610559.1

1    **TO THE HONORABLE THEODOR C. ALBERT AND INTERESTED PARTIES**:

2         **PLEASE TAKE NOTICE THAT** California Coastal Communities, Inc. ("CALC"), and

3    affiliated debtors and debtors in possession (collectively, the "Debtors") and Wilmington Trust, FSB

4    (the "Agent"), as agent, hereby move this Court for the entry of an order, in substantially the form of

5    the proposed Order attached hereto as Exhibit A, pursuant to section 105 of the Bankruptcy Code

6    and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving

7    the terms of the Settlement Agreement and Release dated as of July 13, 2010 (the "Settlement

8    Agreement") attached hereto as Exhibit B.

9         Contemporaneously with the filing of this Motion, the Debtors have filed a request to have

10   the Motion considered on shortened time.  A separate notice of the hearing on the Motion and the

11   applicable deadline to respond or object to the Motion will be served separately.

12        In support of this Motion, the Debtors and the Agent represent as follows.

13                                  **INTRODUCTION**

14        1.        Since the end of March 2010, the Debtors, the Agent and the prepetition secured

15   lenders (the "Lenders") have been engaged in extensive litigation over, among other things, plan of

16   reorganization and disclosure statement issues.  During the course of this litigation, the Debtors

17   obtained a commitment from Luxor Capital Group, L.P. ("Luxor") to provide exit financing, which

18   Debtors have represented would be sufficient to repay the full allowed claims of the Agent and

19   Lenders in cash on the effective date of a new plan.

20        2.        On July 15, 2010, after extensive negotiations, the Debtors, the Agent, and nearly all

21   of the Debtors' secured lenders (the "Lender Parties"),[1] entered into the Settlement Agreement

22   attached hereto as Exhibit B.  The Settlement Agreement provides a full resolution, in the context of

23   a new plan that would timely implement the Luxor exit financing, of the issues between the Debtors,

24   on the one hand, and the Lender Parties and the Agent, on the other hand, eliminates more than $6.6

25

26   _____

27   [1]   As of the filing of this Motion, the only lender (other than Luxor, which recently acquired a
     position in the loans) that has not signed the Settlement Agreement is Franklin, which is seeking
28   approval through the FDIC process applicable to decision-making by that Lender.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    million in expenses of the estate, and eliminates further litigation over the Debtors' new plan,

2    thereby facilitating the Debtors' emergence from chapter 11 at the earliest possible time.

3    　　　　　3.　　　　Under the Settlement Agreement, the Agent and the Lenders, among other things,

4    have agreed (i) to stand down on their objections to the Debtors' latest revised disclosure statement

5    and new amended plan, (ii) to waive claims for default interest, which exceed $6 million, (iii) that

6    the Lenders will absorb a portion of the Agent's and Lender Parties' professional fees for the period

7    April through August, thus requiring the Debtors to reimburse the Agent only a discounted amount

8    for professional fees and for the months of April through June, resulting in an additional $600,000 in

9    savings to the estate, and with a cap on fees for the months of July and August, and (iv) to provide

10    the Debtors with broad release relating to claims against the Debtors arising during that period.  In

11    turn, the Debtors have agreed to the allowance and payment in full, in cash, on the plan effective

12    date (which must occur by no later than August 31, 2010), of full principal and non-default interest

13    portions of the Agent's and Lender Parties' claims under the governing loan agreements, plus a

14    broad release relating to claims that the Debtors may possess against the Agent and the Lender

15    Parties.

16    　　　　　4.　　　　The Settlement Agreement is beneficial to the estates and should be approved for

17    several reasons.  First, the Settlement Agreement enables the Debtors to avoid substantial litigation

18    among the parties over the Debtors' disclosure statement and plan, litigation that could jeopardize or

19    delay confirmation of the Debtors' Fourth Amended Joint Plan and the Debtors' prompt exit from

20    these bankruptcy cases.  Second, it reduces the Agent's and the Lender Parties' claims against the

21    estate by more than $6.6 million through the waiver of default interest and reductions of professional

22    fees and expenses incurred by the Agent and the Lender Parties that could have been borne by the

23    estate.  Third, the Settlement Agreement minimizes the Debtors', the Agent's, and the Lender

24    Parties' professional fees going forward, which provides an additional cost savings to the estate.

25    　　　　　5.　　　　Accordingly, the Motion should be granted.

26    　　　　　　　　　　　　　　　　　　**JURISDICTION**

27    　　　　　6.　　　　This Court has subject matter jurisdiction to consider this matter pursuant to 28

28    U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

1610559.1

## BACKGROUND

7.  On October 27, 2009 (the "<u>Petition Date</u>"), the Debtors commenced their reorganization cases by filing voluntary petitions under chapter 11 of the Bankruptcy Code.

8.  The Debtors are continuing in possession of their assets and are operating and managing their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

9.  Debtor California Coastal Communities, Inc. ("<u>CALC</u>"), a publicly traded company on the over-the-counter market (ticker: CALCQ), and its subsidiaries are in the business of residential land development and homebuilding with properties owned or controlled in various counties in Southern California.  The Debtors' principal activities are: (1) obtaining zoning and other entitlements for land that they own or under consulting contracts for other landowners; (2) improving the land for residential development; and (3) designing, constructing, and selling single-family homes on that land.  Debtor Hearthside Homes, Inc. is the homebuilder for the Debtors' projects, and performs construction and marketing functions for the Debtors' projects. Since 1994, the Debtors have delivered over 2,300 homes to families in Southern California.

10.  Currently, the Debtors' largest project is "Brightwater," a 356 unit master planned community located on 105 acres of the Bolsa Chica mesa in the City of Huntington Beach in Orange County, California.  Brightwater offers a broad mix of four different neighborhoods (the Trails, the Sands, the Cliffs, and the Breakers) with home choices ranging from 1,710 to 4,339 square feet and overlooks the Pacific Ocean and the recently restored 1,300-acre Bolsa Chica Wetlands.  The Brightwater project is one of the last remaining ocean-front developments in Southern California. As of the Petition Date, the Debtors had delivered 53 homes in Brightwater to individual home buyers and 17 model homes to an investor.  The Debtors have delivered an additional 20 homes between the Petition Date and June 30, 2010.

11.  The Debtors also have one other project – Debtor Signal Landmark owns The Ridge, located near Brightwater, which is in the beginning stages of development, with no construction having been commenced.  Debtor HHI Lancaster I, LLC ("<u>HHI Lancaster</u>") owns 73 unimproved

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1610559.1

lots in Lancaster, California.  On December 29, 2009, HHI Lancaster closed the sale of 54 improved

lots at Quartz Hill in Lancaster, California, to Richmond American Homes of Maryland, Inc.

12.     On March 26, 2010, the Debtors filed their Joint Plan of Reorganization and

accompanying disclosure statement (the "Original Disclosure Statement").

13.     On April 30, 2010, the Agent filed its objection to the Original Disclosure Statement.

14.     On May 7, 2010, the Debtors filed their Amended Joint Plan and Amended

Disclosure Statement.

15.     On May 12, 2010, the Bankruptcy Court held a hearing on the First Amended

Disclosure Statement.

16.     On May 19, 2010, the Debtors filed their Second Amended Joint Plan (the "Second

Amended Plan") and Second Amended Disclosure Statement.

17.     On June 17, 2010, the Bankruptcy Court entered an order approving the Second

Amended Disclosure Statement.

18.     On June 18, 2010, the Bankruptcy Court entered its "Order Granting Motion For

Entry Of An Order (A) Authorizing The Debtors To Enter Into An Exit Financing Commitment

Letter And Pay Related Fees; (B) Approving A Break Up Fee; (C) Authorizing The Debtors To

Amend Joint Plan Of Reorganization; And (D) Rescheduling And Consolidating Hearings On

Valuation And Plan Confirmation" (the "Exit Financing Order").

19.     On June 23, 2010, the Debtors filed their Third Amended Joint Plan (the "Third

Amended Plan") and Third Amended Disclosure Statement (the "Third Amended Disclosure

Statement").

20.     The Agent immediately thereafter advised the Debtors of issues that it had with the

Third Amended Disclosure Statement and the Third Amended Plan.  The Debtors and the Agent,

however, were unable to reach agreement regarding the disclosures contained in the Third Amended

Disclosure Statement.

21.     On July 2, 2010, the Debtors filed their Fourth Amended Joint Plan (the "Plan") and

Fourth Amended Disclosure Statement (the "Fourth Amended Disclosure Statement").

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1610559.1

1    22.    On July 6, 2010, the Bankruptcy Court, without receiving a filed objection to the

2    Third Amended Disclosure Statement or conducting a hearing on the Third Amended Disclosure

3    Statement, entered an order approving the Third Amended Disclosure Statement.

4    23.    On July 8, 2010, the Agent filed an objection to the Third Amended Disclosure

5    Statement and the Fourth Amended Disclosure Statement (the "Agent's Disclosure Statement

6    Objection").

7    24.    The Debtors have disputed certain fees and expenses incurred by the Agent and the

8    Lender Parties and, notwithstanding prior stipulations by the Debtors regarding the extent, validity

9    and priority of the Agent's and Lender Parties' claims and security interests, have recently reserved

10    certain rights and claims against the Agent and Lenders based upon events that the Debtors assert

11    occurred after April 1, 2010.

12    25.    The Agent has contended that the Plan would not be confirmable over its objection

13    because (absent the Settlement Agreement) the Debtors would not be able to pay the Agent's and

14    Lenders' allowed claims in full, in cash, on the effective date of the Plan.  The Agent also has

15    disputed (i) certain of the professional fees incurred by the Debtors, (ii) that the Debtors have any

16    legitimate claims against the Agent or the Lenders and (iii) whether the Debtors' have made

17    adequate disclosures in the Third or Fourth Amended Disclosure Statement or the Plan (as defined

18    below) regarding such claims, and had reserved the right to assert, among other issues, that, as a

19    consequence of the Debtors' inadequate disclosures, any claims that the Debtors would pursue

20    against the Agent or the Lenders, would be barred under principles judicial estoppel.

21

22

23

24

25

26

27

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1610559.1

**THE SETTLEMENT**

26.     The Debtors, the Agent and the Lender Parties have agreed on a compromise that resolves, among other things, the Agent's and the Lenders' objections to confirmation of the Plan. The terms of the compromise are set forth in detail in the Settlement Agreement, the principal terms of which are summarized as follows:[2]

a.   Allowance of Claims of Agent:  Sections 3.1 and 3.2 of the Settlement Agreement provide for the allowance of the Agent's claims as follows:

i.   Revolving Loan Claims:  Section 3.1 of the Settlement Agreement provides for the allowance of the secured claims of the Agent under the Revolving Credit Agreement in the principal amount of $81,679,318.58, plus all accrued but unpaid interest at the non-default rate through the date of payment in full.

ii.   Term Loan Claims:  Section 3.2 of the Settlement Agreement provides for the allowance of the secured claims of the Agent under the Term Loan Credit Agreement in the principal amount of $99,800,000.00, plus all accrued but unpaid interest at the non-default rate through the date of payment in full.

b.   Allowance and Payment of Agent and Lender Professional Fees:  Section 3.3 of the Settlement Agreement provides that the professional fees of the Agent previously paid and provided for under the prior cash collateral orders and the fees and expenses of the Agent and the Lender Parties incurred through at Termination Event, as limited by sections 3.4 though 3.8 of the Settlement Agreement, shall be allowed secured claims.  Sections 3.4 through 3.8 of the Settlement Agreement provide as follows:

i.   Milbank Fees:  Section 3.4 of the Settlement Agreement provides that the Debtors will only be obligated to pay 65% of the monthly invoices for Milbank for the months of April, May, and June.  The Debtors have agreed to pay the agreed upon amounts for the April and May invoices within three business days of approval of the Settlement Agreement.  The Debtors have agreed to pay the agreed upon amount for the June Invoice upon the earlier of the Effective Date or August 31, 2010.  Section 3.4 of the Settlement Agreement further provides that the Debtors shall not be obligated to pay more than $75,000 per month for the months of July and August for the fees and expenses of Milbank, unless a Termination Event occurs.  The Debtors estimate that this agreement represents a savings of at least $475,000 to the estate.

ii.   FTI Consulting Fees:  Section 3.5 of the Settlement Agreement provides that the Debtors will pay the full amount of FTI's invoices for April and May 2010.  The Debtors had disputed FTI's invoices for December 2009,

---

[2]   To the extent there is a conflict between the summary of the Settlement Agreement and the terms in the Settlement Agreement, the terms of the Settlement Agreement shall control.  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Settlement Agreement.

1610559.1

January and June 2010.  Section 3.5 of the Settlement Agreement further provides that the Debtors will pay $184,000 in settlement of the disputed amounts for December 2009, and January and June 2010 within three business days of the approval of the Settlement Agreement.  Section 3.4 of the Settlement Agreement further provides that the Debtors shall not be obligated to pay more than $10,000 per month for the months of July and August for the fees and expenses of FTI, unless a Termination Event occurs.  The Debtors estimate that this agreement represents a savings of at least $124,000 to the estate.

iii.   Other Professionals/Experts:  Section 3.6 of the Settlement Agreement provides that the Debtors shall pay up to $43,400 of the unpaid fees and expenses incurred by the Agent's experts in the valuation litigation, Curtis-Rosenthal, Inc. ("CRI") and Robert Charles Lesser & Co. ("RCLC").  With respect to the fees and expenses of Barrier Advisors, another valuation expert retained by the Agent, Section 3.6 of the Settlement Agreement provides that the Debtors will pay either an amount mutually agreed upon with Barrier Advisors or the amount allowed by this Court upon resolution of the dispute over the Barrier Advisor invoice.

iv.   Lenders' Litigation Expenses:  Section 3.7 of the Settlement Agreement provides for the Debtors to pay the reasonable expenses incurred by the Lenders in responding to the Debtors' discovery requests in connection with the valuation litigation (the "Lender Litigation Expenses").  Section 3.7 of the Settlement Agreement further provides the Debtors with the ability to raise an objection to the reasonableness of the Lender Litigation Expenses and have such dispute resolved by the Court.

c.   Termination Event:  Section 3.8 of the Settlement Agreement provides that if (i) the Commitment Letter is terminated, (ii) Luxor otherwise terminates, reduces or materially modifies the terms of its commitment to provide the Exit Financing such that the Effective Date will not occur by August 31, 2010, or (iii) the Plan is not confirmed by the Bankruptcy Court (any of (i), (ii) and (iii) constituting a "Termination Event"), then the limitations and caps on the fees and expenses of Milbank, FTI, CRI and RCLCo, and on the fees of any professionals employed by any of the Lender Parties shall not apply after the Termination Event.

d.   Waiver of Default Interest and Other Fees and Charges:  Section 3.9 of the Settlement Agreement provides for the Agent and the Lender Parties to waive any claims that they may have to default interest, fees, and other charges, except as set forth in the Settlement Agreement.  The Debtors estimate that default interest alone exceeds $5 million.

e.   Mutual Releases:  Article IV of the Settlement Agreement provides for mutual releases of claims between the Debtors on the one hand and the Agent and the Lender Parties on the other hand, other than claims arising after the execution of the Settlement Agreement, claims specifically reserved in the Settlement Agreement, and enforcement of the terms of the Settlement Agreement.

f.   Resolution of Agent's Objections to Various Matters:  Article V of the Settlement Agreement provides for the Agent to withdraw its objection to the Fourth Amended Disclosure Statement, agree not to object to confirmation of the Fourth Amended Plan, and withdraw its pending objections and not assert any further objection to the professional fees incurred by the Debtors.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1610559.1

g.  <u>Condition Precedent</u>:  The releases and compromises in the Settlement Agreement are conditioned upon the Court entering an order approving the Settlement Agreement, provided however, the Agent has agreed to withdraw its objection to the Debtors' Fourth Amended Disclosure Statement upon the entry of an order shortening the time for the Court to hold a hearing on this Motion.

## **THIS COURT SHOULD APPROVE THE SETTLEMENT AGREEMENT**

27.    Inherent in the grant of jurisdiction to the Court's overall civil proceedings arising under, arising in or related to cases under Title 11 is the Court's authority, under § 105(a) of the Bankruptcy Code, to enter orders approving compromises.  This power is expressly recognized in the Federal Rule of Bankruptcy Procedure 9019(a), which provides that a court may approve a compromise or settlement after notice is provided in Rule 2002 of the Federal Rules of Bankruptcy Procedure 2002.  F.R.B.P. 2002(a)(3), 9019(a).  Approval of the compromise is a "core proceeding" under 28 U.S.C. §§ 157(b)(2)(A) and (0).  *See Druker v. Greene (In re Carla* Leather*, Inc.),* 50 B.R. 764, 775 (S.D.N.Y. 1985).  Lastly, Bankruptcy Code Section 323 authorizes a debtor-in-possession to compromise a controversy.  11 U.S.C. § 323(a).

28.    The approval or rejection of a proposed compromise is within the discretion of the Court and is to be determined by the particular circumstance of each case.  *See United States of America v. Alaska National Bank of the North (In re Walsh Construction, Inc.),* 669 F.2d 1325, 1328 (9th Cir. 1982).  "A bankruptcy court has wide latitude in approving compromise agreements which it determines to be fair, reasonable and adequate."  *Kashani v. Imperial Bank (In re Kashani),* 1995 U.S. App. LEXIS 5897, *5-6 (9th Cir. 1995) (citing *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988), and *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1382 (9th Cir. 1986).  A court, however, should not substitute its own judgment for the judgment of a trustee.  *See In re Carla Leather*, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984).  Indeed, in reviewing a proposed settlement, a court is not "to decide the numerous questions of law and fact … but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."  *In re W.T. Grant & Co.*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822.  A "mini-trial" on the merits of the underlying cause of action is not required and should not be undertaken by the Court.

1610559.1

1  *See In re Blair*, 538 F.2d 849 (9th Cir. 1976); *see also In re Walsh Construction, Inc.*, 669 F.2d 1325

2  (9th Cir. 1982).

3      29.      In determining the acceptability of a proposed compromise, the following four factors

4  should be considered:

5              (a)      The probability of success in the litigation;

6              (b)      The difficulties, if any, to be encountered in the matters of

7      collections;

8              (c)      The complexity of the litigation; and the expense,

9      inconvenience and delay necessarily attending it; and

10             (d)      The paramount interest of the creditors and the proper

11     deference to their reasonable views.

12 *See, A&C Properties*, 784 F.2d at 1381 (9th Cir. 1986); *see also, Lambert v. Flight*

13 *Transportation (Flight Transportation Corporation Securities Litigation)*, 730 F.2d 1128, 1135

14 (8th Cir.1984); *cert. denied nom, Reavis & McGrath v. Antinore*, 469 U.S. 1207 (1985).

15     30.      The factors from *A&C Properties* favor approval of the Settlement Agreement.  First

16 and foremost, the Settlement Agreement paves a clear path to the consensual confirmation of the

17 Plan.  Prior to parties' entry into the Settlement Agreement, the Agent maintained that the Plan

18 could not be confirmed over its objection because the Debtors would not be able to pay its claims in

19 full.  The Agent also objected to the disclosures in the Third Amended Disclosure Statement and

20 Fourth Amended Disclosure Statement regarding the nature and impact of claims being reserved

21 against the Agent and the Lenders, which would have delayed the Debtors' ability to conduct a

22 confirmation hearing any earlier than late August 2010.  The Settlement Agreement not only

23 removes the risks to confirmation posed by those objections, but enables the estates to avoid what,

24 inevitably, would be substantial expenses associated with further disclosure statement and plan

25 litigation.  The Debtors' believe that such litigation would have been complex, extensive, and taken

26 considerable time.

27     31.      Second, the Settlement Agreement provides the estate with a cost savings in excess

28 of $6.6 million consisting of the waiver of default interest and a reduction in professional fees of the

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-10-

1610559.1

1    Agent and the Lender Parties that could have been paid by the estate.  The waiver of default interest

2    gives the Debtors substantial value without requiring that the Debtors incur the costs of litigating

3    these issues.  Similarly, the agreement that the Debtors need not pay 35% of the Agent's counsel's

4    fees during the period in which litigation commenced is a substantial reduction and well-within the

5    range of reasonable outcomes.  Indeed, the Agent and the Lenders firmly believe that the fees and

6    costs of the Agent's professionals were reasonable given the circumstances and the nature of the

7    litigation, an argument that the Debtors dispute.  Moreover, the Agent and the Lenders have disputed

8    the legitimacy of the Debtors' claims against the Agent and the Lenders and have asserted that the

9    Debtors could be estopped from asserting such claims notwithstanding the Debtors' reservations of

10   rights.

11           32.     Third, any litigation commenced by the Debtors against the Agent and the Lenders,

12   or vice versa, would have been complex, hotly contested by the Agent and the Lenders, and, as a

13   consequence, extensive.  The Debtors and the Agent and the Lenders would have engaged in

14   extensive discovery in prosecuting and defending any claims against each other.  That process

15   would have taken significant time and imposed substantial expense on these estates.

16           33.     Finally, the Settlement Agreement serves the paramount interests of the Debtors'

17   unsecured creditors.  The substantial reduction in secured claims against the estate, particularly the

18   waiver of default interest and the limitation on the estate's obligation to pay professional fees,

19   creates value for unsecured creditors.  In addition, the elimination of future administrative expense

20   by avoiding protracted litigation is in the best interests of unsecured creditors.  Thus, approval of the

21   Settlement Agreement will resolve litigation that would have delayed confirmation and reduces

22   claims and expenses with priorities ahead of unsecured creditors, thereby benefiting all creditors.

23           34.     Accordingly, the *A&C Properties* factors favor approval of the Settlement Agreement

24   and the Motion should be granted.

25

26

27

28

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1610559.1

## <u>CONCLUSION</u>

**WHEREFORE**, the Debtors and the Agent respectfully request that the Court enter and order, substantially in the form of the proposed order attached hereto as <u>Exhibit A</u>, approving the Settlement Agreement and granting such other and further relief as the court may deem just and proper.

DATED:  July 16, 2010                    HENNIGAN, BENNETT & DORMAN LLP


By:   */s/ Joshua M. Mester*
          Bruce Bennett
          Joshua M. Mester
          Michael Schneidereit

Reorganization Counsel for Debtors
and Debtors in Possession


MILBANK, TWEED, HADLEY & McCLOY,
LLP


By:   */s/ David B. Zolkin*
          Robert J. Moore
          Linda Dakin-Grimm
          David Zolkin

Counsel for Wilmington Trust, FSB, as Agent

1610559.1