HENNIGAN, BENNETT & DORMAN LLP
BRUCE BENNETT (Cal. Bar No. 105430)
JOSHUA M. MESTER (Cal. Bar No. 194783)
MICHAEL C. SCHNEIDEREIT (Cal. Bar No. 234956)
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200
Fax: (213) 694-1234

*Reorganization Counsel for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| *In re*<br>☐ CALIFORNIA COASTAL COMMUNITIES, INC.<br>☐ SIGNAL LANDMARK HOLDINGS, INC.<br>☐ SIGNAL LANDMARK<br>☐ HEARTHSIDE HOLDINGS, INC.<br>☐ HEARTHSIDE HOMES, INC.<br>☐ HHI CHANDLER, L.L.C.<br>☐ HHI CHINO II, L.L.C.<br>☐ HHI CROSBY, L.L.C.<br>☐ HHI HELLMAN, L.L.C.<br>☐ HHI LANCASTER I, L.L.C.<br>☐ HHI SENECA, L.L.C.<br><br>☒ All Debtors<br><br>Debtors. | Case No. 8:09-21712-TA<br><br>Jointly Administered with Case Nos.<br>8:09-21713-TA; 8:09-21714-TA;<br>8:09-21715-TA; 8:09-21717-TA;<br>8:09-21718-TA; 8:09-21719-TA;<br>8:09-21720-TA; 8:09-21721-TA;<br>8:09-21722-TA; 8:09-21723-TA<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION FOR AUTHORITY TO ENTER INTO INSURANCE PREMIUM FINANCING AGREEMENT PURSUANT TO 11 USC §§ 105, 363 AND 364(c); DECLARATION OF SANDRA G. SCIUTTO IN SUPPORT THEREOF**<br><br>Hearing<br><br>Date: September 1, 2010<br>Time: 10:00 a.m.<br>Place: Courtroom "5B"<br>       411 West Fourth Street<br>       Santa Ana, CA 92701-4593 |

1610559.1

**TO THE HONORABLE THEODOR C. ALBERT AND INTERESTED PARTIES**:

**PLEASE TAKE NOTICE THAT** California Coastal Communities, Inc. ("CALC"), and its affiliated debtors and debtors in possession (collectively, the "Debtors") hereby move this Court for the entry of an order, in substantially the form of the proposed Order attached hereto as Exhibit A, authorizing the Debtors, pursuant to sections 105, 363 and 364 of Title 11 of the United States Code (the "Bankruptcy Code"), to enter into the insurance premium financing agreement (the "Agreement") with Premium Assignment Corporation II ("PAC"), attached hereto as Exhibit B.

*Terms of the Proposed Insurance Premium Financing:*

| Amount Financed | $899,643.05 |
|---|---|
| Annual Interest | 1.69% |
| Term | 15 months |
| Monthly Payment | $60,654.16 |
| Total Finance Charge Over Term of the Loan | $10,169.35 |
| Collateral | Unearned premiums under the policy |

*Statement Pursuant to Local Bankruptcy Rule 4001-2:* the Agreement does not contain any provision that must be identified under subsections (b) or (d) of Local Bankruptcy Rule 4001-2.

**PLEASE TAKE FURTHER NOTICE THAT,** pursuant to Local Bankruptcy Rule 9013-1(f), any objection, response, or joinder to this Motion must be in the form required by Local Bankruptcy Rule 9013-1(f) and filed with the Bankruptcy Court and served upon counsel for the Debtors, at the address set forth in the caption to this Motion, and upon the Office of the United States Trustee for the Central District of California, at 411 West Fourth Street, Suite 9041, Santa Ana, California 92701-8000, *so as to be received no later than August 18, 2010 (fourteen (14) days before the hearing on the Motion)*.  Papers not timely filed and served may be deemed by the Court to be consent to the granting of the Motion.

This Motion is based upon the accompanying Memorandum of Points and Authorities; the attached Declaration of Sandra G. Sciutto (the "Sciutto Declaration"), the record in these cases, and the following:

1610559.1

**JURISDICTION**

1. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**BACKGROUND**

2. On October 27, 2009 (the "Petition Date"), the Debtors commenced their reorganization cases by filing voluntary petitions under chapter 11 of the Bankruptcy Code.

3. The Debtors are continuing in possession of their assets and are operating and managing their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. Debtor California Coastal Communities, Inc. ("CALC"), a publicly traded company on the over-the-counter market (ticker: CALCQ), and its subsidiaries are in the business of residential land development and homebuilding with properties owned or controlled in various counties in Southern California.  The Debtors' principal activities are: (1) obtaining zoning and other entitlements for land that they own or under consulting contracts for other landowners; (2) improving the land for residential development; and (3) designing, constructing, and selling single-family homes on that land.  Debtor Hearthside Homes, Inc. is the homebuilder for the Debtors' projects, and performs construction and marketing functions for the Debtors' projects. Since 1994, the Debtors have delivered over 2,300 homes to families in Southern California.

5. Currently, the Debtors' largest project is "Brightwater," a 356 unit master planned community located on 105 acres of the Bolsa Chica mesa in the City of Huntington Beach in Orange County, California.  Brightwater offers a broad mix of four different neighborhoods (the Trails, the Sands, the Cliffs, and the Breakers) with home choices ranging from 1,710 to 4,339 square feet and overlooks the Pacific Ocean and the recently restored 1,300-acre Bolsa Chica Wetlands.  The Brightwater project is one of the last remaining ocean-front developments in Southern California. As of the Petition Date, the Debtors had delivered 53 homes in Brightwater to individual home buyers and 17 model homes to an investor.  The Debtors have delivered an additional 20 homes between the Petition Date and June 30, 2010.

1610559.1

6. The Debtors also have one other project – Debtor Signal Landmark owns The Ridge, located near Brightwater, which is in the beginning stages of development, with no construction having been commenced. Debtor HHI Lancaster I, LLC ("HHI Lancaster") owns 73 unimproved lots in Lancaster, California. On December 29, 2009, HHI Lancaster closed the sale of 54 improved lots at Quartz Hill in Lancaster, California, to Richmond American Homes of Maryland, Inc.

*The Proposed Insurance Premium Financing*

7. In the ordinary course of their business, the Debtors maintain general liability insurance. The Debtors' current policy, issued by Interstate Fire & Casualty ("Interstate"), was originally scheduled to expire on May 12, 2010, but was extended through August 12, 2010.

8. In anticipation of the Interstate policy's expiration, the Debtors' insurance broker engaged in extensive discussions with insurance carriers over the past four months in an effort to obtain new coverage on the most favorable terms available. The insurance broker solicited thirteen bids from the primary and excess insurance coverage markets and assembled a general liability wrap policy issued by Lexington Insurance and Ironhorse Specialty Insurance (the "Policy") by selecting the best of these bids. The Policy's full term runs from August 12, 2010 through August 12, 2014 but the premiums are split into two-year "phases." The premium will be allocated between the two phases as follows:

| Period | Premium Amount |
| --- | --- |
| Phase 1:<br>August 12, 2010 – August 12 2012 | $1,417,578.75 |
| Phase 2:<br>August 12, 2012 – August 12, 2014 | $776,158.75 |
| Full Term | $2,183,737.50 |

Based upon discussions with their insurance broker, the Debtors concluded that it was beneficial to lock-in a multi-year policy at this time because of favorable insurance rates for this type of policy.

9. Rather than pay the full premium for Phase 1 up front, the Debtors have obtained a commitment to finance a portion of the premium from Premium Assignment Corporation II ("PAC"). Under the premium financing agreement with PAC (the "Agreement") attached hereto as

-4-

1610559.1

Exhibit B, the Debtors will pay $517,935.70 of the Phase 1 premium up front to the insurance carrier and finance the remaining $899,643.05 over a period of 15 months. Under the terms of the financing agreement, the Debtors will pay interest at the rate of 1.69% and the financing will be secured by a lien against the unearned premiums under the Policy. The interest rate is approximately half of the current prime rate of 3.25%. Financing the premium for Phase 1 over the course of 15 months will increase the Debtors' liquidity at a cost of only $10,169.35 over the entire term of the loan.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

10. By this Motion, the Debtors seek authority to enter into the Agreement, pursuant to which PAC will finance the payment of a portion of the premium of the Debtors' general liability insurance policies for the Brightwater project. The Agreement provides for financing on an annual percentage rate of 1.69% over 15 months, and grants PAC a security interest in unearned premiums. For the reasons set forth below, the Debtors believe that the financing arrangements under the Agreement represent the best mechanism for financing the premiums for continuing their general liability insurance.

### A. Authority to Enter into the Agreement

11. Section 363(b)(1) of the Bankruptcy Code provides in relevant part that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." A debtor may generally use estate property outside of the ordinary course of business after notice and a hearing if the debtor can demonstrate that the disposition has a valid business justification and is in good faith. *See*, *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *240 North Brand Partners v. Colony GFP Partners, L.P. (In re 240 North Brand Partners)*, 200 B.R. 653, 659 (B.A.P. 9th Cir. Cal. 1996). Once a debtor has articulated a valid business justification for the disposition, a presumption arises that the decision was made on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company. *In re Integrated Resources*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (citing *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Courts will generally not interfere with corporate decisions absent a showing

-5-

1610559.1

of bad faith, self-interest, or gross negligence. *Id.* (citing *FSLIC v. Musacchio*, 695 F. Supp. 1053, 1064 (N.D. Cal 1988)).

12.  The Debtors' ability to acquire postpetition financing pursuant to the Agreement is governed by section 364(c) of the Bankruptcy Code, which provides:

> (c) If the Trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
>
> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. §364(c). Insurance premium financing agreements are common commercial transactions in every business industry. *In re Duke Roofing Co.*, 47 B.R. 990, 994 (E.D. Mich. 1985). As explained by the Fifth Circuit Court of Appeals:

> Premium financing involves an advance by the finance company to the insurance company or its agent of the premium due for the full term of the policy. This advance is then repaid by the insured to the finance company in amortized monthly installments which includes an additional amount to cover financing charges. The finance company is secured in making this advance by obtaining the right to cancel the policy and receive the return premium due upon cancellation if timely repayments are not made.

*Baker & Co. v. Preferred Mutual Insurance Co.*, 569 F.2d 1347, 1348 (5th Cir. 1978).

13.  Furthermore, Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate and operating the business for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also In re Count Liberty, L.L.C.*, 370 B.R. 259, 276 (Bankr. C.D. Cal. 2007) (holding that corporate officers must act as fiduciaries for the benefit of

-6-

1610559.1

creditors). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *In re CoServ*, 273 B.R. at 497.

**B.    The Financing Provided by the Agreement is in the Best Interests of the Estate and Reasonable**

14. Approval of the Agreement is in the best interests of the estate and consistent with sections 105, 363, and 364 of the Bankruptcy Code. The Debtors have been able to take advantage of the current market for liability insurance and lock-in favorable rates for coverage over the next four years. In order to preserve the benefits of the lower premiums for the extended period, the Debtors believe that it is beneficial to the estate and their business to finance the premium over time. First, the Debtors have been able to obtain favorable terms for financing the premium over the course of 15 months from PAC. The interest rate of 1.69% is approximately half of the current prime rate and represents a total cost of approximately $10,000. Financing the premiums over time will also increase the Debtors' liquidity for other operational needs.

15. The Debtors are informed by their broker and believe that these terms are the best that are available in the market after reasonable inquiry. The interest rate offered by PAC is far lower than other quotes obtained by the Debtors' insurance broker from other sources of financing for the Phase 1 premium. Furthermore, the only collateral securing the financing is the unearned premiums under the Policy. This is a standard feature of premium financing agreements. *Baker*, 569 F.2d at 1348. The Debtors' insurance broker has not obtained any offers to finance the premiums on an unsecured basis. The Debtors further submit that PAC is extending financing under the Agreement in good faith within the meaning of section 364(e) of the Bankruptcy Code.

16. Consequently, the Debtors believe in their business judgment that the Agreement is in the best interest of their estates.

1610559.1

## **CONCLUSION**

**WHEREFORE**, the Debtors respectfully request that the Court enter and order, substantially in the form of the proposed order attached hereto as Exhibit A, approving the Agreement and granting such other and further relief as the court may deem just and proper.

DATED: August 11, 2010                              HENNIGAN, BENNETT & DORMAN LLP


By: */s/ Joshua M. Mester*
    Bruce Bennett
    Joshua M. Mester
    Michael Schneidereit

Reorganization Counsel for Debtors
and Debtors in Possession

-8-

1610559.1