Robert Jay Moore (SBN 77495)
Linda Dakin-Grimm (SBN 119630)
David B. Zolkin (SBN 155410)
Delilah Vinzon (SBN 222681)
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone: (213) 892-4000
Facsimile: (213) 629-5063

Attorneys for Wilmington Trust FSB,
Successor Agent for Prepetition Secured Lenders

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CALIFORNIA COASTAL COMMUNITIES, INC., <u>et al.</u>,[1] | ) Case No.   8:09-21712-TA |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **CONDITIONAL CONSENT OF WILMINGTON TRUST FSB TO ENTRY OF FURTHER ORDERS APPROVING CONTINUING CASH COLLATERAL USE AND SALES OF HOMES** |
| | ) <u>Hearing</u> |
| | ) Date: September 8, 2010 |
| | ) Time: 10 a.m. |
| | ) Place: Courtroom "5B" |
| | )        411 West Fourth Street |
| | )        Santa Ana, CA 92701 |
| | ) |

---

[1] The Debtors, along with the last four digits of each Debtors' federal tax identification number are: California Coastal Communities, Inc. ("<u>CALC</u>") (6634) Signal Landmark Holdings Inc. (4663), Signal Landmark (5092), Hearthside Holdings, Inc. (5323), Hearthside Homes, Inc. (8051), HHI Chandler, L.L.C. (0897), HHI Chino II, L.L.C. (8596), HHI Crosby, L.L.C. (8650), and HHI Hellman, L.L.C. (5072), HHI Lancaster I, L.L.C. (8520), and HHI Seneca, L.L.C. (6572).

#4827-3191-2711
-1-
CONDITIONAL CONSENT OF WILMINGTON TRUST FSB TO ENTRY OF
FURTHER ORDER APPROVING CONTINUING CASH COLLATERAL USE

Wilmington Trust FSB, ("Wilmington" or the "Agent"), in its capacity as Successor Agent for the prepetition secured lenders (the "Lenders")[2], hereby submits this conditional consent ("Conditional Consent") to the entry of a further order in connection with (i) the Debtors' "Second Emergency Motion For Entry Of Interim Order (I) Authorizing Use Of Cash Collateral; (II) Providing Adequate Protection To Prepetition Lenders; (III) Modifying The Automatic Stay; And (IV) Scheduling A Final Hearing" (the "Cash Collateral Motion") [Docket No. 216] and (ii) the Debtors' ongoing sale of homes in a manner consistent with the Eleventh Interim Order (A) Authorizing The Debtors To Sell Homes Free And Clear Of Liens, Claims, Encumbrances And Other Interests; (B) Continuing Customer Programs; And (C) Establishing Procedures For The Resolution And Payment Of Operational Lien Claims (the "Eleventh Sale Order")[Docket No. 343].[3]

Just this week, the Debtors submitted to the Agent a budget dated August 23, 2010, a copy of which is attached hereto as "Exhibit A" (the "Budget"), which contemplates the Debtors' continued cash collateral use through the end of October, 2010. The Budget, disturbingly, shows that, absent the Debtors' successful closing of home sales that are not now contemplated in the Budget, the Debtors will be *completely* out of cash by the end of October, 2010.

Throughout the course of these cases, the Agent and the Lenders repeatedly have accommodated the Debtors' reasonable requests to use their cash collateral. Little more than two months ago, the Debtors obtained this Court's approval of their entry into a commitment letter

---

[2] The Lenders hold, in the aggregate, in excess of $181.7 million in secured claims under (i) that certain Senior Secured Revolving Credit Agreement, dated as of September 15, 2006 (the "Revolving Credit Agreement"), and (ii) that certain Senior Secured Term Loan Agreement, dated as of September 15, 2006 (the "Term Loan Agreement" and, together with the Revolving Credit Agreement, the "Loan Agreements").

[3] This pleading is filed in accordance with the provisions of the Second Interim Order Granting Second Emergency Motion For Order (I) Authorizing Use Of Cash Collateral (II) Providing Adequate Protection To Prepetition Lenders, (III) Modifying The Automatic Stay, And (IV) Scheduling Final Hearing [Docket No. 342] (the "Second Interim Order"), and the Eleventh Sale Order, each of which was entered by the Court on July 1, 2010.

("Commitment Letter") with Luxor Capital Group, L.P. ("Luxor"), pursuant to which, by August 31, 2010, Luxor (i) was to have supplied the Debtors with a $182 million financing facility (the "Exit Facility") that was to have provided the Debtors with all of the liquidity necessary for their prompt exit from bankruptcy[4], and (ii) would be entitled to seek payment of an approximate $6.4 million break up fee under certain circumstances tied to the terms of that exit funding commitment (the "Break Up Fee").  In seeking approval of the Commitment Letter, the Debtors represented to the Court that the Commitment Letter signified a *sea change* in these cases that would allow them to: (i) pay the Agent and Lenders in full, in cash, (ii) establish conclusively that the Lenders were oversecured, and (iii) exit bankruptcy by no later than August 31, 2010. Based upon the representations of the Debtors and their counsel at that hearing and the specific terms of that revised Commitment Letter, which the Court approved by order entered June 18, 2010 (the "Exit Financing Order"), and notwithstanding their significant reservations, the Agent and Lenders consented to the Debtors' continued use of their cash collateral through September 8, 2010, as evidenced by the Second Interim Order, in order to permit the Debtors and Luxor to implement their amended Plan.

In a further good faith effort to assist the Debtors in their effort to ensure that they would have sufficient liquidity to exit timely from these bankruptcy cases under the terms of the Commitment Letter, the Agent and Lenders subsequently agreed, as part of a broader settlement agreement with the Debtors dated July 13, 2010 (the "Settlement Agreement"), to walk away from more than $6 million dollars in default interest due under the Loan Agreements and to relieve the Debtors' estates from a closing liability under a confirmed revised Debtors' plan of in

---

[4] Luxor originally had committed to fund a $182 million exit facility.  At the June 18, 2010 hearing on the Debtors' motion to authorize their entry into the Commitment Letter (the "June 18 Hearing"), in response to the Agent's objection that the $182 million facility did not offer the Debtors sufficient liquidity to address all accrued and accruing administrative expenses such that it could obtain confirmation of its then Plan and exit from bankruptcy, the Debtors lodged a revised version of the Commitment Letter and advised the Court that Luxor had increased its commitment to $184 million to fully address any and all potential administrative expenses and assure a closing on or before the expiration of the commitment on August 31, 2010.

#4827-3191-2711 -2-
CONDITIONAL CONSENT OF WILMINGTON TRUST FSB TO ENTRY OF
FURTHER ORDER APPROVING CONTINUING CASH COLLATERAL USE

excess of $650,000 in professional fees—professional fees to which the Agent otherwise would have been entitled to recover under the Loan Agreements. The Court heard the Debtors' motion to approve the Settlement Agreement (the "Settlement Motion") [Docket No. 376] on July 28, 2010 and approved the Settlement Agreement from the bench.[5]

Unfortunately, within weeks (if not days) of the Court's entry of the Exit Financing Order (and as Agent had predicted at the hearing on the Luxor Commitment Letter), Luxor refused to move forward with its financing commitment. The Debtors never even commenced the solicitation process with respect to their amended Plan. On July 28, 2010, on the very day that the Court heard the Settlement Motion, the Debtors were forced by Luxor to make a public pronouncement that they had agreed to modify Luxor's financing commitment such that, as a condition to Luxor's obligation to close on the Exit Facility, the Debtors would be obligated to raise an additional $15 million of subordinated debt and/or equity capital (the "Junior Capital Financing"). The Debtors did not seek or obtain Court approval of this material modification to Luxor's Court-approved Commitment Letter. Instead, they filed a fifth amended plan of reorganization (the "Fifth Amended Plan") that incorporated the terms of the Junior Capital Financing as a new condition to the plan's effective date and a fifth amended disclosure statement ("Disclosure Statement") in support thereof. To date, the Debtors have not sought approval of the latest Disclosure Statement and have not proceeded with the Fifth Amended Plan.

To protect the interests of the estates and the Agent and Lenders, the Agent has moved the Court to reconsider its entry of the Exit Financing Order (the "Reconsideration Motion") on grounds that the imposition of the material new condition to the closing of the Exit Facility (the new $15 million Junior Capital Financing) represents a material change of the facts upon which the Court relied in approving the Commitment Letter and the attendant Break Up Fee over the

---

[5] The Court entered the order approving the Settlement Agreement (the "Settlement Order") [Docket No. 415] on August 24, 2010.

#4827-3191-2711                    -3-
CONDITIONAL CONSENT OF WILMINGTON TRUST FSB TO ENTRY OF
FURTHER ORDER APPROVING CONTINUING CASH COLLATERAL USE

Agent's objections.  In the alternative, the Agent has asked the Court to clarify the Exit Financing Order by ruling that the Debtors' estates will have no liability for the Break Up Fee in the event that the Plan cannot go effective on account of the Debtors' inability to raise the Junior Capital Financing.[6]

The harm to the estates and, in particular to the Agent and Lenders, by Luxor's and the Debtors' sudden and unilateral modifications to the Commitment Letter is substantial. As the Agent predicted in the Reconsideration Motion, the Debtors have been unable to raise the $15 million in Junior Capital Financing.  Luxor's Commitment Letter terminates on August 31, 2010— just six days from now.  Luxor has abandoned its financing commitment.  And Luxor certainly has not agreed to extend its financing commitment.  In turn, the Debtors apparently have abandoned their Fifth Amended Plan of Reorganization, leaving these cases in disarray.

Because the Debtors have not sold homes at the pace contemplated in their prior Cash Collateral budget, the Debtors' cash position, which is the Agent's and Lenders' collateral, is rapidly deteriorating.  Although the Budget indicates that the Debtors have two months of cash left, that cash position is principally dependent upon, among other assumptions, the Debtors' successful sale, delivery, and closing of at least 3 completed homes during that period and the recovery of a $953,000 income tax refund by the end of September.  There is no certainty that either of these things will occur.  If any of the Debtors' assumptions fail, their cash position, and the Agent's and Lenders' collateral, would deteriorate at a much faster pace than outlined in the Budget and the Debtors literally would run out of any cash on which to operate and meet their accruing administrative expense obligations.

The Agent and Lenders stood down in their challenges to the Debtors' reorganization efforts and to the Debtors' plan exclusivity in reliance on the Commitment Letter

---

[6] The Reconsideration Motion is set to be heard by the Court on September 8, 2010, the date of the continued hearing on the Cash Collateral Motion.  The facts and arguments set forth in the Reconsideration Motion are incorporated herein by this reference in order to provide the Court with further context.

#4827-3191-2711                                  -4-
CONDITIONAL CONSENT OF WILMINGTON TRUST FSB TO ENTRY OF
FURTHER ORDER APPROVING CONTINUING CASH COLLATERAL USE

and on the Debtors' and Luxor's representations to this Court that Luxor's financing commitment was real, non-contingent, and that the Agent and Lenders would be paid in full. As it turns out, Luxor's financing commitment was anything but real. Months and millions of dollars have been lost to this failed process. With cash now running out, it is essential that these Debtors immediately exit from bankruptcy. Time is of the utmost essence.

Although the Agent and Lenders, once again, are willing to consent to the Debtors' continued use of their cash collateral, that consent is conditioned on the following essential terms:

(i)  The Debtors shall continue to provide the Agent with weekly budget reconciliations with detail satisfactory to the Agent, in its sole discretion.

(ii)  If at any time during the cash collateral period contemplated by the Budget, the Debtors' cash balance falls below $2 million, the Debtors' right to continue to use cash collateral will immediately and automatically terminate (absent further written consent from the Agent).

(iii)  The Debtors' exclusive right to file and solicit a plan shall not be extended beyond August 31, 2010. The Debtors have been given numerous opportunities (at great expense to the Agent and Lenders) to remain in control of their reorganization. They have failed to fulfill numerous promises made to the Court and to the Agent and Lenders. During the July 27, 2010 hearing on the Settlement Motion, the Court made clear that, under the circumstances, the Court would be reluctant to grant the Debtors a further extension of plan exclusivity. There is no compelling reason to permit the Debtors to retain exclusivity at this stage of these cases.

(iv)  The Debtors immediately shall withdraw the "Application For Order Expanding Scope Of Retention Of Imperial Capital, LLC As Financial Advisor For The Debtors And Debtors In Possession" (the "<u>Amended Imperial Application</u>") [Docket No. 413] that they filed on August 19, 2010. Pursuant to the Amended Imperial Application, the Debtors

#4827-3191-2711     -5-
CONDITIONAL CONSENT OF WILMINGTON TRUST FSB TO ENTRY OF
FURTHER ORDER APPROVING CONTINUING CASH COLLATERAL USE

1  now seek both to expand the engagement of their financial advisor, Imperial Capital, LLC
2  ("Imperial") and to pay Imperial $100,000 a month, plus a $700,000 Restructuring Transaction
3  Fee, which is to be paid upon virtually any restructuring of the Company, even one proposed by
4  a party other than the Debtors and even for a period extending one year following Imperial's
5  termination.  Under the circumstances, the expansion of Imperial's responsibilities and the
6  payment of any further fees to the Debtors' financial advisors from the Agent and Lenders cash
7  collateral is unreasonable.

8           (v)    The grants of protection set forth in the cash collateral Order must
9  otherwise be substantially similar to earlier cash collateral orders entered in the case, including
10 the Second Interim Order, and wholly acceptable to the Agent.  The cash collateral Order must
11 contain releases commensurate with the releases contained in all prior cash collateral orders
12 other than the Second Interim Order.

13         To be clear, the Agent does not believe that the foregoing will adequately protect
14 its interests in its collateral.  The Agent's and the Lenders' consent to the Debtors' continued
15 cash collateral use, absent the immediate filing and prompt confirmation of a Debtors' Plan,
16 which pays the Agent and Lenders in full from the proceeds of the Luxor Exit Financing, is
17 intended to permit the Debtors' to bridge the time it will take for the Lenders to propose, solicit,
18 and implement a confirmable plan of reorganization that will enable the Debtors to exit from
19 bankruptcy in a timely manner.

20         The Agent and Lenders also are willing to consent to the entry of a twelfth interim
21 order authorizing the Debtors' continued sale of homes, provided that (i) the Debtors' right to
22 sell homes shall continue to be tied to the Debtors' right to use the Agent's and Lenders' cash
23 collateral and (ii) such twelfth interim order is acceptable in form and substance to the Agent.

#4827-3191-2711                           -6-
CONDITIONAL CONSENT OF WILMINGTON TRUST FSB TO ENTRY OF
FURTHER ORDER APPROVING CONTINUING CASH COLLATERAL USE

1 | The Agent respectfully requests that the Court enter further orders consistent with
2 | the protections set forth herein.

3 | Dated: August 25, 2010    **MILBANK TWEED HADLEY & M<sup>c</sup>CLOY LLP**

By: _____/s/ Delilah Vinzon_____
  Robert Jay Moore
  Linda Dakin-Grimm
  David B. Zolkin
  Delilah Vinzon

  Attorneys for Wilmington Trust FSB,
  Successor Agent for Prepetition Secured Lenders

#4827-3191-2711

-7-

CONDITIONAL CONSENT OF WILMINGTON TRUST FSB TO ENTRY OF
FURTHER ORDER APPROVING CONTINUING CASH COLLATERAL USE

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.

Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  601 South Figueroa Street, 30th Floor, Los Angeles, CA  90017

A true and correct copy of the foregoing document CONDITIONAL CONSENT OF WILMINGTON TRUST FSB TO ENTRY OF FURTHER ORDERS APPROVING CONTINUING CASH COLLATERAL USE AND SALES OF HOMES will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 25, 2010 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

mbradshaw@shbllp.com; rbrunette@sheppardmullin.com; rgarretson@ptwww.com;
nancy.goldenberg@usdoj.gov; aimoisili@milbank.com; hisrael@kayescholer.com;
jben@kayescholer.com; ssolow@kayescholer.com; efile@pbgc.gov; mesterj@hbdlawyers.com;
kroe@wthf.com; dfunsch@wthf.com; krussak@frandzel.com; efiling@frandzel.com;
banderson@frandzel.com; jsamuels@sidley.com; ustpregion16.sa.ecf@usdoj.gov;
mwallin@sheppardmullin.com; cmillet@gibsondunn.com

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____ served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 25, 2010 | Delilah Vinzon | /s/ Delilah Vinzon |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

#4827-3191-2711