FILED & ENTERED

NOV 15 2010

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY ngo        DEPUTY CLERK

1  HENNIGAN, BENNETT & DORMAN LLP
   BRUCE BENNETT (Cal. Bar No. 105430)
2  JOSHUA M. MESTER (Cal. Bar No. 194783)
   MICHAEL C. SCHNEIDEREIT (Cal. Bar No. 234956)
3  865 South Figueroa Street, Suite 2900
   Los Angeles, California 90017
4
   Telephone: (213) 694-1200
5  Fax: (213) 694-1234

6
7  *Reorganization Counsel for*
   *Debtors and Debtors in Possession*

8           **UNITED STATES BANKRUPTCY COURT**
            **CENTRAL DISTRICT OF CALIFORNIA**
9                  **SANTA ANA DIVISION**

10

11  *In re*                                )  Case No. 8:09-21712-TA
                                           )
12  ☐ CALIFORNIA COASTAL                   )  Jointly Administered with Case Nos.
        COMMUNITIES, INC.                  )  8:09-21713-TA; 8:09-21714-TA;
13  ☐ SIGNAL LANDMARK HOLDINGS INC.        )  8:09-21715-TA; 8:09-21717-TA;
    ☐ SIGNAL LANDMARK                      )  8:09-21718-TA; 8:09-21719-TA;
14  ☐ HEARTHSIDE HOLDINGS, INC.            )  8:09-21720-TA; 8:09-21721-TA;
    ☐ HEARTHSIDE HOMES, INC.               )  8:09-21722-TA; 8:09-21723-TA
15  ☐ HHI CHANDLER, L.L.C.                 )  Chapter 11
    ☐ HHI CHINO II, L.L.C.                 )
16  ☐ HHI CROSBY, L.L.C.                   )  **FOURTH INTERIM ORDER GRANTING**
    ☐ HHI HELLMAN, L.L.C.                  )  **SECOND EMERGENCY MOTION FOR**
17  ☐ HHI LANCASTER I, L.L.C.              )  **ORDER (I) AUTHORIZING USE OF CASH**
    ☐ HHI SENECA, L.L.C.                   )  **COLLATERAL (II) PROVIDING**
18                                         )  **ADEQUATE PROTECTION TO**
    ☒ All Debtors                          )  **PREPETITION LENDERS, (III)**
19                                         )  **MODIFYING THE AUTOMATIC STAY,**
                                           )  **AND (IV) SCHEDULING FINAL HEARING**
20                   Debtors.              )
                                           )       Hearing
21                                         )
                                           )  Date:  October 27, 2010
22                                         )  Time:  11:00 a.m.
                                           )  Place: Courtroom "5B"
23                                         )         411 West Fourth Street
                                           )         Santa Ana, CA 92701-4593
24                                         )
                                           )     Final Hearing
25                                         )
                                           )  Date:  December 1, 2010
26                                         )  Time:  10:00 a.m.
                                           )  Place: Courtroom "5B"
27                                         )         411 West Fourth Street
                                           )         Santa Ana, CA 92701-4593
28  _____     )

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

1631274.5

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

1  Upon the Second Emergency Motion (the "Motion") dated March 26, 2010 of California

2  Coastal Communities, Inc. ("CALC" or the "Company") and its direct and indirect subsidiaries

3  (each, individually a "Debtor" and, collectively, the "Debtors" in the above captioned chapter 11

4  cases (collectively, the "Chapter 11 Cases")) pursuant to sections 105, 361, 362, 363, 503 and 507 of

5  title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of

6  Bankruptcy Procedure (the "Bankruptcy Rules") for entry of (1) an Order (the "Interim Order")

7  (a) authorizing the Debtors to use Cash Collateral (as hereinafter defined) on an interim basis

8  pending a final hearing on the Motion (the "Final Hearing"), (b) granting adequate protection to the

9  Prepetition Agent and the Prepetition Lenders (each as hereinafter defined), (c) modifying the

10  automatic stay and (d) scheduling a Final Hearing on the Motion  and (2) an order granting the relief

11  requested in the Motion on a final basis (the "Final Order"); and the Court having considered the

12  Motion and the exhibits attached thereto, including, without limitation, the Budget (as hereinafter

13  defined); and a hearing to consider approval of the Motion on an interim basis pursuant to

14  Bankruptcy Rule 4001 having been held and concluded on March 31, 2010 (the "First Interim

15  Hearing"), a second interim hearing having been held and concluded on June 30, 2010 (the "Second

16  Interim Hearing"), a third interim hearing having been held and concluded on September 8, 2010

17  (the "Third Interim Hearing"), and a fourth interim hearing having been held and concluded on

18  October 27, 2010 (the "Fourth Interim hearing" and, collectively with the First Interim Hearing,

19  Second Interim Hearing, and Third Interim Hearing, the "Interim Hearings"); and all of the

20  proceedings held before the Court; and after due deliberation and consideration and good and

21  sufficient cause appearing therefor,

22  **THE COURT HEREBY FINDS:**

23  A.    **Petition Date**.  On October 27, 2009 (the "Petition Date"), each of the Debtors filed a

24  voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Each Debtor is continuing in

25  the management and possession of its business and properties as a debtor-in-possession pursuant to

26  sections 1107(a) and 1108 of the Bankruptcy Code.  The Chapter 11 Cases of the Debtors are being

27  jointly administered under Case No. 09-21712-TA.

28

1631274.5

B.      **Committee.**  As of the date hereof, no request has been made for the appointment of a trustee or examiner and no statutory committee of unsecured creditors has been appointed in the Chapter 11 Cases.

C.      **Jurisdiction and Venue.**  This Court has jurisdiction over the Chapter 11 Cases, this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      **Notice**.  Notice of the relief sought by the Motion, and each Interim Hearing was delivered via facsimile, electronic mail, and/or overnight delivery to the following parties in interest: (i) the United States Trustee for the Central District of California (the "U.S. Trustee"); (ii) those parties listed on the Consolidated List of Creditors Holding the Largest 25 Unsecured Claims Against the Debtors, as identified in connection with the Debtors' chapter 11 petitions; (iii) all other parties with liens of record on assets of the Debtors as of the Petition Date; (iv) counsel to the Prepetition Agent; (v) the Internal Revenue Service; (vi) the Securities and Exchange Commission and (vi) all parties having filed a request for special notice pursuant to Bankruptcy Rule 2002(i) (collectively, the "Interim Notice Parties").  The Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with Bankruptcy Rules 2002, 4001 and 9014 and section 102(1) of the Bankruptcy Code in all respects for purposes of entering this Interim Order, and no other further notice of the Motion or this Interim Order is necessary or required.

E.      **Debtors' Stipulations**.  The Debtors acknowledge, admit, stipulate and confirm the following as of the Petition Date:

1.      Pursuant to that certain Senior Secured Revolving Credit Agreement dated as of September 15, 2006 (as amended, supplemented, or otherwise modified from time to time, and together with all schedules and exhibits therewith, the "Prepetition Revolving Loan Credit Agreement") among the Debtors, the lenders party thereto from time to time (each a "Prepetition Revolving Loan Lender" and, collectively, the "Prepetition Revolving Loan Lenders"), KeyBank

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

1631274.5

National Association, as Agent for the Prepetition Revolving Loan Lenders (in such capacity, together with any successors thereto in such capacity, the "Prepetition Revolving Loan Agent") and the other parties thereto, the Prepetition Revolving Loan Lenders made certain revolving loans, advances and other financial accommodations to the Debtors to fund, among other things, the Debtors' operations, in an amount not to exceed $100,000,000.

2.    Pursuant to that certain Senior Secured Term Loan Agreement dated as of September 15, 2006 (as amended, supplemented, or otherwise modified from time to time and together with all schedules and exhibits therewith, the "Prepetition Term Loan Credit Agreement" and together with the Prepetition Revolving Loan Credit Agreement, the "Prepetition Credit Agreements")[1], among the Debtors, the lenders party thereto from time to time (each a "Prepetition Term Loan Lender" and, collectively, the "Prepetition Term Loan Lenders" and together with the Prepetition Revolving Loan Lenders, the "Prepetition Lenders"), KeyBank National Association, as Agent for the Prepetition Term Loan Lenders (in such capacity, together with any successors thereto in such capacity, the "Prepetition Term Loan Agent" and together with the Prepetition Revolving Loan Agent, the "Prepetition Agent") and the other parties thereto, the Prepetition Term Loan Lenders made certain term loans to fund, among other things, the Debtors' operations, in the original principal amount of $125,000,000.

3.    The Debtors' obligations under the Prepetition Credit Agreements are secured, and otherwise evidenced, by the Security Documents (as such term is defined in each of Prepetition Credit Agreements and each as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Security Documents") and, together with the Prepetition Credit Agreements and the other Loan Documents (as such term is defined in each of Prepetition Credit Agreements and each as amended, restated, supplemented, or otherwise modified from time to time), the "Prepetition Financing Documents."

---

[1]    Unless otherwise defined herein, all capitalized terms used herein have the meanings ascribed to such terms in the Prepetition Credit Agreements.

1631274.5

4.      As of the Petition Date, each of the Debtors was (and as of the date hereof, each of the Debtors is) jointly and severally indebted and liable to the Prepetition Agent and the Prepetition Lenders, without defense, counterclaim, or offset of any kind, in respect of loans made to the Debtors under the Prepetition Financing Documents in the aggregate principal amount of not less than (i) $81,679,317.58 (plus accrued and unpaid prepetition interest, fees, costs and other expenses including, without limitation, professional fees and expenses) pursuant to the Prepetition Revolving Loan Credit Agreement (collectively, with all other Obligations (as such term is defined in the Prepetition Revolving Loan Credit Agreement), the "Prepetition Revolving Loan Indebtedness") and (ii)  $99,800,000.00 (plus accrued and unpaid prepetition interest, fees, costs and other expenses including, without limitation, professional fees and expenses) pursuant to the Prepetition Term Loan Credit Agreement (collectively, with all other Obligations (as such term is defined in the Prepetition Term Loan Credit Agreements), the "Prepetition Term Loan Indebtedness," and together with the Prepetition Revolving Loan Indebtedness, the "Prepetition Indebtedness").

5.      Pursuant to the Prepetition Financing Documents, Signal Landmark granted first priority liens on, and continuing pledges and security interests in, all of the property, rights and interest of Signal Landmark in the Project (as defined in the Prepetition Revolving Loan Credit Agreement) as described in the Prepetition Security Documents (the "Prepetition Revolving Collateral") to and/or for the benefit of the Prepetition Revolving Loan Agent and Prepetition Revolving Loan Lenders to secure the Prepetition Revolving Loan Indebtedness (collectively, the "Prepetition Revolving Liens").

6.      Pursuant to and as set forth in the Prepetition Financing Documents: (i) Signal Landmark granted second priority liens on, and continuing pledges and security interests (junior only to the liens, pledges and security interests granted to the Prepetition Revolving Loan Agent for the benefit of the Prepetition Revolving Loan Lenders) in, the Brightwater Project and all Other Projects classified as Qualified Projects from time to time (each as defined in the Prepetition Term Loan Credit Agreement) as described in the Prepetition Security Documents (the "Junior Prepetition Term Loan Collateral"); (ii) CALC granted first priority liens in and on, and continuing pledges and security interests in and on, CALC's ownership interests in Hearthside Holdings, Inc. and Signal

1631274.5

Landmark Holdings, Inc.; (iii) Hearthside Holdings, Inc. granted first priority liens in and on, and continuing pledges and security interests in and on, its ownership interests in Hearthside Homes, Inc.; (iv) Signal Landmark Holdings, Inc. granted first priority liens in and on, and continuing pledges and security interests in and on, its ownership interests in Signal Landmark; and (v) Hearthside Homes, Inc. granted first priority liens in and on, and continuing pledges and security interests in and on, its ownership interests in certain of its subsidiaries identified therein (the collateral described in clauses (ii) through (v) constituting the "Senior Prepetition Term Loan Collateral" and together with the Junior Prepetition Term Loan Collateral, the "Prepetition Term Loan Collateral") to and/or for the benefit of the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders to secure the Prepetition Term Loan Indebtedness (collectively, the "Prepetition Term Liens," and collectively with the Prepetition Revolving Liens, the "Prepetition Liens").  For the avoidance of doubt, the term "Prepetition Collateral" shall refer to (a) collateral in or upon which a lien or other security interest has been granted in favor or for the benefit of the Prepetition Agent or the Prepetition Lenders in connection with, pursuant to or under the Prepetition Credit Agreements or the other Prepetition Financing Documents, and (b) any Prepetition Collateral provided under any Prepetition Financing Documents, including that described in this paragraph 6, that existed as of the Petition Date together with all prepetition and, pursuant to section 552 of the Bankruptcy Code, all postpetition proceeds, products, offspring, rents, issues and profits thereof or therefrom (collectively, as used hereinafter, "Proceeds").

7.     Pursuant to that certain Acknowledgment and Purchase Agreement dated as of September 15, 2006 (the "Intercreditor Agreement"), the Prepetition Revolving Loan Agent and the Prepetition Term Loan Agent acknowledged and agreed, *inter alia*, that: (i) the Prepetition Revolving Credit Agreement created a perfected, first priority security interest in and to the Project; and (ii) the interest created by the Term Collateral Agreement (as defined in the Intercreditor Agreement) in any of the foregoing proceeds is subordinate in all respects to the security interest created by the Revolver Collateral Documents (as defined in the Intercreditor Agreement) and the application thereof shall be governed by the terms and conditions of the Prepetition Revolving Credit Agreement.

1631274.5

8.      Each of the Prepetition Financing Documents is a valid and binding agreement and obligation of the Debtors, and the Prepetition Liens (i) constitute valid, binding, enforceable and perfected first or (as applicable) second priority prepetition security interests and liens as provided therein, subject only to the Permitted Liens (as defined in the respective Prepetition Financing Documents), but only to the extent such Permitted Liens are valid, enforceable, non-avoidable liens and security interests that are perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code and applicable non-bankruptcy law), which are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and that are senior in priority to the Prepetition Liens under applicable law and after giving effect to any applicable subordination or intercreditor agreements, and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code, applicable non-bankruptcy law or otherwise.

9.      (i) The Prepetition Indebtedness constitutes the legal, valid and binding obligation of the Debtors, enforceable in accordance with its terms; (ii) the amount of the Prepetition Indebtedness is due and payable to the Prepetition Agent for the benefit of the Prepetition Lenders in an amount not less than the amounts set forth in paragraph E.4. above plus the amounts set forth in clause (iii) of this paragraph; (iii) the Debtors admit that the value of the Prepetition Collateral exceeds the amount of the Prepetition Indebtedness, therefore pursuant to section 506(b) of the Bankruptcy Code, the Prepetition Agent is entitled to be paid post-petition interest on the Prepetition Indebtedness, as well as reasonable pre-petition and post-petition fees, costs and charges related to the Prepetition Indebtedness, all as provided in the Prepetition Financing Documents (such admission of the Debtors shall not constitute an admission by the Prepetition Agent or any of the Prepetition Lenders for any purpose, including, without limitation, in connection with any subsequently conducted valuation of the Collateral under section 506(b) or any other provision of the Bankruptcy Code or Bankruptcy Rules); (iv) no objection, offset, defense or counterclaim of any kind or nature to the Prepetition Indebtedness exists, and the Debtors shall not assert any claim, counterclaim, setoff or defense of any kind, nature or description that would in any way affect the

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

1631274.5

validity, enforceability and non-avoidability of any of the Prepetition Indebtedness; and (v) the Prepetition Indebtedness, and any amounts previously paid to the Prepetition Agent or any Prepetition Lender on account thereof or with respect thereto, are not subject to avoidance, recharacterization, reduction, disallowance, impairment, disgorgement, set-aside, assignment or subordination pursuant to the Bankruptcy Code, applicable non-bankruptcy law or otherwise.  The Debtors do not have any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise, with respect to the Prepetition Indebtedness or against any of the Prepetition Agent or the Prepetition Lenders and their respective predecessors-in-interest, affiliates, subsidiaries, agents, officers, directors, employees, and attorneys, with respect to the Prepetition Indebtedness and the Prepetition Financing Documents; provided, however, that the Debtors and other parties in interest reserve any and all rights, claims, counterclaims, defenses against Luxor Capital Group, L.P. ("Luxor"), and any affiliates or funds that it manages or advises, with respect to any claim or dispute arising in connection with or from (x) that certain Commitment Letter dated June 18, 2010 (the "Commitment Letter"), pursuant to which Luxor committed to provide the Debtors with exit financing pursuant to the terms set forth therein and (y) the facts surrounding the termination of the Commitment Letter (hereafter, (x) and (y) collectively, the "Luxor Exit Financing Dispute")..

10.     The Prepetition Agent (on its behalf and on behalf of the Prepetition Lenders) holds properly perfected security interests and liens in and on the Prepetition Collateral by, among other methods, the filing of UCC-1 financing statements, mortgages and other required documents against the Debtors and such Prepetition Collateral with the proper state and county offices for the perfection of such security interests and liens.

F.     **Cash Collateral**.  The Prepetition Agent's and the Prepetition Lenders' cash collateral shall consist of all "cash collateral" as that term is defined in section 363(a) of the Bankruptcy Code and shall be referred to as "Cash Collateral."

G.     **Prepetition Agent's Consent**.  The Prepetition Agent is willing to consent to the Debtors' use of the Cash Collateral and the granting of the Adequate Protection Liens (as hereinafter defined) but only to the extent provided in the Budget for the duration of this Interim Order and

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

1631274.5

solely pursuant to the terms and conditions set forth in this Interim Order.  The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary to obtain the consent or non-objection of the Prepetition Agent to the Debtors' use of Cash Collateral.  In the event of any conflict between the terms and provisions of any of the Interim Orders and the Prepetition Financing Documents, the terms and provisions of this Interim Order shall control.

H.    **Good Faith**.  Based on the record before the Court, the terms of the use of the Cash Collateral as provided in this Interim Order have been negotiated at arm's length and in "good faith," between the Debtors and the Prepetition Agent and are in the best interests of the Debtors, their estates, and creditors.  The Prepetition Agent is permitting the use of its Cash Collateral, in good faith, and the Prepetition Agent is entitled to the benefits attendant to such finding.

I.    **Cause Shown**.

(a)    Good cause has been shown for the immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b) and Local Bankruptcy Rule 4001-2.  The Debtors have an immediate and critical need to use the Cash Collateral to continue to operate their business, and effectuate a reorganization of their businesses and the use of Cash Collateral will minimize disruption to the Debtors' estates.  The Debtors' use of Cash Collateral has been deemed sufficient to meet the Debtors' immediate postpetition liquidity needs pending the Final Hearing, subject to the terms of this Interim Order, and all other agreements delivered pursuant hereto, including without limitation, the Budget.

(b)    The ability of the Debtors to have sufficient available sources of working capital to continue their businesses, to attempt to effectuate a reorganization of their businesses and to attempt to maximize the value of their assets depends upon the Debtors' use of Cash Collateral.

(c)    Based on the record presented to the Court at the Interim Hearings, good, adequate and sufficient cause has been shown to justify the immediate grant of the relief requested in the Motion, and the immediate entry of this Interim Order to avoid immediate and irreparable harm to the Debtors and their estates.  The terms of the Debtors' use of the Cash Collateral (i) are fair and reasonable, (ii) reflect the Debtors' prudent exercise of business judgment consistent with

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

1631274.5

their fiduciary duties, (iii) constitute reasonably equivalent value and fair consideration for the Prepetition Agent's consent thereto, and (iv) are necessary, essential and appropriate for the continued operation and management of the Debtors' businesses and the preservation of their assets and properties.  Entry of this Interim Order is in the best interest of the Debtors, their estates and creditors and all parties in interest in the Chapter 11 Cases.

J.    **Findings of Fact and Conclusions of Law**.  Each of the foregoing findings by the Court will be deemed (i) a finding of fact, if and to the full extent that it makes and contains factual findings, and (ii) a conclusion of law, if and to the full extent that it makes and contains legal conclusions, subject to the limitations set forth in paragraph E above.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.    **Motion Granted.**  The Motion is granted on the terms and conditions set forth herein.

2.    **Objections Overruled**.  Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits.

3.    **Use of Cash Collateral**.  The Debtors are hereby authorized to use Cash Collateral for the period of time from the date of entry of this Interim Order until the Termination Date (as hereinafter defined), solely as provided in this Interim Order and the Budget.  From and after the Petition Date, all Proceeds of the Collateral (as hereinafter defined), including, without limitation, all of the Debtors' existing or future cash and Cash Collateral, shall not, directly or indirectly, be used to pay expenses of the Debtors or to make debt payments (except as set forth in this Interim Order) or otherwise disbursed except (i) to make the payments to the Prepetition Agent for the benefit of the Prepetition Lenders required under this Interim Order (the "Adequate Protection Payments"), (ii) for those disbursements set forth in the Budget, and (iii) subject to the provisions of paragraph 13 hereof and the Budget, for any fees payable pursuant to 28 U.S.C. § 1930, any fees payable to the Clerk of this Court or the U.S. Trustee, and (subject to the Carve-Out limitation set forth in paragraph 13 hereof) compensation of fees and expenses payable to

1631274.5

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

professionals retained by the Debtors and approved by the Court pursuant to sections 328, 330 or 331 of the Bankruptcy Code (collectively, the "Professionals"); *provided, however*, that the foregoing shall not be construed as consent to the allowance of any of the amounts referred to in the preceding clause (iii), and shall not affect the right of any party in interest to object to the allowance and payment of any such amounts.

On or after the Termination Date, the Debtors shall not be permitted to use Cash Collateral, except (a) to fund the Carve-Out (as hereinafter defined), and (b) to pay the fees and expenses of Professionals, up to the maximum amount set forth in the Budget for Professionals through the Termination Date, provided however that Professionals shall have the right to seek payment of fees that exceed maximum amount set forth in the Budget through the filing of an appropriate motion with the Court, as may be allowed by the Court. The Debtors shall (x) maintain all Cash Collateral in a segregated bank account (the "Cash Collateral Account") maintained with a bank designated by the Prepetition Agent and shall not commingle any Cash Collateral with any of their other cash; (y) provide the Agent with an accounts payable schedule of its Potential Lien Claimants (as hereinafter defined) on the 15$^h$ day of each month and certify that such schedule is true and correct in all material respects; and (z) provide the Agent with a schedule of all lien claimants that it does not intend to pay within forty-five (45) days of the Petition Date pursuant to the Interim Order Authorizing: (I) The Debtors to Pay Prepetition Lien Claimants; and (II) Certain Financing Institutions to Honor All Related Checks and Electronic Payment Requests [Docket No. 41](the "Disputed Trade Claims"). As used herein, "Potential Lien Claimant" means "laborer," "materialman" or "claimant" as those terms are defined in Chapter 1 of Title XV of Part 4 of Division 3 of the California Code of Civil Procedure (Commencing with Section 3083) who provided labor or materials to improve any real property constituting any part of the Prepetition Collateral or the Fresh Collateral (as hereinafter defined), whether or not such entity has recorded a claim of lien or served a stop notice on the Prepetition Agent or any of the Prepetition Lenders. Notwithstanding the foregoing, Potential Lien Claimant does not include any Entity (as defined in the Bankruptcy Code) who or which has been barred under statute by the passage of time from

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

1631274.5

timely recording an enforceable mechanic's lien against the premises or timely serving an enforceable stop notice on Prepetition Agent or any of the Prepetition Lenders.

        4.    **Budget**.  The Debtors shall not make disbursements in excess of those projected in the budget attached as <u>Exhibit A</u> hereto (as such budget may be extended, varied, supplemented, or otherwise modified in accordance with the terms of this Interim Order, the "<u>Budget</u>") and shall not otherwise deviate from the terms of the Budget (including without limitation the payment limitations by line item category, amount and payment period set forth therein, except with respect to the payment of the Prepetition Agent's professional fees and expenses which shall not be limited by the specified line item amount in the Budget which is intended only as an estimate, but which shall be based upon actual invoiced amounts in accordance with clauses (ii) and (iii) of paragraph 7(b) of this Interim Order); <u>provided</u>, <u>however</u>, that any amounts not used in a given period (not to exceed one month) for a particular line item shall roll over and be included in the amounts budgeted for the next period only for such line item and shall be used only to the extent that amounts budgeted for such line item in such month are not sufficient to pay the Debtors' expenses.  The Budget (a) may be modified or supplemented from time to time by written agreement of the Prepetition Agent and the Debtors without the need of further notice, hearing or order of this Court and (b) shall include a reserve for the payment of insurance premiums, Disputed Trade Claims, and postpetition real estate taxes.  For avoidance of doubt, the Prepetition Agent's consent to the Budget is only through the Termination Date notwithstanding that the Budget may include periods ending after the Termination Date.  Under no circumstances shall the Prepetition Agent or Prepetition Lenders be required to advance any funds to pay any disbursement set forth in the Budget.  The Debtors shall prepare and furnish to the Prepetition Agent, in form and substance reasonably satisfactory to the Prepetition Agent, a weekly report of receipts, disbursements and a reconciliation of actual expenditures and disbursements with those set forth in the Budget, on a line-by-line basis showing any variance to the proposed corresponding line item of the Budget (the "<u>Budget Reconciliation</u>").  Such Budget Reconciliation shall be provided to the Prepetition Agent so

-12-

1631274.5

as actually to be received within three (3) business days following the end of each immediately preceding week.  By no later than November 15, 2010, the Debtors shall provide the Prepetition Agent an updated Budget (which updated Budget shall be subject to the approval of the Prepetition Agent as a condition of any further interim order on cash collateral use) for the period of January 1, 2011 through February 15, 2011.  The Prepetition Agent and the Prepetition Lenders may assume that the Debtors will comply with the Budget, as ordered by this Court pursuant to this Interim Order.  The Prepetition Agent and the Prepetition Lenders shall have no duty to monitor such compliance and shall not be obligated to pay (directly or indirectly from the Collateral) any unpaid expenses incurred or authorized to be incurred pursuant to the Budget.

     5.    **Termination Events**.  The Debtors' use of Cash Collateral pursuant to this Interim Order, and the consent of the Prepetition Agent to the use of Cash Collateral, shall immediately and automatically terminate (except as the Prepetition Revolving Agent or Prepetition Term Loan Agent, as the case may be, may otherwise agree in writing in its respective sole discretion), and subject to paragraphs 3 and 4 above, upon the earliest to occur of the following (each, a "Termination Event"):[2]

    (i)    5:00 p.m. (prevailing Pacific time) on December 3, 2010, or such later date as may be agreed upon by the Prepetition Agent and the Debtors in writing;

    (ii)    [Reserved];

    (iii)    the date this Interim Order ceases to be in full force and effect;

    (iv)    the date on which any Debtor fails to (i) comply with any of the terms or conditions of this Interim Order and/or (ii) observe or perform any of the terms or provisions contained herein or the covenants contained in the Prepetition Financing Documents (as amended by this Interim Order or any other Order of the Court, and excluding compliance with any financial covenants);

---

[2]    Unless otherwise defined herein, terms used in this paragraph 5 shall have the meaning ascribed to them in the Prepetition Financing Documents.

1631274.5

(v)     the date that any Debtor shall seek any modification or extension of this Interim Order without the prior written consent of the Prepetition Agent;

(vi)    the indefeasible payment and satisfaction in full in cash of the Prepetition Indebtedness;

(vii)   the effective date of any plan of reorganization in the Chapter 11 Cases;

(viii)  the entry of an order of any court reversing, staying, vacating or otherwise modifying in any material respect the terms of this Interim Order;

(ix)    without the consent of the applicable Prepetition Agent, each as set forth in the Intercreditor Agreement, (i) the entry of an order of the Court approving the terms of any debtor-in-possession financing for the Debtors unless the Prepetition Revolving Indebtedness and the Prepetition Term Loan Indebtedness are indefeasibly paid in full or (ii) the filing of an application by any Debtor for the approval of any Superpriority Claim (as hereinafter defined) or any lien in any of the Chapter 11 Cases which is *pari passu* with or senior to the Adequate Protection granted to the Prepetition Revolving Loan Agent and the Prepetition Revolving Loan Lenders in this Interim Order, or the granting of any such *pari passu* or senior Superpriority Claim or lien in each case, except any such Superpriority Claim or lien arising hereunder, except in connection with any financing used to pay in full the Prepetition Revolving Indebtedness and the Prepetition Term Loan Indebtedness;

(x)     the commencement of any action by any Debtor against the Prepetition Agent or any Prepetition Lender with respect to the Prepetition Financing Documents or the Prepetition Indebtedness, including, without limitation, any action to avoid or subordinate any Prepetition Indebtedness or any liens securing any Prepetition Indebtedness other than any action asserting any of the Reserved Claims and Defenses (as hereafter defined), or, in the case of any such action commenced by any person other than a Debtor on any grounds, the Court enters an order granting any such relief and any such order is not subject to a stay;

(xi)    without the consent of the Prepetition Agent, any order shall be entered granting relief from the automatic stay under section 362 of the Bankruptcy Code to the holder or holders, other than the Prepetition Agent, of any security interest, lien or right of setoff to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like), possession, set-off or any similar remedy with respect to any Collateral with a value in excess of $50,000;

(xii)   service upon the Prepetition Agent or any Prepetition Lender of a bonded or unbonded stop notice for labor or materials provided to the Debtors;

(xiii)  except as may be specifically permitted by any "first day" or subsequent order of this Court (as reviewed and approved by the Prepetition Agent and included in the Budget), any Debtor (including all present and future Debtors) shall make any payment in respect of a prepetition claim;

1631274.5

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

(xiv)    the failure by any Debtor to timely deliver to the Prepetition Agent any of the documents or other information required to be delivered pursuant to, or make any payments to the Prepetition Agent required under, this Interim Order;

(xv)    the date on which any of the Chapter 11 Cases are dismissed or converted to a case under chapter 7 of the Bankruptcy Code or any Debtor shall file a motion or other pleading seeking the dismissal of any of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code or otherwise;

(xvi)    the date on which a trustee under chapter 11 of the Bankruptcy Code, a responsible officer or examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code) under section 1106(b) of the Bankruptcy Code shall be appointed or elected in any of the Chapter 11 Cases; and

(xvii)    the date on which any plan of reorganization or liquidation to which the Agent does not consent is filed by the Debtors or is filed with the support of the Debtors.

provided, however, that the (i) Prepetition Revolving Loan Agent may (with the written consent of the Required Prepetition Revolving Loan Lenders) under the Prepetition Revolving Loan Credit Agreement waive any Termination Event, and (ii) after the Prepetition Revolving Indebtedness is indefeasibly paid in full, the Prepetition Term Loan Agent may (with the written consent of the Required Prepetition Term Loan Lenders) waive any Termination Event.  Notwithstanding any contrary provision in this Order, nothing in this Order grants authority to the Prepetition Agent to perform any action, or omit to perform any action, that the Prepetition Agent does not have under the applicable Prepetition Financing Documents.

On and after the occurrence of (a) a Termination Event specified in clauses (i) and (ii), (v) through (xii), (xiv), and (xv) above, the Debtors' authority to use Cash Collateral shall terminate immediately, all without further order or relief from the Court, and the Debtors shall immediately cease using Cash Collateral, and (b) any other Termination Event, on the fifth (5th) business day after the date on which the Debtors receive written notice from the Prepetition Agent of such Termination Event, the Debtors' authority to use Cash Collateral pursuant to this Interim Order shall immediately terminate, all without further order or relief from the Court, and the Debtors shall immediately cease using Cash Collateral (in each case in (a), (b), and (c) above, the date of such immediate termination being referred to as the "Termination Date"), except to the limited

-15-

1631274.5

extent set forth in paragraphs 3 and 4 above.  All notices set forth in this paragraph 5 shall be provided to the Debtors, counsel for the Debtors and the U.S. Trustee.

In addition, on the Termination Date, all accrued interest and fees and all other Prepetition Indebtedness and any Adequate Protection Payments shall, in each instance, be immediately due and payable and the Prepetition Agent shall have all other rights and remedies provided in this Interim Order and under applicable law.  Notwithstanding anything herein or the occurrence of a Termination Event, all of the rights, remedies, benefits, and protections provided to the Prepetition Agent and/or the Prepetition Lenders under this Interim Order shall survive such Termination Event.

6.  **Sections 506(c) and 552(b).**  From and after the Petition Date, the Prepetition Agent and the Prepetition Lenders are and shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.  The "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Agent or the Prepetition Lenders with respect to any Proceeds (as defined herein) of any of the Prepetition Collateral, and during the period in which the Debtors use Cash Collateral under any of the Interim Orders, no costs or expenses of administration, including fees and expenses of the Professionals or any other professional person, which have been or may be incurred in the Chapter 11 Cases at any time shall be charged or assessed against or recovered from the Collateral, the Prepetition Agent, the Prepetition Lenders, or any of their respective claims pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise by, through, or on behalf of the Debtors, including without limitation, any trustee appointed or elected in any of the Chapter 11 Cases or in any subsequent case under Chapter 7 of the Bankruptcy Code for any Debtor, without the prior written consent of the Prepetition Agent and the Prepetition Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by, either with or without notice to, the Prepetition Agent or Prepetition Lenders or any such agents or lenders.  Except as set forth herein, the Prepetition Agent has not consented or agreed to the use of Cash Collateral.

1631274.5

7.    **Adequate Protection**.

(a)    **Proceeds of Prepetition Collateral**.  Consistent with section 552 of the Bankruptcy Code, all Proceeds (as defined herein) of the Prepetition Collateral are subject to the Prepetition Agent's Prepetition Liens, pursuant to the Prepetition Financing Documents, and shall also be subject to the Adequate Protection Liens.

(b)    **Cash Payments**.  The Debtors shall pay to the Prepetition Agent, for the benefit of the Prepetition Lenders, (i) on an ongoing basis, the current cash payment of interest at the non-default rates and at the times provided for in the Prepetition Credit Agreements on the Prepetition Indebtedness (whether or not such interest payments are included in the Budget) plus the Prepetition Agent's reasonable fees and expenses owing with respect to the Prepetition Indebtedness or provided for in the Prepetition Financing Documents (whether incurred prior or subsequent to the Petition Date), and (ii) on an ongoing basis, the current cash payment of reasonable documented fees and expenses as and when due and payable under the Prepetition Financing Agreements (payments made pursuant to this subsection (b) shall be paid regardless of whether such amounts accrued prior to or after the Petition Date, and shall not be limited by the line item amount for such fees and expenses as set forth in the Budget which is intended only as an estimate and not a limitation, and shall be paid without further motion, fee application or order of the Court), provided that the Prepetition Agent's professionals shall submit copies of their invoices (redacted to take into account all applicable privileges and protections) to the Debtors, counsel for the Debtors, and the U.S. Trustee, and provided that no objection is raised to such fees or expenses within fourteen (14) days of the provision of such invoice, the Debtors shall pay, within three (3) days following the expiration of such deadline, such reasonable fees and expenses or, if an objection is raised, the undisputed fees and expenses.

(c)    **Replacement Liens**.  In addition to all existing security interests and liens granted to the Prepetition Agent for the benefit of the Prepetition Lenders in and to the Prepetition Collateral, as further adequate protection for the Debtors' use of Cash Collateral

on the terms and conditions of this Interim Order, and to secure payment of the Prepetition Indebtedness and, solely with respect to the Fresh Collateral, to secure an amount equal to the Collateral Diminution (as hereinafter defined), and as an inducement to the Prepetition Agent to permit the Debtors' use of Cash Collateral as provided in this Interim Order, subject and subordinate to the Carve-Out, the Debtors hereby grant to the Prepetition Agent for the benefit of itself and the Prepetition Lenders: pursuant to sections 361(2) and 363(e) of the Bankruptcy Code, automatically and retroactively effective as of the Petition Date, valid, binding and properly perfected postpetition security interests in, and dollar-for dollar replacement liens on, all Collateral, whether now owned or existing or hereafter acquired, created or arising, and all Proceeds thereof (the "Adequate Protection Liens").  As used in this Interim Order, the following terms shall have the following meanings:

(i)    "Collateral" shall mean (i) all of the Prepetition Collateral owned by the Debtors, and all Proceeds (as defined herein) thereof, in which the Prepetition Agent has a valid and perfected security interest, (ii) Fresh Collateral, and (iii) Catch-All Collateral;

(ii)    "Collateral Diminution" shall mean an amount equal to the aggregate diminution of the value of the Prepetition Agent's interest in the Prepetition Collateral, exclusive of the Fresh Collateral, from and after the Petition Date for any reason including, without limitation, depreciation, sale, lease, loss or use of the Prepetition Collateral, including Cash Collateral, whether in accordance with the terms and conditions of this Interim Order or otherwise, calculated as if the Fresh Collateral did not secure any portion of the Prepetition Lenders' claims;

(iii)    "Fresh Collateral" means property (a) identified on the schedule attached hereto as Exhibit B, (b) that was owned by the Debtors (or in which the Debtors had an interest) on the Petition Date, and (c) that is not encumbered by the Prepetition Financing Documents; provided, however, that with respect to any property identified on the schedule attached hereto as

-18-

<u>Exhibit B</u> as to which the lien status of the Prepetition Agent is disputed ("<u>Disputed Collateral</u>"), such property shall constitute Fresh Collateral only if, upon resolution of the dispute (by future settlement or Court order), it is determined that the Prepetition Liens granted pursuant to the Prepetition Financing Documents do not encumber the property under applicable non-bankruptcy law.  For the avoidance of doubt, (I) if a given asset meets all of the above criteria but is not specifically listed on <u>Exhibit B</u>, it shall not constitute Fresh Collateral, and (II) unless a particular item of property identified on the schedule attached hereto as <u>Exhibit B</u> is agreed by the Prepetition Agent to be Fresh Collateral, all such property designated on <u>Exhibit B</u> shall constitute Disputed Collateral pending resolution of the dispute (by future settlement or Court order); and

(iv)    "<u>Catch-All Collateral</u>" shall mean the Debtors' other respective real and personal property and assets, of any kind or nature whatsoever, whether now owned or hereafter acquired by the Debtors, and all Proceeds thereof or therefrom, including, but not limited to, homes constructed on Prepetition Collateral for which construction was commenced, continued or completed after the Petition Date and any improvements in value to the Prepetition Collateral resulting from post-petition construction of improvements or changes in market value, but excluding Fresh Collateral.

Except as set forth in the Budget or any order of the Court, Collateral may not be transferred, sold, hypothecated or otherwise disposed of or encumbered without the granting of a replacement Adequate Protection Lien on an indubitable equivalent that is not already pledged to the Prepetition Agent.  The Prepetition Agent at its option may release at any time, with the consent of the Required Lenders, from its liens and security interests any assets determined by the Prepetition Agent to have a risk of environmental liabilities which the Prepetition Agent in its sole discretion deems unacceptable.  In addition, except to the extent otherwise expressly set forth in the Final Order, this Interim Order, or in a written

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

1631274.5

instrument, agreement or other document executed by the Prepetition Agent, no liens or security interests granted to the Prepetition Agent pursuant any of the Interim Orders or any Final Order and no claim of the Prepetition Agent and/or any Prepetition Lender under any of the Interim Orders or any Final Order shall be subject to subordination to any other liens, security interests or claims under section 510 of the Bankruptcy Code or otherwise.  Any security interest or lien upon the Collateral which is avoided or otherwise preserved for the benefit of the estate under section 551 of the Bankruptcy Code or any other provision of the Bankruptcy Code shall be subordinate to the security interests and liens of the Prepetition Agent upon the Collateral.

(d)    **Superpriority Claim**.    To the extent that, notwithstanding the provision of paragraph 7(c), the protection provided in any of the Interim Orders or any Final Order does not provide adequate protection of the Prepetition Agent's valid, enforceable and unavoidable interests in the Collateral, the Prepetition Agent is hereby granted for the benefit of itself and the Prepetition Lenders, in each of the Debtors' Chapter 11 Cases, an allowed, superpriority administrative expense claim (the "Superpriority Claim") under section 507(b) of the Bankruptcy Code in an amount equal to the amount of any Collateral Diminution.  The Superpriority Claim shall be subject and subordinate to the Carve-Out but otherwise shall be entitled to priority over every other claim allowable under section 507(a)(1) of the Bankruptcy Code or otherwise (whether incurred in any of the Chapter 11 Cases or any conversion thereof to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto), which Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and proceeds thereof (including, the proceeds of any avoidance actions under chapter 5 of the Bankruptcy Code ("Avoidance Actions")), and shall be paid in the same extent and priority as set forth in the Intercreditor Agreement.

(e)    **Information and Access**.    The Debtors shall provide to the Prepetition Agent, as and when required under the Prepetition Financing Documents, all financial statements, certificates and information that are required to be provided to the

1631274.5

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

Prepetition Agent and the Prepetition Lenders pursuant to same.  In addition, the Debtors shall deliver to the Prepetition Agent (i) on or before the 15th day of the successive month, operating reports that reflect revenues as well as expenditures of the Debtors' funds during the preceding month, and (ii) such other financial reports and information as are required by the U.S. Trustee or reasonably requested by the Prepetition Agent.  Upon reasonable notice and at such reasonable times during normal business hours and otherwise as may reasonably be requested, the Debtors shall permit any representatives designated by the Prepetition Agent and the Prepetition Lenders to visit and inspect any of their properties, to inspect, copy and take extracts from their financial and accounting records, and to discuss their affairs, finances, and accounts with their officers, financial advisors and independent public accountants.  The Debtors shall prepare and furnish to the Prepetition Agent the Budget Reconciliation as described in paragraph 4 hereof.

Under the circumstances and given that the adequate protection described in this Interim Order is consistent with the Bankruptcy Code, including section 506(b), the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Agent and the Prepetition Lenders.  Notwithstanding anything herein to the contrary, however, this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Agent or the Prepetition Lenders to seek additional adequate protection at any time, including prior to a Termination Event, and the rights of the Debtors and any other party in interest to oppose any such request.

8.    **Perfection of Liens**.  All liens and security interests on or in the Collateral granted to Prepetition Agent by this Interim Order shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, or other act, shall be required to effect such perfection; provided, however, that notwithstanding the provisions of section 362 of the Bankruptcy Code, (i) the Prepetition Agent may, at its sole option, file or record or cause the Debtors to execute, file or record, at the Debtors' expense, such UCC financing statements, notices

of liens and security interests, mortgages and other similar documents or obtain landlord or

warehousemen lien waivers or other third party consents as Prepetition Agent may require, and (ii)

the Prepetition Agent may require the Debtors to deliver to the Prepetition Agent any chattel paper,

instruments or securities evidencing or constituting any Collateral, and the Debtors are directed to

cooperate and comply therewith.  If the Prepetition Agent, in its sole discretion, shall elect for any

reason to cause to be obtained any such landlord or warehousemen lien waivers or other third party

consents or cause to be filed or recorded any such notices, financing statements, mortgages or other

documents with respect to such security interests and liens, or if the Prepetition Agent, with the

consent of the Required Lenders, shall elect to take possession of any Collateral, all such landlord or

warehousemen lien waivers or other third party consents, financing statements or similar documents

or taking possession shall be deemed to have been filed or recorded or taken in the Chapter 11 Cases

as of the commencement of such Chapter 11 Cases but with the priorities as set forth herein.  The

Prepetition Agent may (in its discretion) but shall not be required to file a certified copy of this

Interim Order in any filing or recording office in any county or other jurisdiction in which any

Debtor has real or personal property (including, in addition to any filing in applicable real estate

records, UCC-1 filings in the Office of the Secretary of State for the State of California and any

other applicable state) and such filing or recording shall be accepted and shall constitute further

evidence of perfection of the Prepetition Agent's interests in the Collateral.  Neither the granting of

the liens and security interests to the Prepetition Agent in the Collateral nor the exercise of any

rights or remedies by the Prepetition Agent and/or any Prepetition Lender in connection therewith

will result in any breach, violation or infringement of (i) any trademark, copyright or other

intellectual property right of the Debtors or any third party, or (ii) any contract to which the Debtors

or any of their properties is subject.

        9.    **Priority of Liens.**  The Adequate Protection Liens shall be a first priority

security interest and lien against all of the Collateral of the Debtors that, on or as of the Petition

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

Date, is not subject to valid, perfected, and non-avoidable liens (but excluding Avoidance Actions) and a junior security interest and lien against all of the Collateral of the Debtors that, on or as of the Petition Date, is subject to valid, perfected, and non-avoidable liens (but excluding Avoidance Actions).  Except as set forth in this Paragraph 9, any statutory liens arising from the operation of the Debtors' business, and for the Carve-Out, the Debtors shall be prohibited from incurring additional obligations having priority claims or liens equal to or senior in priority or *pari passu* to the Adequate Protection Liens.  Subject to the Carve-Out, the Adequate Protection Liens shall not be (i) subject or junior to any lien that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, or (ii) subordinated to or made *pari passu* with any other lien, whether under section 364 of the Bankruptcy Code or otherwise, other than any statutory liens that arise from the operating of the Debtors' business that have priority by operation of law.  No claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order shall be granted or allowed until the indefeasible payment in full in cash and satisfaction in the manner provided in this Interim Order of the Adequate Protection Payments set forth in Paragraph 7 of this Interim Order.  With respect to the Adequate Protection Liens, (x) the priority of the Revolving Agent's lien on any and all Collateral and the Proceeds thereof or therefrom for the benefit of the Revolving Loan Lenders and (y) the right to receive payment out of the Collateral or the Proceeds thereof or therefrom compared to the Term Loan Agent's lien for the benefit of the Term Loan Lenders, shall each be determined in accordance with the Intercreditor Agreement; provided, however, the Adequate Protection Liens shall not operate to create a new class of claims or alter the voting rights of the Prepetition Revolving Loan Lenders with respect to the Prepetition Term Loan Lenders and vice versa in connection with the voting on any plan of reorganization that may be proposed in this case by any party in interest.

1631274.5

10.    **Restrictions Regarding Collateral**.

(a)    On the date of any sale, lease, transfer, license, or other disposition of property outside the ordinary course of business of any Debtor that constitutes Prepetition Collateral, the Debtors shall escrow, and not be permitted to use, one hundred percent (100%) of the net proceeds (after paying any senior liens) resulting therefrom, subject to the entry of an order of the Court authorizing and directing the payment thereof to the Prepetition Agent, for the benefit of the Prepetition Lenders, in accordance with the Intercreditor Agreement.

(b)    In the event of any casualty, condemnation, or similar event with respect to property that constitutes Collateral, the Debtors shall escrow, and not be permitted to use, one hundred percent (100%) of any insurance proceeds, condemnation award, or similar payment, subject to the entry of an order of the Court authorizing and directing the payment thereof to the Prepetition Agent, for the benefit of the Prepetition Agent and the Prepetition Lenders, unless otherwise agreed in writing.

(c)    To the extent of any Collateral Diminution and the Carve-Out, in the event any Debtors receives any proceeds pursuant to a successful Avoidance Action, the Debtor is authorized and directed to pay to the Prepetition Agent, for the benefit of the Prepetition Agent and the Prepetition Lenders, one hundred percent (100%) of such proceeds within two (2) business days of receipt thereof.

(d)    All proceeds and payments delivered to the Prepetition Agent pursuant to this Paragraph 10 may be applied, as determined by the Prepetition Agent, in its sole discretion and in accordance with the Prepetition Financing Documents, and in no event shall the Prepetition Lenders or the Prepetition Agent be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any such collateral or otherwise.

11.    **Intentionally Omitted.**

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

1631274.5

12.    **Survival**.

(a)    The provisions of this Interim Order shall not be discharged by and shall survive the entry of any order (i) confirming any chapter 11 plan in any of the Chapter 11 Cases (and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors hereby waive such discharge), (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or (iii) dismissing any or all the Chapter 11 Cases, and the terms and provisions of this Interim Order, including, but not limited to, the financing protections granted hereunder, shall continue in full force and effect notwithstanding the entry of such order, and such protections shall retain their effect as provided by this Interim Order until all obligations of the Debtors pursuant to this Interim Order are indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in this Interim Order which survive such discharge by its terms).

(b)    Until all of the Prepetition Indebtedness and all Adequate Protection Payments required under this Interim Order (including, without limitation, Paragraph 7 hereof) shall have been indefeasibly paid in full in cash and satisfied in the manner provided in this Interim Order, no Debtor shall seek an order dismissing any of the Chapter 11 Cases. If an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349(b) of the Bankruptcy Code) that (i) the Superpriority Claim and Adequate Protection Liens granted pursuant to this Interim Order and any subsequent order to or for the benefit of the Prepetition Agent and/or the Prepetition Lenders shall continue in full force and effect and shall maintain their perfection and priorities as provided in this Interim Order and subsequent orders until all obligations in respect thereof shall have been indefeasibly paid in full in cash and satisfied in the manner provided in this Interim Order (and that such claims and liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) to the extent permitted by applicable law, this Court shall retain

1631274.5

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

1  jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and

2  liens.

3         (c)    Under no circumstances shall any chapter 11 plan in any of the

4  Chapter 11 Cases be confirmed or become effective unless such chapter 11 plan provides

5  that the Adequate Protection Payments to be paid under this Interim Order (including,

6  without limitation, Paragraph 7 hereof) shall be paid in full in cash and satisfied in the

7  manner provided for in this Interim Order on or before the effective date of such chapter 11

8  plan.

9         (d)    Based on the findings set forth in this Interim Order, in the event that

10  any or all of the provisions in this Interim Order are hereafter modified, amended, or vacated

11  by a subsequent order of this or any other Court, no such modification, amendment, or

12  vacatur shall affect the validity, enforceability, or priority of any lien or claim authorized or

13  created hereby or thereby or any Prepetition Indebtedness or adequate protection obligations

14  incurred hereunder or thereunder.

15         13.    **Carve-Out.**  Subject to the remaining provisions of this paragraph,

16  Prepetition Agent's liens on and security interests, whether Prepetition Liens or Adequate Protection

17  Liens, in the Collateral, including, but not limited to, the Prepetition Collateral and the Superpriority

18  Claim, shall be subordinate and subject only to payments not to exceed an aggregate amount of

19  $75,000 which amount may be used only to pay (a) any unpaid fees payable pursuant to 28 U.S.C. §

20  1930 and any unpaid fees payable to the Clerk of this Court or the U.S. Trustee and (b) the allowed

21  fees, expenses and costs incurred at any time on or after the Petition Date of Professionals, as

22  limited by the Budget (the amounts set forth in clauses (a) and (b) above, together with the

23  limitations set forth therein, collectively, the "Carve-Out").  Notwithstanding the foregoing, the

24  Debtors shall be permitted to pay administrative expenses of the kind specified in sections 328, 330

25  and 331 of the Bankruptcy Code, as the same may be due and payable, and the same shall not reduce

26  the Carve-Out; provided, however, such services are provided or expenses accrued prior to the

27

28  Termination Date and such amounts are contained within the Budget.  The Carve-Out shall be

1631274.5

reduced on a dollar-for-dollar basis only by payments to the entities described in clauses (a) and (b)

above made on account of services provided or expenses accrued subsequent to the Termination

Date.  Notwithstanding anything to the contrary in this Interim Order or the Prepetition Financing

Documents, no Cash Collateral may be used to pay any claims, fees or expenses for services

rendered by any of the Professionals in connection with the investigation, assertion of, or joinder in

any claim, counterclaim, action, proceeding, application, motion, objection, defense or other

contested matter, against any of the Prepetition Agent, the Prepetition Lenders or their respective

advisors, agents and sub-agents, the purpose of which is to seek or the result of which would be to

obtain any order, judgment, determination, declaration or similar relief (x) disallowing, invalidating,

setting aside, avoiding or subordinating, in whole or in part, the Prepetition Indebtedness, the

Adequate Protection Liens or the pre-petition and post-petition liens and security interests of

Prepetition Agent in the Collateral (including the Prepetition Collateral and the Fresh Collateral); or

(y) preventing, hindering or otherwise delaying, whether directly or indirectly, the exercise by

Prepetition Agent and/or any Prepetition Lender of any of their rights and remedies under any of the

Interim Orders or any Final Order and/or the Prepetition Financing Documents or Prepetition

Agent's enforcement or realization upon any of the liens on or security interests in any Collateral.

Notwithstanding the Carve-Out, Prepetition Agent shall retain its rights as a party in interest to

object to any claims of any of the Professionals or any other professionals retained in the Chapter 11

Cases.

14.    **Covenants**.  The Debtors shall timely comply with all of the covenants set

forth in the Prepetition Financing Documents (as amended by this Interim Order or any other order

of the Court, and excluding compliance with any financial covenants); provided, however, that it

shall not be a covenant or condition of this Interim Order for the Debtor to cure any preexisting

breach of the Prepetition Financing Documents which may have occurred prior to the Petition Date

with the exception of the payments to be made pursuant to paragraph 7 of this Interim Order.

1631274.5

Nothing in this paragraph shall relieve any Debtor of its duty to comply with all provisions of the

Bankruptcy Code and applicable non-bankruptcy law.

15.     **Reservation of Prepetition Agent and Prepetition Lender Rights.**

Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice

to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (a) any of the

rights of the Prepetition Agent or any of the Prepetition Lenders under the Bankruptcy Code or

under any non-bankruptcy law, including, without limitation, the right of any of the Prepetition

Agent or Prepetition Lenders to (i) request termination, lifting or modification of the automatic stay

of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases,

conversion of any of the Chapter 11 Cases to a case or cases under chapter 7 of the Bankruptcy

Code, or appointment of a chapter 11 trustee or examiner (including with expanded powers), (iii)

request additional restrictions upon the Debtors' business activities or use of the Cash Collateral, (iv)

request termination or modification of this Interim Order, (v) request additional adequate protection,

(vi) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or

plans, (vii) oppose any request to use Cash Collateral without the consent of the Prepetition Agents

or the Prepetition Lenders, or (viii) exercise or assert any other rights, claims or privileges (whether

legal, equitable or otherwise) of any of the Prepetition Agent or the Prepetition Lenders.

16.     **Valid and Binding**.  This Interim Order shall constitute valid and binding

obligations of the Debtors, enforceable against the Debtors and their estates in accordance with their

terms.  No obligation, payment, transfer or grant of security under this Interim Order shall be stayed,

restrained, voidable or recoverable under the Bankruptcy Code or any applicable nonbankruptcy

law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

17.     **No Waiver of Claims, Rights or Remedies of Prepetition Agent or**

**Prepetition Secured Lenders.** Nothing in this Order shall constitute a release or waiver of any

claim, right or remedy of the Prepetition Agent or any Prepetition Secured Lender against the

1631274.5

Debtors or their representatives with respect to any act or omission of the Debtors or their

representatives.  The failure or delay by the Prepetition Agent or any Prepetition Lender to seek

relief or otherwise exercise its rights and remedies under this Interim Order shall not constitute a

waiver of any of the rights of such Prepetition Agent or Prepetition Lender hereunder, thereunder or

otherwise, and any single or partial exercise of such rights and remedies against any of the Debtors

or the Collateral shall not be construed to limit any further exercise of such rights and remedies

against any or all of the other Debtors and/or Collateral.

        18.    **Successor and Assigns.**  The provisions of this Interim Order shall be

binding upon and inure to the benefit of each of the Prepetition Agent, Prepetition Lenders and

Debtors and their respective successors and assigns (including any trustee or fiduciary hereafter

appointed or elected as a legal representative of any of the Debtors, their estates, or with respect to

the property of any of their estates) whether in the Chapter 11 Cases, in any successor cases, or upon

dismissal of any such chapter 11 or chapter 7 case.

        19.    **Allowance of Liens and Claims**.  The Prepetition Indebtedness and

Prepetition Agent's security interests in and liens on the Prepetition Collateral are valid, binding, in

full force and effect, not subject to any claims, counterclaims, setoff or defenses, but shall be subject

to the Reserved Claims and Defenses (as defined below in paragraph 22 of this Interim Order),

perfected and senior to all other liens upon and claims against the Prepetition Collateral and the

Prepetition Indebtedness are allowed claims under sections 502 and 506 of the Bankruptcy Code in

each of the Chapter 11 Cases, and the provisions of paragraph E of this Interim Order are binding on

all parties in interest (with the exception that the Debtors' admissions as set forth in clause (iii) of

Paragraph E.9. shall not constitute an admission by the Prepetition Agent or any of the Prepetition

Lenders for any purpose, including, without limitation, in connection with any subsequently

conducted valuation of the Collateral under section 506(b) or any other provision of the Bankruptcy

Code or Bankruptcy Rules and as set forth in the final sentence of this paragraph 19).  For the

1631274.5

avoidance of doubt, nothing in this paragraph 19 or the provisions of paragraph E of this Interim

Order shall waive, release, impair, or hinder the Reserved Claims and Defenses.

20.    **Automatic Stay Modification.**  The automatic stay provisions of section 362

of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the

Prepetition Agent to file any financing statements or other documents appropriate in its discretion

and to exercise, upon the occurrence and during the continuation of any Termination Event, all

rights and remedies provided for hereunder, and to take any or all of the following actions without

further order of or application to this Court: (a) terminate the Debtors' use of Cash Collateral; (b)

declare all Prepetition Indebtedness and all amounts due under this Interim Order to be immediately

due and payable; (c) offset and apply immediately any and all amounts in accounts maintained by

the Debtors with any of the Prepetition Agent and Prepetition Lenders against the Prepetition

Indebtedness and any amounts owed under this Interim Order, and otherwise enforce rights against

the Collateral in the possession of any of the Prepetition Agent or Prepetition Lenders for

application towards the Prepetition Indebtedness and any amounts owed under this Interim Order;

and (d) take any other actions or exercise any other rights or remedies permitted under this Interim

Order, the Prepetition Financing Documents and/or applicable law to effect the repayment and

satisfaction of the Prepetition Indebtedness amounts due under the Prepetition Financing Documents

and this Interim Order; *provided, however*, that any Prepetition Agent or Prepetition Lender, as

applicable, shall provide five (5) business days' written notice (by facsimile, telecopy, electronic

mail or otherwise) to the U.S. Trustee, counsel to the Debtors, and counsel to the Prepetition Agent

prior to exercising any enforcement rights or remedies in respect of the Collateral (other than the

rights described in clauses (a) or (b) above and other than with respect to freezing amounts in any

deposit accounts or securities accounts).  The rights and remedies of the Prepetition Agent and the

Prepetition Lenders specified herein are cumulative and not exclusive of any rights or remedies that

they may have otherwise.

1631274.5

21.    **Remedies.**  If the Prepetition Agent or any Prepetition Lender shall at any

time exercise any of their respective rights and remedies hereunder or under applicable law,

including without limitation, foreclosing upon and selling all or a portion of the Collateral, the

Prepetition Agent and such Prepetition Lender shall have the right without any further action or

approval of this Court to exercise such rights and remedies as to all or such part of the Collateral as

the Prepetition Agent or Prepetition Lender shall elect in their sole discretion, subject to the

provision by the applicable Prepetition Agent or Prepetition Lender of the written notice as provided

in paragraph 20 above.  The Prepetition Agent or Prepetition Lender shall be entitled to apply the

payments or proceeds of the Collateral in accordance with the provisions of this Interim Order and

the Prepetition Financing Agreements.

22.    **Release of Claims and Defenses.**  Each Debtor in its individual capacity

forever releases, waives and discharges the Prepetition Agent and each of the Prepetition Lenders

(whether in their prepetition or postpetition capacity), together with their respective officers,

directors, employees, agents, attorneys, professionals, affiliates, subsidiaries, assigns and/or

successors (collectively, the "Released Parties"), from any and all claims and causes of action

arising out of, based upon or related to, in whole or in part, any of the Prepetition Financing

Documents, any aspect of the prepetition relationship between any Debtor relating to any of the

Prepetition Financing Documents or any transaction contemplated thereby, on the one hand, and any

or all of the Released Parties, on the other hand, or any other acts or omissions by any or all of the

Released Parties in connection with any of the Prepetition Financing Documents or their prepetition

relationship with any Debtor or any affiliate thereof relating to any of the Prepetition Financing

Documents or any transaction contemplated thereby, including, without limitation, any claims or

defenses as to the extent, validity, priority or perfection of the Prepetition Liens or Prepetition

Indebtedness, "lender liability" claims and causes of action, any actions, claims or defenses under

chapter 5 of the Bankruptcy Code or any other claims and causes of action (all such claims, defenses

1631274.5

and other actions described in this paragraph are collectively referred to as the "Claims and Defenses"), provided, however, that nothing herein shall affect the Debtors' Claims and Defenses with respect to the Luxor Exit Financing Dispute (the "Reserved Claims and Defenses").   For the avoidance of doubt, and without limiting the generality of the foregoing, the Debtors hereby waive and release any and all claims or defenses with respect to the Proceeds transferred from Union Bank to the Cash Collateral Account established by the Prepetition Agent pursuant to the Interim Orders.

23.    **No Third Party Rights.**  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any other direct, indirect or incidental beneficiary.

24.    **Additional Debtors.**  Any "affiliate" (as defined by section 101(2) of the Bankruptcy Code, "Affiliate") of any Debtor that hereafter becomes a debtor in a case under chapter 11 of the Bankruptcy Code in this Court automatically and immediately, upon the filing of a petition for relief for such Affiliate, shall be deemed to be one of the "Debtors" hereunder in all respects, the chapter 11 case of such Affiliate shall be deemed to be a "Chapter 11 Case" hereunder in all respects and all of the terms and provisions of this Interim Order, including, without limitation, those provisions granting liens on the Collateral of each of the Debtors and claims in each of the Chapter 11 Cases, automatically and immediately shall be applicable in all respects to such Affiliate and its chapter 11 estate; provided, however, no Cash Collateral may be used by or for the benefit of such affiliate unless and until the Prepetition Agent approves a Budget which includes the revenues and expenses of such affiliate.

25.    **Prepetition Credit Agreements Master Proofs of Claim.**  Notwithstanding anything to the contrary in any order entered in these cases establishing deadlines for the filing of proofs of claim in the Bankruptcy Cases, neither the Prepetition Agents nor any Prepetition Lender shall be required to file a proof of claim for any claim arising under the Prepetition Financing Documents or hereunder.  Nor shall either Prepetition Agent be required to file a verified statement

1631274.5

pursuant to Bankruptcy Rule 2019.  But, each Prepetition Agent shall (to the extent necessary) be authorized (but not required) to file a master proof of claim against the Debtors (each a "<u>Master Proof of Claim</u>") on behalf of itself and the applicable Prepetition Lenders on account of their respective prepetition claims arising under the Prepetition Financing Documents.  If either Prepetition Agent should file a Master Proof of Claim against the Debtors, the applicable Prepetition Agent and each Prepetition Lender (as applicable) and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in respect of its claims against the Debtors arising under the respective Prepetition Financing Documents, and, subject to Order Approving Settlement Among The Debtors, The Agent, And The Prepetition Secured Lenders Pursuant To Fed. R. Bankr. P. 9019 [Docket No. 415], such shall be allowed or disallowed as if such entity had filed a separate proof of claim in each Chapter 11 Case in the amount set forth in the applicable Master Proof of Claim.  Each Prepetition Agent shall further be authorized to amend any Master Proof of Claim it has filed from time to time.

26.    **Notice of Final Hearing.**  The Debtors shall promptly serve by United States mail, first class postage prepaid a notice of the Final Hearing (the "<u>Final Hearing Notice</u>") to be held on December 1, 2010 at 01:00 a.m. (the "<u>Final Hearing</u>") to consider entry of the Final Order on the Interim Notice Parties.  Copies of this Interim Order and the Final Hearing Notice also shall be served upon all persons requesting service of papers pursuant to Bankruptcy Rule 2002 by United States mail, first class postage prepaid promptly following the receipt of such request.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the Final Order shall file written objections with the Court no later than fourteen days prior to the Final Hearing (the "<u>Objection Deadline</u>"), which objections shall be served so that the same are received on or before such date and time by: (a) Hennigan, Bennett & Dorman LLP, 865 S. Figueroa St., Suite 2900, Los Angeles, California 90017, Attn:  Joshua M. Mester, counsel to the Debtors, (b) Milbank, Tweed, Hadley & McCloy LLP, 601 S. Figueroa St., 30th Floor, Los Angeles, CA 90017, Attn: Mark

1631274.5

Shinderman and David Zolkin, counsel to the Prepetition Agent; and (c) the Office of the United

States Trustee, 11 West Fourth St. Suite 9041, Santa Ana, CA 92701, provided however, that the

Objection Deadline for the Prepetition Agent and the Prepetition Lenders may be extended with the

consent of the Debtors to a date no later than five days prior to the Final Hearing without further

order of this Court.

        27.      **Findings of Fact and Conclusions of Law.**  This Interim Order shall

constitute findings of fact and conclusions of law pursuant to Rule 7052 of the Bankruptcy Rules

and shall take effect and be fully enforceable immediately upon execution hereof.

        28.      **Jurisdiction.**  The Court has and will retain jurisdiction to enforce this

Interim Order according to its terms.

            ###

DATED: November 15, 2010

_____
United States Bankruptcy Judge

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

1631274.5

# EXHIBIT A

**California Coastal Weekly Cash Forecast**  *As of October 27, 2010*

*($ in Thousands)*

| Week Beginning: | Oct 1-8 | Oct 11 | Oct 18 | Oct 25 | Nov 1 | Nov 8 | Nov 15 | Nov 22 | Nov 29-30 | Dec 1-3 | Dec 6 | Dec 13 | Dec 20 | Dec 27[1] | 13 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *($ in thousands)* | | | | | | | | | | | | | | | |
| **RECEIPTS** | | | | | | | | | | | | | | | |
| **Home Deliveries** | - | - | - | 2 | 1 | - | 1 | 1 | - | - | 1 | - | - | - | 6 |
| SANDS        #53 | - | - | - | 921 | - | - | - | - | - | - | - | - | - | - | 921 |
| BREAKERS   #30 | - | - | - | - | 1,643 | - | - | - | - | - | - | - | - | - | 1,643 |
| TRAILS       #62 | - | - | - | 743 | - | - | - | - | - | - | - | - | - | - | 743 |
| CLIFFS       #36V | - | - | - | - | - | - | 2,143 | - | - | - | - | - | - | - | 2,143 |
| TRAILS       #64 | - | - | - | - | - | - | - | - | - | - | 807 | - | - | - | 807 |
| TRAILS       #65 | - | - | - | - | - | - | - | 750 | - | - | - | - | - | - | 750 |
| **Total Receipts** | - | - | - | 1,664 | 1,643 | - | 2,143 | 750 | - | - | 807 | - | - | - | 7,007 |
| **DISBURSEMENTS** | | | | | | | | | | | | | | | |
| *Operating needs* | | | | | | | | | | | | | | | |
| Model Lease Payments | (413) | - | - | - | (262) | - | - | - | - | (262) | - | - | - | - | (937) |
| Payroll & Benefits | - | (116) | (33) | (132) | - | - | (165) | - | (126) | - | (39) | (126) | (126) | - | (863) |
| Sales Commissions | - | (17) | - | - | - | - | (51) | - | - | - | - | (34) | - | - | (102) |
| Other G&A | (27) | 2 | - | (130) | (40) | (92) | (43) | (39) | (20) | (36) | (35) | (5) | (72) | - | (537) |
| Liability Insurance Renewal | - | - | (61) | - | - | - | (61) | - | - | - | (61) | - | - | - | (183) |
| Entitlement / City Parcel | - | (2) | - | (65) | - | - | (30) | (36) | (4) | - | (26) | (4) | (40) | - | (207) |
| Subtotal | (440) | (133) | (94) | (327) | (302) | (92) | (350) | (75) | (150) | (298) | (161) | (169) | (238) | - | (2,829) |
| Construction Costs[1] | (12) | - | - | (580) | (5) | - | (15) | (555) | - | (240) | (15) | (15) | (530) | - | (1,967) |
| **Core Operating & Construction** | **(452)** | **(133)** | **(94)** | **(907)** | **(307)** | **(92)** | **(365)** | **(630)** | **(150)** | **(538)** | **(176)** | **(184)** | **(768)** | - | **(4,796)** |
| *Interest and Restructuring Costs* | | | | | | | | | | | | | | | - |
| Interest Expense on Existing Debt | (585) | - | - | - | (605) | - | - | - | - | (585) | - | - | - | - | (1,775) |
| Repayment from New Henley | - | - | - | - | - | - | - | - | - | - | - | - | 1,050 | - | 1,050 |
| U.S. Trustee | - | - | - | (39) | - | - | - | - | - | - | - | - | - | - | (39) |
| Professional Fees - Restructuring | - | - | - | (553) | (532) | (134) | (325) | - | - | (250) | (175) | - | - | - | (1,969) |
| Subtotal | (585) | - | - | (592) | (1,137) | (134) | (325) | - | - | (835) | (175) | - | 1,050 | - | (2,733) |
| **Total Disbursements** | **(1,037)** | **(133)** | **(94)** | **(1,499)** | **(1,444)** | **(226)** | **(690)** | **(630)** | **(150)** | **(1,373)** | **(351)** | **(184)** | **282** | - | **(7,529)** |
| **Cash Flow** | **(1,037)** | **(133)** | **(94)** | **165** | **199** | **(226)** | **1,453** | **120** | **(150)** | **(1,373)** | **456** | **(184)** | **282** | - | **(522)** |
| *Change in Cash* | | | | | | | | | | | | | | | |
| Beginning cash balance | 2,383 | 1,346 | 1,213 | 1,119 | 1,284 | 1,483 | 1,257 | 2,710 | 2,830 | 2,680 | 1,307 | 1,763 | 1,579 | 1,861 | 2,383 |
| **Total Change in Cash** | **(1,037)** | **(133)** | **(94)** | **165** | **199** | **(226)** | **1,453** | **120** | **(150)** | **(1,373)** | **456** | **(184)** | **282** | - | **(522)** |
| **Ending Cash for Covenant Reporting** | **1,346** | **1,213** | **1,119** | **1,284** | **1,483** | **1,257** | **2,710** | **2,830** | **2,680** | **1,307** | **1,763** | **1,579** | **1,861** | **1,861** | **1,861** |
| Restricted Cash related to IndyMac | 548 | 548 | 548 | 548 | 548 | 548 | 548 | 548 | 548 | 548 | 548 | 548 | 548 | 548 | 548 |
| **Ending Cash for Operating** | **798** | **665** | **571** | **736** | **935** | **709** | **2,162** | **2,282** | **2,132** | **759** | **1,215** | **1,031** | **1,313** | **1,313** | **1,313** |

Note: Operating disbursements for the final week of the year are assumed paid one week in advance given the holiday slowdown.

(1) Assumes only 3 starts at The Trails.

# EXHIBIT B

| | Fresh Collateral | | |
|---|---|---|---|
| | **Description** | **Approx. Amt.** | **Owner** |
| 1 | 5 acre parcel of real property in Huntington Beach, California commonly referred to as The Ridge or the City Parcel, planned for the construction of 22 homes. Legal Desc:  SEC 29 T 5 R 11 POR NE 1/4 | undetermined | Signal Landmark |
| 2 | 54 improved lots in Lancaster, California commonly referred to as Quartz Hill (subject to lien in favor of One West Bank) with the following legal description: LOTS 1 THROUGH 2, 6 THROUGH 30, 47 THROUGH 56 AND 61 THROUGH 77, ALL INCLUSIVE OF TRACT NO. 54370, IN THE CITY OF LANCASTER, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER PLAT RECORDED IN BOOK 1314, PAGES 46 THROUGH 51 OF MAPS, RECORDS OF SAID COUNTY. | undetermined | HHI Lancaster I, LLC |
| 3 | 73 "paper lots" in Lancaster, California with the following legal description: PARCEL ONE:  THE EAST HALF OF THE SOUTH HALF OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 23, TOWNSHIP 7 NORTH, RANGE 13 WEST, SAN BERNADINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT OF SAID LAND.<br><br>PARCEL TWO:  THE WEST HALF OF THE WEST HALF OF THE SOUTH HALF OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 23, TOWNSHIP 7 NORTH, RANGE 13 WEST, , SAN BERNADINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT OF SAID LAND.<br><br>PARCEL THREE:  THE EAST ONE-HALF OF THE WEST ONE-HALF OF THE SOUTH ONE-HALF OF THE SOUTHWEST ONE QUARTER OF THE NORTHEAST ONE-QUARTER OF SECTION 23, TOWNSHIP 7, RANGE 13 WEST S.B.B.M., IN THE CITY OF LANCASTER, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA. | undetermined | HHI Lancaster I, LLC |
| 4 | 1.58 acres Lot K Storm Drain in Rancho Murrietta Legal Desc: M/L IN PAR K PM 159/076 PM 20490-2 | undetermined | Signal Landmark |
| 5 | Hearthside Homes consulting agreements for development services with (a) LTO-Oxnard, and (b) Goodell-Bolsa Chica | undetermined | Hearthside Homes, Inc. |
| 6 | Hearthside Homes brand and associated intellectual property rights. | undetermined | Hearthside Homes, Inc. |
| 7 | Net Operating Loss carryforwards for Federal Taxes. | $164,000,000 | California Coastal Communities |

| | Description | Approx. Amt. | | Owner |
|---|---|---|---|---|
| 8 | Net Operating Loss carryforwards for California Taxes. | | $3,700,000 | California Coastal Communities, Hearthside Homes & Signal Landmark, Signal Landmark Holdings, Inc. |
| 9 | Equity Interests in wholly-owned subsidiaries: | | | |
| | New Henley Holdings, Inc. including its subs: | undetermined | | California Coastal Communities |
| | Air Correction International, Inc. | undetermined | | |
| | Henley Investments, Inc. Two | undetermined | | |
| | Procon International Inc. | undetermined | | |
| | Pullman Passenger Car Company Inc. | undetermined | | |
| | Trailmobile International Ltd. | undetermined | | |
| | Trailmobile Leasing Corp. | undetermined | | |
| | W.O.L. Corp. | undetermined | | |
| | Calumet Real Estate Inc. | undetermined | | Signal Landmark Holdings, Inc. |
| | Hearthside Residential Corp. | undetermined | | Signal Landmark Holdings, Inc. |
| | Henley/KNO Holding Inc. | undetermined | | California Coastal Communities |
| | KREG Holdings Inc. | undetermined | | California Coastal Communities |
| | WT/HRC Corporation | undetermined | | California Coastal Communities |
| | HHI Chino II, LLC | undetermined | | Hearthside Homes, Inc. |
| | Hearthside Homes, Oxnard, LLC | undetermined | | Hearthside Homes, Inc. |
| 10 | Ontario receivable | $ | 373,733 | Hearthside Homes, Inc. |
| 11 | Prepaid corporate insurance policies | undetermined | | All debtors |
| 12 | Prepaid discontinued operations insurance policies | undetermined | | All debtors and subsidiaries listed in 11 above. |
| 13 | Prepaid home warranty liability policies | undetermined | | Hearthside Homes & Hearthside LLCs |
| 14 | CFD Cash Deposit | $ | 213,000 | HHI Lancaster I, LLC and/ Hearthside Homes |
| 15 | Utility construction deposits | undetermined | | Hearthside Homes, & Signal Landmark and Hearthside LLCs |
| 16 | City / County permit deposits | undetermined | | Signal Landmark, Hearthside Homes and Hearthside LLCs |
| 17 | Income Tax refund from California Franchise Tax Board for 2008 | $ | 11,828 | California Coastal Communities |
| 18 | Delaware Tax Refund for 2008 | $ | 15,575 | California Coastal Communities |
| 19 | Los Angeles County Tax Refund - Lancaster II | $ | 8,628 | Lancaster I, LLC |
| 20 | Investment in Fairbanks Highlands LLC | $ | 698 | Signal Landmark |
| 21 | Investment in Hearthside Funding LP | $ | 6,403 | Hearthside Homes, Inc. |
| 22 | Insurance Collateral  - AIG | $ | 73,000 | California Coastal Communities |
| 23 | Office lease for 6 Executive Circle, Irvine California | undetermined | | California Coastal Communities |
| 24 | 6 Executive Circle - Security Deposit | $ | 33,654 | California Coastal Communities |
| 25 | Construction trailer deposits | $ | 3,804 | |
| 26 | Office furniture, equipment, and books and records located at 6 Executive Circle, Irvine California | undetermined | | California Coastal Communities, Hearthside Homes & Signal Landmark |
| 27 | Federal AMT Carryback - 2009 | | $1,000,000 | California Coastal Communities |
| | | | | |

| In re:<br><br>☐ CALIFORNIA COASTAL COMMUNITIES, INC<br>☐ SIGNAL LANDMARK HOLDINGS INC.<br>☐ SIGNAL LANDMARK<br>☐ HEARTHSIDE HOLDINGS, INC.<br>☐ HEARTHSIDE HOMES, INC.<br>☐ HHI CHANDLER, L.L.C.<br>☐ HHI CHINO II, L.L.C.<br>☐ HHI CROSBY, L.L.C.<br>☐ HHI HELLMAN, L.L.C.<br>☐ HHI LANCASTER I, L.L.C.<br>☐ HHI SENECA, L.L.C.<br><br>☒ All Debtors. | CHAPTER: 11<br><br>CASE NUMBER: 8:09-21712-TA |
| --- | --- |

## NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled **FOURTH INTERIM ORDER GRANTING SECOND EMERGENCY MOTION FOR ORDER (I) AUTHORIZING USE OF CASH COLLATERAL (II) PROVIDING ADEQUATE PROTECTION TO PREPETITION LENDERS, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) SCHEDULING FINAL HEARING** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

## I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

- Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of October 28, 2010, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case to receive NEF transmission at the email addresses indicated below:

Mark Bradshaw – mbradshaw@shbllp.com
Richard W. Brunette – rbrunette@sheppardmullin.com
Robert H. Garretson – rgarretson@ptwww.com
Nancy S. Goldenberg – nancy.goldenberg@usdoj.gov
Aluyah I. Imoisili - aimoisili@milbank.com
Harold D. Israel – hisrael@kayescholer.com
    jben@kayescholer.com
    ssolow@kayescholer.com
Ralph L. Landy – efile@pbgc.gov
Joshua M. Mester – mesterj@hbdlawyers.com
Craig Millet - cmillet@gibsondunn.com
    pcrawford@gibsondunn.com
Rosana Miramontes - rosana.miramontes@doj.ca.gov
Randy Orlik – rorlik@coxcastle.com
Kirsten A. Roe – kroe@wthf.com
    dfunsch@wthf.com
Kenneth N. Russak – krussak@frandzel.com
    efiling@frandzel.com
    banderson@frandzel.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                **F 9021-1.1**

Joel G. Samuels – jsamuels@sidley.com
United States Trustee (SA) – ustpregion16.sa.ecf@usdoj.gov
Delilah Vinzon - dvinzon@milbank.com
Michael A. Wallin – mwallin@sheppardmullin.com

☐ Service information continued on attached page

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following entity at the address indicated below:

California Coastal Communities, Inc.
6 Executive Circle, Suite 250
Irvine, CA 92614

☐ Service information continued on attached page

**III.  TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                  **F 9021-1.1**