FILED & ENTERED

DEC 21 2010

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY ngo          DEPUTY CLERK

1  HENNIGAN, BENNETT & DORMAN LLP
   BRUCE BENNETT (Cal. Bar No. 105430)
2  JOSHUA M. MESTER (Cal. Bar No. 194783)
   MICHAEL C. SCHNEIDEREIT (Cal. Bar No. 234956)
3  865 South Figueroa Street, Suite 2900
   Los Angeles, California 90017
4
   Telephone: (213) 694-1200
5  Fax: (213) 694-1234

6  *Reorganization Counsel for*
   *Debtors and Debtors in Possession*

7

8          **UNITED STATES BANKRUPTCY COURT**
           **CENTRAL DISTRICT OF CALIFORNIA**
9               **SANTA ANA DIVISION**

10

11 *In re*                                    )  Case No. 8:09-21712-TA
                                              )
12 ☐ CALIFORNIA COASTAL                       )  Jointly Administered with Case Nos.
       COMMUNITIES, INC.                      )  8:09-21713-TA; 8:09-21714-TA;
13 ☐ SIGNAL LANDMARK HOLDINGS INC.            )  8:09-21715-TA; 8:09-21717-TA;
   ☐ SIGNAL LANDMARK                          )  8:09-21718-TA; 8:09-21719-TA;
14 ☐ HEARTHSIDE HOLDINGS, INC.                )  8:09-21720-TA; 8:09-21721-TA;
   ☐ HEARTHSIDE HOMES, INC.                   )  8:09-21722-TA; 8:09-21723-TA
15 ☐ HHI CHANDLER, L.L.C.                     )
   ☐ HHI CHINO II, L.L.C.                     )  Chapter 11
16 ☐ HHI CROSBY, L.L.C.                       )
   ☐ HHI HELLMAN, L.L.C.                      )  **INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105,**
17 ☐ HHI LANCASTER I, L.L.C.                  )  **361, 362, 363, AND 364 OF THE BANKRUPTCY**
   ☐ HHI SENECA, L.L.C.                       )  **CODE (I) AUTHORIZING THE DEBTORS TO**
18 ☒ All Debtors                             )  **OBTAIN POSTPETITION FINANCING AND USE**
                                              )  **CASH COLLATERAL, (II) GRANTING LIENS,**
19                                            )  **SECURITY INTERESTS AND SUPERPRIORITY**
                                              )  **CLAIMS, (III) GRANTING ADEQUATE**
20                      Debtors.              )  **PROTECTION AND FINAL ORDER APPROVING**
                                              )  **PLAN SUPPORT AGREEMENT AMONG DEBTORS**
21                                            )  **AND PREPETITION LENDERS AND (IV)**
                                              )  **SHORTENING TIME FOR NOTICE OF AND**
22                                            )  **HEARING ON DISCLOSURE STATEMENT**
                                              )
23                                            )          Interim Hearing
                                              )  Date:  December 16, 2010
24                                            )  Time:  .10:00 a.m.
                                              )  Place: Courtroom "5B"
25                                            )          411 West Fourth Street
                                              )          Santa Ana, CA 92701-4593
26                                            )
                                              )          Final Hearing
27                                            )  Date:  January 12, 2011  Time:  10:00 a.m.
                                              )  Place: Courtroom "5B"
28                                            )          411 West Fourth Street
                                              )          Santa Ana, CA 92701-4593

1

2

3     California Coastal Communities, Inc. ("CALC" or the "Company") and its direct and

4 indirect subsidiaries (each, individually a "Debtor" and, collectively, the "Debtors" in the above

5 captioned chapter 11 cases (collectively, the "Chapter 11 Cases")), having moved on December 7,

6 2010 (the "Motion") for an order  (i) authorizing them to incur postpetition secured indebtedness, to

7 grant security interests and superpriority claims pursuant to sections 105, 361, 362, 363(b),

8 363(c)(2), 364(c)(l), 364(c)(2) 364(c)(3), 364(d), 364(e) of title 11 of the United States Code, 11

9 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rules 2002, 4001, 6004, 9014 of the Federal

10 Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (ii) authorizing them to use cash

11 collateral of the prepetition secured agent to the prepetition lenders in return for the grants and

12 protections set forth herein;  (iii) authorizing and approving a plan support agreement among the

13 Debtors and prepetition secured creditors who hold in excess of 85% of the Debtors' prepetition

14 secured indebtedness pursuant to sections 105 and 363 of the Bankruptcy Code, and having sought,

15 more specifically, the following relief and (iv) shortening time for the notice of and hearing on the

16 disclosure statement to be filed in support of a consensual plan of reorganization:

17     (a)     the Court's authorization for (i) CALC, as Borrower, to enter into a senior secured,

18 superpriority, non-amortizing term loan facility agreement (the "DIP Loan Agreement"), a copy of

19 which is attached as Exhibit B to the Motion, with those prepetition secured lenders of the Debtors

20 identified therein (each a "DIP Lender," and collectively, the "DIP Lenders") and with Wilmington

21 Trust FSB as the administrative and collateral agent for the DIP Lenders (the "DIP Agent"), and (ii)

22 each of the other Debtors (the "Guarantors" and, together with Borrower, the "Credit Parties") to

23 guarantee, jointly and severally, Borrower's obligations under the DIP Loan Agreement, such that

24 Borrower may obtain cash advances on a term basis, in an aggregate principal amount of $15

25 million, $5 million of which is to be drawn upon entry of this Order and the balance upon entry of

26 the Final DIP Order (as defined below) (the loan under such facility, the "DIP Loan"), on the terms

27 of the DIP Loan Agreement (together with all documents, agreements, and instruments to be

28 executed or to be filed in connection therewith, the "DIP Loan Documents"), to (i) fund ongoing

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

working capital and general corporate needs of the Debtors during their Chapter 11 Cases in

accordance with the terms of the DIP Loan Documents, (ii) pay the fees, costs, expenses, and

disbursements of professionals retained by the Debtors, as such fees and expenses may be approved

by the Court and subject to the limitations set forth herein, and (iii) pay any fees, deposits and

expenses (including, without limitation, reasonable attorneys' fees and expenses) owed to the DIP

Lenders, the DIP Agent, the Prepetition Revolving Agent (as defined below), the Prepetition Term

Agent (as defined below), or otherwise required,

        (b)      the Court's ordering, pursuant to sections 364(c)(1), (2), (3) and 364(d) of the

Bankruptcy Code, that the obligations of the Debtors under the DIP Loan and the DIP Loan

Documents (collectively, the "DIP Obligations") are:

            (i)      granted superpriority administrative claim status, having priority over any and

all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326,

328, 330, 331, 503(b), 506(c), 507, 546(c), 726 and 1114 of the Bankruptcy Code, subject only to

the payment of the Carve-Out (as defined below), on the terms and conditions set forth herein, on

the terms and conditions set forth herein;

            (ii)      secured under section 364(c)(2) by a fully perfected, first priority lien on and

senior security interest in (collectively, a "Lien") all of the property, assets or interests in property or

assets of each Debtor, of any kind or nature whatsoever, real or personal, now existing or hereafter

acquired or created, including, without limitation, all property of the "estate" (within the meaning of

the Bankruptcy Code) of each such Debtor, including all accounts, inventory, goods, contract rights,

instruments, documents, chattel paper, patents, trademarks, copyrights and licenses therefor, general

intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, letter-of-

credit rights, supporting obligations, machinery and equipment, real property (including all

facilities), fixtures, leases (and proceeds from the disposition thereof), all of the issued and

outstanding capital stock entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2))

and all of the issued and outstanding capital stock not entitled to vote (within the meaning of Treas.

Reg. Section 1.956-2(c)(2)) of each such subsidiary of such Debtor, all capital stock in third parties

directly owned by each such Debtor, money, investment property, deposit accounts, all commercial

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

#4844-6890-4199 -3-

tort claims and all causes of action arising under the Bankruptcy Code or otherwise (including, without limitation, all avoidance actions under chapter 5 of the Bankruptcy Code ("Avoidance Actions") and the proceeds thereof and all avoided payments, Cash Collateral, as defined in paragraph F hereof, and all cash and non-cash proceeds, rents, products and profits of any of collateral described above (collectively, "Property") that is not subject to valid, perfected and non-avoidable Liens (collectively, "Unencumbered Collateral"), subject only to the Carve-Out on the terms and conditions set forth herein; provided, however, that, until entry of the Final DIP Order, no Lien on such avoidance actions shall arise;

(iii)    secured under section 364(d)(1) of the Bankruptcy Code by a fully perfected, priming Lien on all Property in which the Prepetition Revolving Agent or the Prepetition Term Agent (collectively, the "Prepetition Agents") shall have an interest (all such collateral shall be collectively referred to as, the "Pre-DIP Collateral"), that shall be senior to any Liens in favor of the Prepetition Agents but subject only to (a) any valid, perfected and non-avoidable Liens existing on the Petition Date (other than those granted to the Prepetition Agents), (b) any valid Lien in existence on the Petition Date that is perfected subsequent to the Petition Date by Section 546(b) of the Bankruptcy Code, (c) any Permitted Liens (other than those granted to the Prepetition Revolving Agent and the Prepetition Term Agent), (d) the IndyMac Lancaster Account Liens (as defined below) and (e) payment of the Carve-Out on the terms and conditions set forth herein;

(iv)    secured under section 364(c)(3) of the Bankruptcy Code by a fully perfected, junior Lien on all Property that, on or as of the Petition Date, is subject to (x) any valid, perfected and non-avoidable Liens and (y) any valid Lien in existence on the Petition Date that is perfected subsequent to the Filing Date by Section 546(b) of the Bankruptcy Code, in each case other than the Pre-DIP Collateral (collectively, the "Junior Collateral" and, together with the Unencumbered Collateral and the Pre-DIP Collateral, the "Collateral"), and the payment of the Carve-Out on the terms and conditions set forth herein;

(c)    the Court's granting to the Prepetition Agent (as defined in paragraph D.2. below) as adequate protection against ongoing diminution in the value or amount of the Prepetition Agent's

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

respective interests in the Pre-DIP Collateral caused by the Debtors' continuing use of Cash

Collateral and the priming to which Prepetition Lenders (as defined in paragraph D.2. below)

holding more than 66-2/3% of the Prepetition Indebtedness (as defined below) have consented:

   (i) Liens against all Property that, on or as of the Petition Date, was not subject

to valid, perfected and non-avoidable liens, <u>provided</u>, <u>however</u>, that such Liens shall be (x) in the

case of the already existing first priority Liens of the Prepetition Revolving Agent, junior only to the

DIP liens described in paragraphs (b)(ii), (b) (iii) and (b)(iv) above (hereafter, the "<u>DIP Liens</u>") and,

in the case of the second priority liens of the Prepetition Term Agent, junior only to the DIP Liens

and the first priority liens of the Prepetition Revolving Agent, and (y) in each instance, subject (1) to

any Permitted Liens, (2) the IndyMac Lancaster Account Liens and (3) payment of the Carve-Out on

the terms and conditions set forth herein;

   (ii) a superpriority administrative expense claim in the amount of the diminution

in the value or amount of the Prepetition Secured Parties' interests in the Pre-DIP Collateral that is

immediately junior to that granted to the DIP Agent and the DIP Lenders hereunder, and payment of

the Carve-Out on the terms and conditions set forth herein;

   (iii) payments of accrued interest (at the respective non-default rate set forth in the

respective Prepetition Credit Agreement); and

   (iv) payments of reasonable fees and expenses of the professionals employed by

the Prepetition Agent, including, without limitation, the reasonable fees and expenses of counsel and

other advisors to the Prepetition Agent;

  (d) the Court's authorizing the Debtors, on a final basis, to enter into an agreement for

the formulation and confirmation of a chapter 11 plan (the "<u>Chapter 11 Plan</u>") pursuant to a term

sheet (the "<u>Plan Term Sheet</u>") set forth in that certain Plan Support Agreement, dated **December __,**

**2010** (the "<u>Plan Support Agreement</u>") attached to the Motion as Exhibit D;

  (e) the Court's scheduling an interim hearing (the "<u>Interim Hearing</u>") pursuant to

Bankruptcy Rule 4001(c)(2) to consider entry of an order that, among other things, (i) approves, on

an interim basis, the DIP Loan to be made pursuant to the DIP Loan Agreement, (ii) authorizes the

1    Debtors to obtain, on an interim basis in accordance with the DIP Loan Agreement, $5 million of the

2    DIP Loan (the "Interim Borrowing"); (iii) grants adequate protection to the Prepetition Secured

3    Parties as provided in this Order; and  (iv) authorizes and approves, on a final basis, the Plan

4    Support Agreement;

5        (f)    the Court's scheduling, pursuant to Bankruptcy Rule 4001(c)(2), a hearing (the "Final

6    DIP Hearing") to consider entry of a final order (the "Final DIP Order") which, among other things,

7    (i) approves, on a final basis, the DIP Loan Documents, (ii) authorizes, on a final basis, the Debtors'

8    draw of the balance of the DIP Loan of $10 million and (iii) grants, on a final basis, adequate

9    protection to the Prepetition Secured Parties as set forth herein;

10        (g)    the Court's shortening the notice period for consideration of approval of a disclosure

11    statement such that, to to the extent that the Debtors file a disclosure statement on or before

12    December 20, 2010, a hearing to consider any motion for approval of such disclosure statement shall

13    be held on January 12, 2011 at 10:00 a.m. and any objections to approval of such disclosure

14    statement shall be filed no later than January 5, 2011 at 5:00 p.m. Pacific Time; and

15        (h)    the Court's finding, pursuant to Bankruptcy Rule 4001(c)(1), that notice of the

16    Interim Hearing is sufficient having been given to (i) the United States Trustee for the Central

17    District of California (the "U.S. Trustee"), (ii) counsel for the DIP Lenders, (iii) those parties listed

18    on the Consolidated List of Creditors Holding the Largest 25 Unsecured Claims Against the

19    Debtors, as identified in connection with the Debtors' chapter 11 petitions; (iv) all other parties with

20    liens of record on assets of the Debtors as of the Petition Date; (v) counsel to the Prepetition Agents;

21    (vi) the Internal Revenue Service; (vii) the Securities and Exchange Commission, (viii) counsel for

22    Luxor Capital Group, L.P. ("Luxor"); and (ix) all parties having filed a request for special notice

23    pursuant to Bankruptcy Rule 2002(i) (collectively, the "Interim Notice Parties").

24        The Interim Hearing having been held on December 16, 2010; and based upon all of

25    the pleadings filed with the Court, the evidence presented at the Interim Hearing and the entire

26    record herein; and the Court having heard and resolved or overruled all objections to the interim

27    relief requested in the Motion; and the Court having noted the appearances of all parties in interest;

28    and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

1  estates and creditors; and after due deliberation and consideration, and sufficient cause appearing

2  therefor:

3  **THE COURT HEREBY FINDS:**

4        A.    **Petition Date**.  On October 27, 2009 (the "Petition Date"), each of the Debtors filed a

5  voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Each Debtor is continuing in

6  the management and possession of its business and properties as a debtor-in-possession pursuant to

7  sections 1107(a) and 1108 of the Bankruptcy Code.  The Chapter 11 Cases of the Debtors are being

8  jointly administered under Case No. 09-21712-TA.

9        B.    **Jurisdiction and Venue.**  This Court has jurisdiction over the Chapter 11 Cases, this

10 proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

11 This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court

12 pursuant to 28 U.S.C. §§ 1408 and 1409.

13       C.    **Notice**.  Notice of the relief sought by the Motion and the Interim Hearing was

14 sufficient and adequate under the circumstances and complies with Bankruptcy Rules 2002, 4001

15 and 9014 and section 102(1) of the Bankruptcy Code in all respects for purposes of entering this

16 Order, and no other further notice of the Motion or this Order is necessary or required.

17       D.    **Debtors' Stipulations**.  The Debtors acknowledge, admit, stipulate and agree that:

18            1.    Pursuant to that certain Senior Secured Revolving Credit Agreement dated as

19 of September 15, 2006 (as amended, supplemented, or otherwise modified from time to time, and

20 together with all schedules and exhibits therewith, the "Prepetition Revolving Loan Credit

21 Agreement") among the Debtors, the lenders party thereto from time to time (each a "Prepetition

22 Revolving Loan Lender" and, collectively, the "Prepetition Revolving Loan Lenders"), KeyBank

23 National Association, as Agent for the Prepetition Revolving Loan Lenders (in such capacity,

24 together with any successors thereto in such capacity, the "Prepetition Revolving Loan Agent") and

25 the other parties thereto, the Prepetition Revolving Loan Lenders made certain revolving loans,

26 advances and other financial accommodations to the Debtors to fund, among other things, the

27 Debtors' operations, in an amount not to exceed $100,000,000.

28

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

2.      Pursuant to that certain Senior Secured Term Loan Agreement dated as of September 15, 2006 (as amended, supplemented, or otherwise modified from time to time and together with all schedules and exhibits therewith, the "Prepetition Term Loan Credit Agreement" and together with the Prepetition Revolving Loan Credit Agreement, the "Prepetition Credit Agreements")[1], among the Debtors, the lenders party thereto from time to time (each a "Prepetition Term Loan Lender" and, collectively, the "Prepetition Term Loan Lenders" and together with the Prepetition Revolving Loan Lenders, the "Prepetition Lenders"), KeyBank National Association, as Agent for the Prepetition Term Loan Lenders (in such capacity, together with any successors thereto in such capacity, the "Prepetition Term Loan Agent" and together with the Prepetition Revolving Loan Agent, the "Prepetition Agent", and, together with the Prepetition Lenders, the "Prepetition Secured Parties") and the other parties thereto, the Prepetition Term Loan Lenders made certain term loans to fund, among other things, the Debtors' operations, in the original principal amount of $125,000,000.

3.      The Debtors' obligations under the Prepetition Credit Agreements are secured, and otherwise evidenced, by the Security Documents (as such term is defined in each of Prepetition Credit Agreements and each as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Security Documents") and, together with the Prepetition Credit Agreements and the other Loan Documents (as such term is defined in each of Prepetition Credit Agreements and each as amended, restated, supplemented, or otherwise modified from time to time), the "Prepetition Financing Documents."

4.      As of the Petition Date, each of the Debtors was (and as of the date hereof, each of the Debtors is) jointly and severally indebted and liable to the Prepetition Agent and the Prepetition Lenders, without defense, counterclaim, or offset of any kind, in respect of loans made to the Debtors under the Prepetition Financing Documents in the aggregate principal amount of not less than (i) $81,679,317.58 (plus accrued and unpaid prepetition interest, fees, costs and other expenses

---

[1]    Unless otherwise defined herein, all capitalized terms used herein have the meanings ascribed to such terms in the Prepetition Credit Agreements.

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

including, without limitation, professional fees and expenses) pursuant to the Prepetition Revolving

Loan Credit Agreement (collectively, with all other Obligations (as such term is defined in the

Prepetition Revolving Loan Credit Agreement), the "Prepetition Revolving Loan Indebtedness") and

(ii)  $99,800,000.00 (plus accrued and unpaid prepetition interest, fees, costs and other expenses

including, without limitation, professional fees and expenses) pursuant to the Prepetition Term Loan

Credit Agreement (collectively, with all other Obligations (as such term is defined in the Prepetition

Term Loan Credit Agreement), the "Prepetition Term Loan Indebtedness," and together with the

Prepetition Revolving Loan Indebtedness, the "Prepetition Indebtedness").

5.	Pursuant to the Prepetition Financing Documents, Signal Landmark granted

first priority liens on, and continuing pledges and security interests in, all of the property, rights and

interest of Signal Landmark in the Project (as defined in the Prepetition Revolving Loan Credit

Agreement) as described in the Prepetition Security Documents (the "Prepetition Revolving

Collateral") to and/or for the benefit of the Prepetition Revolving Loan Agent and Prepetition

Revolving Loan Lenders to secure the Prepetition Revolving Loan Indebtedness (collectively, the

"Prepetition Revolving Liens").

6.	Pursuant to and as set forth in the Prepetition Financing Documents: (i) Signal

Landmark granted second priority liens on, and continuing pledges and security interests (junior

only to the liens, pledges and security interests granted to the Prepetition Revolving Loan Agent for

the benefit of the Prepetition Revolving Loan Lenders) in, the Projects as described in the

Prepetition Security Documents (the "Junior Prepetition Term Loan Collateral"); (ii) CALC granted

first priority liens in and on, and continuing pledges and security interests in and on, CALC's

ownership interests in Hearthside Holdings, Inc. and Signal Landmark Holdings, Inc.; (iii)

Hearthside Holdings, Inc. granted first priority liens in and on, and continuing pledges and security

interests in and on, its ownership interests in Hearthside Homes, Inc.; (iv) Signal Landmark

Holdings, Inc. granted first priority liens in and on, and continuing pledges and security interests in

and on, its ownership interests in Signal Landmark; and (v) Hearthside Homes, Inc. granted first

priority liens in and on, and continuing pledges and security interests in and on, its ownership

interests in certain of its subsidiaries identified therein (the collateral described in clauses (ii)

through (v) constituting the "Senior Prepetition Term Loan Collateral" and together with the Junior Prepetition Term Loan Collateral, the "Prepetition Term Loan Collateral") to and/or for the benefit of the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders to secure the Prepetition Term Loan Indebtedness (collectively, the "Prepetition Term Liens," and collectively with the Prepetition Revolving Liens, the "Prepetition Liens").  For the avoidance of doubt, the term "Prepetition Collateral" shall refer to (a) collateral in or upon which a lien or other security interest has been granted in favor or for the benefit of the Prepetition Agent or the Prepetition Lenders in connection with, pursuant to or under the Prepetition Credit Agreements or the other Prepetition Financing Documents, and (b) any Prepetition Collateral provided under any Prepetition Financing Documents, including that described in this paragraph 6, that existed as of the Petition Date together with all prepetition and, pursuant to section 552 of the Bankruptcy Code, all postpetition proceeds, products, offspring, rents, issues and profits thereof or therefrom (collectively, as used hereinafter, "Proceeds").

7.    Pursuant to that certain Acknowledgment and Purchase Agreement dated as of September 15, 2006 (the "Intercreditor Agreement"), the Prepetition Revolving Loan Agent and the Prepetition Term Loan Agent acknowledged and agreed, *inter alia*, that: (i) the Prepetition Revolving Credit Agreement created a perfected, first priority security interest in and to the Project; and (ii) the interest created by the Term Collateral Documents (as defined in the Intercreditor Agreement) in any of the foregoing proceeds is subordinate in all respects to the security interest created by the Revolver Collateral Documents (as defined in the Intercreditor Agreement) and the application thereof shall be governed by the terms and conditions of the Prepetition Revolving Credit Agreement.

8.    Each of the Prepetition Financing Documents is a valid and binding agreement and obligation of the Debtors, and the Prepetition Liens (i) constitute valid, binding, enforceable and perfected first or (as applicable) second priority prepetition security interests and liens as provided therein, subject only to the Permitted Liens (as defined in the respective Prepetition Financing Documents), but only to the extent such Permitted Liens are valid, enforceable, non-avoidable liens and security interests that are perfected prior to the Petition Date (or perfected after

#4844-6890-4199 -10-

the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code and applicable

non-bankruptcy law), which are not subject to avoidance, reduction, disallowance, impairment or

subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and that are senior

in priority to the Prepetition Liens under applicable law and after giving effect to any applicable

subordination or intercreditor agreements, and (ii) are not subject to avoidance, reduction,

disallowance, impairment or subordination pursuant to the Bankruptcy Code, applicable non-

bankruptcy law or otherwise.

9.    (i) The Prepetition Indebtedness constitutes the legal, valid and binding

obligation of the Debtors, enforceable in accordance with its terms; (ii) the amount of the Prepetition

Indebtedness is due and payable to the Prepetition Agent for the benefit of the Prepetition Lenders in

an amount not less than the amounts set forth in paragraph D.4. above plus any unpaid postpetition

interest on the Prepetition Indebtedness (at the non-default rate), as well as reasonable postpetition

fees, costs and charges related to the Prepetition Indebtedness, all as provided in the Prepetition

Financing Documents; (iii) no objection, offset, defense or counterclaim of any kind or nature to the

Prepetition Indebtedness exists, and the Debtors shall not assert any claim, counterclaim, setoff or

defense of any kind, nature or description that would in any way affect the validity, enforceability

and non-avoidability of any of the Prepetition Indebtedness; and (iv) the Prepetition Indebtedness,

and any amounts previously paid to the Prepetition Agent or any Prepetition Lender on account

thereof or with respect thereto, are not subject to avoidance, recharacterization, reduction,

disallowance, impairment, disgorgement, set-aside, assignment or subordination pursuant to the

Bankruptcy Code, applicable non-bankruptcy law or otherwise.  The Debtors do not have any

claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the

Bankruptcy Code or otherwise, with respect to the Prepetition Indebtedness or against the

Prepetition Agent or any of it's predecessors-in-interest, affiliates, subsidiaries, agents, officers,

directors, employees, and attorneys, with respect to the Prepetition Indebtedness and the Prepetition

Financing Documents; provided, however, that, subject to the provisions of the Plan Support

Agreement, the Debtors and all other parties in interest, including without limitation Luxor, reserve

any and all rights, claims, counterclaims, defenses with respect to any claim or dispute based upon,

related to, arising under or in connection with (x) that certain Commitment Letter dated June 18, 2010 (the "Commitment Letter"), pursuant to which Luxor committed to provide the Debtors with exit financing pursuant to the terms set forth therein and (y) the facts surrounding the termination of the Commitment Letter (hereafter, (x) and (y) collectively, the "Luxor Exit Financing Dispute").

10.    The Prepetition Agent (on behalf of the Prepetition Lenders) holds properly perfected security interests and liens in and on the Prepetition Collateral by, among other methods, the filing of UCC-1 financing statements, mortgages and other required documents against the Debtors and such Prepetition Collateral with the proper state and county offices for the perfection of such security interests and liens.  The Prepetition Agent (on behalf of the Prepetition Lenders) also holds properly perfected security interests and liens in and on all Pre-DIP Collateral by virtue of the entry of the Cash Collateral Orders.

11.    In entering into the DIP Loan Documents and as consideration therefor, the Debtors hereby agree that until such time as all DIP Obligations are indefeasibly paid in full and the commitments are terminated in accordance with the terms of the DIP Loan Documents, the Debtors shall not in any way prime or seek to prime (*i.e.*, cause to be subordinated) the liens and security interests provided to the DIP Agent, the DIP Lenders or the Prepetition Secured Parties under this Order by offering a subsequent lender or any party-in-interest a senior or *pari passu* lien or claim pursuant to section 364(d) of the Bankruptcy Code, or otherwise, other than with respect to Permitted Liens.

E.    **Cash Collateral**.  The Prepetition Agent's and the Prepetition Lenders' cash collateral shall consist of all "cash collateral" as that term is defined in section 363(a) of the Bankruptcy Code and shall be referred to as "Cash Collateral."

F.    **Purpose and Necessity of Financing**.  The Debtors require the financing described in the Motion to fund, among other things, the Debtors' immediate cash requirements for working capital and general corporate needs and for other purposes permitted by the DIP Loan Documents. If the Debtors do not obtain authorization to borrow under the DIP Loan Agreement and the DIP Loan is not approved, the Debtors will suffer immediate and irreparable harm.  The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503

#4844-6890-4199 -12-

of the Bankruptcy Code, or other financing under sections 364(c) or (d) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Loan Documents.  A loan facility in the amount provided by the DIP Loan Documents is not available to the Debtors without granting the DIP Lenders superpriority claims, liens and security interests, pursuant to sections 364(c)(1), (2), (3) and 364(d) of the Bankruptcy Code, as provided in this Order and the DIP Loan Documents.  After considering all alternatives, the Debtors have concluded in the exercise of their sound business judgment that the loan facility provided under the DIP Loan Documents represents the best working capital financing available to them at this time.

G.    **Use of Cash Collateral**.  The Debtors also require the ongoing use of Cash Collateral to operate their businesses.  Without the use of Cash Collateral, the Debtors will not be able to meet their cash requirements for working capital and general corporate needs.  Prepetition Lenders holding more than 85% of the Prepetition Indebtedness consent to the Debtors' use of the Cash Collateral and the granting of the Adequate Protection Liens (as defined in paragraph 6(a) below) but only to the extent provided in the Budget (as described in paragraph 7 below) for the duration of this Order and solely pursuant to the terms and conditions set forth in this Order.  The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary to obtain the consent or non-objection of the Prepetition Lenders and the Prepetition Agent to the Debtors' use of Cash Collateral.  In the event of any conflict between the terms and provisions of any of the Cash Collateral Orders and the Prepetition Financing Documents, the terms and provisions of this Order shall control.

H.    **Good Faith**.  Based on the record before the Court, the DIP Loan Documents have been negotiated in good faith and at arm's-length by and among the Debtors, the DIP Agent and the DIP Lenders.  Any DIP Loan and/or other financial accommodations made to the Debtors by the DIP Agent and the DIP Lender pursuant to this Order and/or the DIP Loan Documents shall be deemed to have been extended by the DIP Agent and the DIP Lenders in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Lenders shall be entitled to all protections afforded thereunder.  The terms of the DIP Loan provided under the DIP Loan Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair

consideration.

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

I.    **Cause Shown**.

(a)    Good cause has been shown for the immediate entry of this Order pursuant to Bankruptcy Rule 4001(b) and Local Bankruptcy Rule 4001-2.  The Debtors' business has an immediate need for financing under the DIP Loan Documents and for the continuing use of Cash Collateral in order to permit, among other things, the orderly continuation of the operation of their business, the maintenance of their business relationships with vendors, suppliers and customers, the payment of payroll, the payment of necessary capital expenditures and satisfaction of other working capital and operational, financial and general corporate needs.  The access of the Debtors to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations and use of Cash Collateral is vital to the preservation and maintenance of the going concern values of the Debtors and to the success of the Chapter 11 Cases.  Without such credit and use of Cash Collateral, the Debtors would not be able to operate their business and the Debtors' estates would be irreparably harmed.  The Debtors' use of Cash Collateral and the Interim Borrowing has been deemed sufficient to meet the Debtors' immediate postpetition liquidity needs pending the Final Hearing, subject to the terms of this Order, and all other agreements delivered pursuant hereto, including without limitation, the Budget.

(b)    Based on the record presented to the Court at the Interim Hearing, good, adequate and sufficient cause has been shown to justify the immediate grant of the relief requested in the Motion, and the immediate entry of this Order to avoid immediate and irreparable harm to the Debtors and their estates.  The terms of the extension of credit under the DIP Loan Documents and the Debtors' use of Cash Collateral (i) are fair and reasonable, (ii) reflect the Debtors' sound exercise of business judgment consistent with their fiduciary duties, (iii) constitute reasonably equivalent value and fair consideration to the DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lenders, and (iv) are necessary, essential and appropriate for the continued operation and management of the Debtors' businesses and the preservation of their assets and properties.  Entry of this Order is in the best interest of the Debtors, their estates and creditors and all parties in interest in the Chapter 11 Cases.

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

J.    **Consent**.  The Prepetition Agent has consented to the liens granted to the DIP Agent for the benefit of the DIP Lenders pursuant to this Order in consideration for the terms, conditions, and protections set forth in this Order.

K.    **Plan Support Agreement**.  The Debtors and the DIP Lenders (the "Plan Support Parties"), who are also Prepetition Lenders that hold in excess of 85% of the Prepetition Indebtedness, intend to enter into the Plan Support Agreement, which, together with the Plan Term Sheet, represents a compromise that formulates the basis for a chapter 11 plan (the "Chapter 11 Plan") that is conditioned upon, among other things, the DIP Lenders' provision of the DIP Loan as contemplated in the DIP Loan Documents and that sets forth the terms of a settlement by the Debtors and the DIP Lenders with Luxor.  Based upon the record before the Court, the Plan Support Agreement has been negotiated in good faith and at arms-length by the Plan Support Parties, the compromises therein are in the best interests of the Debtors, their creditors and other parties in interest, and represents a sound exercise of the Debtors' business judgment.

L.    **Findings of Fact and Conclusions of Law**.  Each of the foregoing findings by the Court will be deemed (i) a finding of fact, if and to the full extent that it makes and contains factual findings, and (ii) a conclusion of law, if and to the full extent that it makes and contains legal conclusions.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.    **Disposition.**  The Motion is granted on an interim basis, except where this Order indicates that relief is granted on a final basis.  Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled on their merits.  This Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry notwithstanding Bankruptcy Rules 6004(h), 7062, and 9014.  The terms and provisions of the DIP Loan Documents and continuing Cash Collateral use are approved on an interim basis.

2.    **Interim Borrowing**.  The Debtors are hereby authorized to immediately execute the DIP Loan Documents to the extent that they have not already done so.  The Debtors are authorized to immediately obtain the DIP Loan, pursuant to the terms of this Order and the DIP

Loan Documents, in the aggregate principal amount of the Interim Borrowing upon the terms set forth herein and in the DIP Loan Documents.  Proceeds of the Interim Borrowing may be used to fund, in accordance with and subject to this Order and the DIP Loan Documents (including, without limitation, the provisions of paragraph 7 below relating to the Budget and paragraph 8 below relating to the Carve-Out), the Debtors' ordinary working capital needs, general corporate needs, allowed fees and expenses of attorneys, accountants, and other professionals retained in these Chapter 11 Cases pursuant to sections 327, 328, 330, 331 and 1103 of the Bankruptcy Code, and other amounts required or allowed to be paid in accordance with this Order and the DIP Loan Documents.  For the avoidance of doubt, all terms and conditions of the DIP Loan Documents shall be binding upon the Debtors in accordance with the terms therewith and the Debtors are authorized and directed to comply with all such terms.

3.    **DIP Agent/Lenders Superpriority Claim**.  The DIP Agent, for the benefit of the DIP Lenders, is hereby granted an allowed superpriority administrative expense claim (the "Superpriority Claim") pursuant to section 364(c)(1) of the Bankruptcy Code for all of the DIP Obligations, having priority over any and all claims and expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726 and 1114 of the Bankruptcy Code (including, without limitation, any priority administrative expense claims granted under the Cash Collateral Orders), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.  The Superpriority Claim granted in this paragraph shall be subject, and subordinate in priority of payment, only to the Carve-Out on the terms and conditions set forth herein.  Except as set forth herein, no other superpriority administrative expenses or claims shall be granted or allowed in these Chapter 11 Cases.

4.    **DIP Agent's Lien Priority**.

(a)    To secure the DIP Obligations, the DIP Agent is hereby granted, for the benefit of the DIP Lenders:

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

(i)  pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority, fully perfected security interest in and lien upon all Unencumbered Collateral (including, without limitation, any and all Avoidance Actions; provided , however, that, until entry of the Final DIP Order , no liens on or security interests in such Avoidance Actions shall arise), subject only to the payment of the Carve-Out on the terms and conditions set forth herein;

(ii)  pursuant to  section 364(d)(1) of the Bankruptcy Code, a fully perfected priming Lien on all Pre-DIP Collateral, in all cases, senior to any and all present and future Liens, claims or encumbrances against the Pre-DIP Collateral, including, without limitation, any and all Liens granted under the Cash Collateral Orders and all Adequate Protection Liens (as defined below) in favor of the Prepetition Agent, subject only to (a) any valid, perfected and non-avoidable Liens existing on the Petition Date (other than those granted to the Prepetition Agent), (b) any valid Lien in existence on the Petition Date that is perfected subsequent to the Petition Date by Section 546(b) of the Bankruptcy Code (other than those perfected by the Prepetition Agent), (c) any Permitted Liens (other than those granted to the Prepetition Agent), (d) any valid, perfected, and enforceable Liens in favor of IndyMac Ventures, LLC against that certain deposit account (the "Lancaster Account") in the name of HHI Lancaster I, LLC that contains the proceeds from the sale approved pursuant to that certain Order Authorizing (I) The Sale Of Certain Real Property Free And Clear Of Liens, Claims, And Encumbrances, (II) The Assumption And Assignment Of Executory Contracts; And (III) Granting Related Relief entered by the Bankruptcy Court on December 17, 2009 [Docket No. 103] (the "IndyMac Lancaster Account Liens") (but subject to no other Liens against the Lancaster Account) and (e) payment of the Carve-Out on the terms and conditions set forth herein;  and

(iii)  pursuant to section 364(c)(3) of the Bankruptcy Code, a junior, fully perfected Lien on all Junior Collateral, subject to payment of the Carve-Out on the terms and conditions set forth herein;

(b)  The DIP Liens shall be effective immediately upon the entry of this Order.

(c)  The DIP Liens shall not at any time be (a) made subject or subordinated to, or made *pari passu* with any other Lien existing as of the date immediately preceding the date of entry

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

1  of this Order or arising thereafter, or administrative expense or claim created under sections 363 or

2  364(d) of the Bankruptcy Code or otherwise (except with respect to the Permitted Liens and the

3  Carve-Out), or (b) subject to any Lien that is avoided and preserved for the benefit of the Debtors'

4  estates under section 551 of the Bankruptcy Code.

5          (d)     The DIP Liens shall be and hereby are fully perfected Liens, such that no

6  additional steps need be taken by the DIP Agent or DIP Lenders to perfect such Liens.  Any

7  provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract,

8  organizational document, or other instrument or agreement that requires the consent or approval of

9  one or more landlords, licensors or other parties, or requires the payment of any fees or obligations

10  to any governmental entity, non-governmental entity, or any other person, in order for any of the

11  Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or

12  the proceeds thereof or other Collateral, is and shall be deemed to be inconsistent with the

13  provisions of the Bankruptcy Code and shall have no force or effect with respect to the transactions

14  granting the DIP Agent or DIP Lenders a superpriority Lien on such fee, leasehold or other interest

15  or other Collateral or the proceeds of any assignment, sale or other transfer thereof by any of the

16  Debtors in favor of the DIP Agent or DIP Lenders in accordance with the terms of the DIP Loan

17  Agreement and the other DIP Loan Documents.

18          (e)     The DIP Liens, Superpriority Claim and other rights and remedies granted to

19  the DIP Agent and DIP Lenders under this Order shall continue in this and in any superseding case

20  or cases under the Bankruptcy Code and such Liens shall maintain their respective priorities as

21  provided in this Order until all the DIP Obligations have been indefeasibly satisfied in full in cash

22  and the DIP Lenders' commitments have been terminated in accordance with this Order, the DIP

23  Loan Agreement, and other the DIP Loan Documents.

24          5.    **Use of Cash Collateral**.  The Debtors are hereby authorized to use Cash

25  Collateral for the period of time from the date of entry of this Order until the Termination Date (as

26  defined in paragraph 9 below), solely as provided in this Order and the Budget.  From and after the

27  Petition Date, all Proceeds of the Collateral including, without limitation, all of the Debtors' existing

28  or future cash and Cash Collateral, shall not, directly or indirectly, be used to pay expenses of the

Debtors or to make debt payments (except as set forth in this Order) or otherwise disbursed except (i) to make the payments of fees, interest and other expenses due and payable under the DIP Loan Documents, (ii) to make the payments to the Prepetition Agent for the benefit of the Prepetition Lenders required under this Order (the "Adequate Protection Payments"), (iii) for those disbursements set forth in the Budget, and (iv) subject to the provisions of paragraph 8 hereof and the Budget, for any fees payable pursuant to 28 U.S.C. § 1930, any fees payable to the Clerk of this Court or the U.S. Trustee, and compensation of allowed fees and expenses payable to the Professionals retained by the Debtors; provided, however, that the foregoing shall not be construed as consent to the allowance of any of the amounts referred to in the preceding clause (iv) and shall not affect the right of any party in interest to object to the allowance and payment of any such amounts.

On or after the occurrence of an Event of Default (as defined in the DIP Loan Agreement), the Debtors shall not be permitted to use Cash Collateral, except to pay the Carve-Out in accordance with paragraph 8 hereof. The Debtors shall (x) maintain all Cash Collateral in a segregated bank account (the "Cash Collateral Account") maintained with a bank designated by the DIP Agent and shall not commingle any Cash Collateral with any of their other cash and (y) provide each of the DIP Agent and the Prepetition Agent with an accounts payable schedule of its Potential Lien Claimants (as hereinafter defined) on the 15th day of each month and certify that such schedule is true and correct in all material respects. As used herein, "Potential Lien Claimant" means "laborer," "materialman" or "claimant" as those terms are defined in Chapter 1 of Title XV of Part 4 of Division 3 of the California Code of Civil Procedure (Commencing with Section 3083) who provided labor or materials to improve any real property constituting any part of the Collateral, whether or not such entity has recorded a claim of lien or served a stop notice on the DIP Agent, the Prepetition Agent or any of the DIP Lenders or Prepetition Lenders. Notwithstanding the foregoing, Potential Lien Claimant does not include any Entity (as defined in the Bankruptcy Code) who or which has been barred under statute by the passage of time from timely recording an enforceable mechanic's lien against the premises or timely serving an enforceable stop notice on the DIP Lender, the Prepetition Agent or any of the DIP Lenders or Prepetition Lenders.

6.    **Adequate Protection for Prepetition Agent and Prepetition Lenders**

(a)    As adequate protection for the granting of the priming liens in favor of the DIP Agent and DIP Lenders hereunder, the subordination of the superpriority administrative expense claims previously granted under the Cash Collateral Orders and the use of the Pre-DIP Collateral (including the Cash Collateral) by the Debtors, and in accordance with sections 361, 363(e), and 364(d) of the Bankruptcy Code,

(i) the Prepetition Revolving Loan Agent, on behalf of the Prepetition Revolving Loan Lenders, is hereby granted, for the benefit of the Prepetition Revolving Loan Lenders, valid, perfected, second priority post-petition security interests in and liens (the "Revolver Adequate Protection Liens") on all of the Collateral, to secure an amount equal to the aggregate diminution in the value or amount of the Prepetition Revolving Loan Agent's and the Prepetition Revolving Loan Lenders' interest in the Pre-DIP Collateral (including the Cash Collateral), whether by depreciation, use, sale, loss, decline in market price, the imposition of the priming liens to secure the DIP Loans, or otherwise (any such diminution in value, "Collateral Diminution"); and

(ii) the Prepetition Term Loan Agent, on behalf of the Prepetition Term Loan Lenders, is hereby granted, for the benefit of the Prepetition Term Loan Lenders, valid, perfected, third priority post-petition security interests in and liens (the "Term Loan Adequate Protection Liens" and, collectively with the Revolving Term Loan Adequate Protection Liens, the "Adequate Protection Liens") on all of the Collateral to secure an amount equal to the Collateral Diminution;

provided, however, that, notwithstanding anything to the contrary, the Adequate Protection Liens shall be and remain subject and subordinate to (i) the DIP Liens and/or payment of any DIP Obligations on account thereof; (ii) the Permitted Liens; and (iii) payment of the Carve-Out on the terms and conditions set forth herein.

(b)    To the extent of any Collateral Diminution,

(i) the Prepetition Revolving Loan Agent, on behalf of the Prepetition Revolving Loan Lenders, also is hereby granted a superpriority administrative claim having priority

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

1    over any other claims including claims made pursuant to section 507(b) of the Bankruptcy

2    Code, and junior in priority only to the Superpriority Claim held by the DIP Agent and DIP

3    Lenders and subject only to the (i) payment of the DIP Obligations and (ii) payment of the

4    Carve-Out on the terms and conditions set forth herein; and

5                      (ii) the Prepetition Term Loan Agent, on behalf of the Prepetition Term Loan

6    Lenders, also is hereby granted a superpriority administrative claim having priority over any

7    other claims, including claims made pursuant to section 507(b) of the Bankruptcy Code,

8    junior in priority only to the Superpriority Claim held by the DIP Agent and DIP Lenders

9    and to the Revolver Loan Adequate Protection Claim and subject only to the (i) payment of

10    the DIP Obligations, (ii) payment of the Prepetition Revolving Loan Indebtedness and (iii)

11    payment of the Carve-Out on the terms and conditions set forth herein (the superpriority

12    administrative claims described in paragraph 6(b), collectively, the "Prepetition Agent

13    Superpriority Claims");

14                      (c)      As further adequate protection for the use of the DIP Collateral (including

15    Cash Collateral) by the Debtors, and in accordance with sections 361, 363(e), and 364(d) of the

16    Bankruptcy Code, the Debtors shall pay to the Prepetition Agent, for the benefit of the Prepetition

17    Lenders, (i) on an ongoing basis, the current cash payment of interest at the non-default rates and at

18    the times provided for in each of the Prepetition Financing Agreements on the Prepetition

19    Indebtedness, plus the Prepetition Agent's fees and expenses owing with respect to the Prepetition

20    Indebtedness as provided for in the Prepetition Financing Documents.

21                      (d)      In the event of that the Debtors' right to use Cash Collateral terminates, the

22    foregoing adequate protection set forth in this paragraph 6 shall be deemed insufficient for the

23    Debtors' continued use of the Pre-DIP Collateral (including Cash Collateral).

24                      (e)      Under the circumstances and given that the adequate protection described in

25    this Order is consistent with the Bankruptcy Code, including section 506(b), the Court finds that the

26    adequate protection provided herein is reasonable and sufficient to protect the interests of the

27    Prepetition Agent and the Prepetition Lenders.  Notwithstanding anything herein to the contrary,

28    however, this Order is without prejudice to, and does not constitute a waiver of, expressly or

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

#4844-6890-4199 -22-

implicitly, the rights of the Prepetition Agent or the Prepetition Lenders to seek additional adequate protection at any time.

7. **Budget**. The Debtors shall not make disbursements in excess of those projected in the budget attached as <u>Exhibit A</u> hereto (as such budget may be extended, varied, supplemented, or otherwise modified in accordance with the terms of this Order, the "<u>Budget</u>") and shall not otherwise deviate from the terms of the Budget (including without limitation the payment limitations by line item category, amount and payment period set forth therein) except as expressly permitted in the DIP Loan Agreement.  The Budget may be modified or supplemented from time to time by written agreement of the DIP Agent and the Debtors without the need of further notice, hearing or order of this Court.  Under no circumstances shall the Prepetition Agent or the Prepetition Lenders be required to advance any funds to pay any disbursement set forth in the Budget.  The Debtors shall provide the Prepetition Agent with copies of the Variance Report (as defined in the DIP Loan Agreement) contemporaneously with the deliver of such report to the DIP Agent.  The DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lenders may assume that the Debtors will comply with the Budget, as ordered by this Court pursuant to this Order.  The DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lenders shall have no duty to monitor such compliance and shall not be obligated to pay (directly or indirectly from the Collateral) any unpaid expenses incurred or authorized to be incurred pursuant to the Budget.

8. **Carve-Out**

(a) As used in this Order, the term "<u>Carve-Out</u>" shall mean, to the extent there are not sufficient unencumbered funds available to the Debtors' estates, proceeds of Collateral to pay the following expenses: (i) any unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of title 28 of the United States Code (in this regard, the Debtors are ordered to pay any and all such fees as and when due); and (ii) subject to the terms and conditions of this Order, the allowed and unpaid reasonable fees and expenses of retained professionals ("<u>Professionals</u>") employed pursuant to sections 327, 328, and 363 of the Bankruptcy Code (collectively, the "<u>Professional Fees</u>") by the Debtors (X) prior to the Carve-Out Trigger Date (as

defined herein) (and including amounts incurred but not invoiced or approved prior to the Carve-Out

Trigger Date), an aggregate amount not to exceed the amounts for Professionals for each period as

set forth in the Budget, and (Y) following the Carve-Out Trigger Date, an aggregate amount not to

exceed $25,000.  As used herein, "Carve-Out Trigger Date" shall mean the earlier of (i) the date on

which the DIP Agent provides written notice to counsel to the Debtors that the Carve-Out is

revoked, which notice shall be delivered only on or after and during the continuation of an Event of

Default and/or the occurrence of the Termination Date.

(b)      Notwithstanding anything herein to the contrary, no Collateral, or amounts

borrowed under the DIP Loan Documents, proceeds of any of the foregoing, or any portion of the

Carve-Out shall include, apply to, or be available for, any fees or expenses incurred by any party,

including the Debtor, in connection with (i) the initiation or prosecution of any claims, causes of

action, adversary proceedings, or other litigation against the DIP Agent, any DIP Lenders, the

Prepetition Agent or any Prepetition Lender, including, without limitation, challenging the amount,

validity, extent, perfection, priority, characterization, or enforceability of, or asserting any defense,

counterclaim, or offset to, the DIP Obligations, the Superpriority Claim, the DIP Liens, the

Prepetition Indebtedness, the Prepetition Agent Superpriority Claim or the Prepetition Liens,

(ii) asserting or soliciting or encouraging other parties to assert (A) any claims or causes of action

against the DIP Agent, any DIP Lender, the Prepetition Agent or any Prepetition Lender, including,

without limitation, claims or actions that seek or may have the effect to hinder or delay the assertion

or enforcement of the DIP Liens or Adequate Protection Liens, or realization on the Collateral, in

accordance with the DIP Loan Documents or this Order by the DIP Agent, any DIP Lender, the

Prepetition Agent or any Prepetition Lender, or (B) any Avoidance Actions against any DIP Agent,

any DIP Lender, the Prepetition Agent or any Prepetition Lender, or (iii) the initiation or prosecution

of any claims, causes of action, adversary proceedings, or other litigation against the Prepetition

Agent or any Prepetition Lender, including, without limitation, challenging the amount, validity,

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to, the Prepetition Indebtedness, any Prepetition Financing Documents, or the Adequate Protection granted herein; provided, however, that, subject to the provisions of the Plan Support Agreement, the foregoing shall not limit or otherwise impair the Debtors' right to use such funds in the Budget in connection with disputing the allowance of any administrative claim asserted by Luxor.

(c)     The foregoing shall not be construed as consent to the allowance of any Professional Fees and shall not affect the right of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, the U.S. Trustee, or other parties in interest to object to the allowance and payment of any Professional Fees.  Payment of any portion of the Carve-Out shall not, and shall not be deemed to, (x) reduce any of the DIP Obligations or (y) except as expressly provided herein, subordinate, modify, alter or otherwise affect any of the Liens of such parties on the Collateral (or their respective claims against the Debtors).

9.     **Termination of DIP Facility.**  The term of this Order and the DIP Loan Documents authorized hereunder shall expire, and the DIP Loans made pursuant to the DIP Loan Documents and this Order will mature and, together with all interest thereon and other DIP Obligations, become due and payable, upon the earlier of (a) thirty (30) days after the date of entry of this Order, if the Final DIP Order has not been entered by the Bankruptcy Court, (b) the Maturity Date (as defined in the DIP Loan Agreement), and (c) such earlier date on which the DIP Loan shall become due and payable in accordance with the terms of this Order and/or the DIP Loan Documents (the "Termination Date").  On and after the occurrence of the Termination Date, the Debtors' authority to use the proceeds of the DIP Loan and any Collateral granted to the DIP Agent shall terminate immediately, all without further order or relief from the Court.  In addition, on the Termination Date, all accrued interest and fees and all other DIP Obligations, Prepetition Indebtedness and any Adequate Protection Payments shall, in each instance, be immediately due and payable and the DIP Agent and the Prepetition Agent shall have all other rights and remedies provided in this Order and under applicable law.  Notwithstanding anything herein or the occurrence

of the Termination Date, all of the rights, remedies, benefits, and protections provided to the DIP

Agent, the Prepetition Agent and/or the DIP Lenders and Prepetition Lenders under this Order shall

survive the Termination Date.

10. **Sections 506(c) and 552(b).** Effective upon entry of this Order, and subject

to the Carve-Out and except as otherwise expressly permitted by the DIP Loan Agreement or this

Order, neither the Collateral nor the DIP Agent, any DIP Lender, the Prepetition Agent or any

Prepetition Lender, nor any of their claims or Liens, shall be subject, whether by operation of

section 105, 506(c) or 552(b) of the Bankruptcy Code or otherwise, to any costs or expenses of

administration that have been or may be incurred at any time (including, without limitation, the fees

and expenses of the Professionals or any other professional person) by the Debtors or any other

person or entity without the prior written consent of each of the DIP Agent and Prepetition Agent,

and no such consent shall be implied from any action, inaction, or acquiescence by any party,

including, but not limited to, funding of the Debtors' ongoing operations by the DIP Agent and DIP

Lenders.  Effective upon entry of this Order, the "equities of the case" exception contained in

section 552(b) of the Bankruptcy Code shall be deemed waived with respect to the Collateral and

any Proceeds thereof.  Neither the DIP Agent or any DIP Lender, nor the Prepetition Agent or any

Prepetition Lender shall be subject to the equitable doctrine of "marshaling" or any similar doctrine

with respect to any Collateral.

11. **Reimbursement of Fees and Expenses**.  Subject to entry of the Final DIP

Order, the Debtors shall promptly reimburse (i) the DIP Agent in accordance with the DIP Loan

Documents and (ii) the Prepetition Agent and Prepetition Lenders in accordance with the terms of

the Prepetition Financing Documents and subject to that certain Order Approving Settlement

Among the Debtors, the Agent, and the Prepetition Secured Lenders Pursuant To Fed. R. Bankr. P.

9019 (the "Debtor-Prepetition Agent/Lender Settlement Order") (Docket No. 415), for their

reasonable costs and fees (including, without limitation, reasonable attorneys' and financial

advisors' fees and expenses), charges and expenses; provided, however, that the Debtors shall

reimburse the legal and financial advisory fees and expenses of the Prepetition Agent for the months

of September and October 2010 promptly following entry of this Order to the extent the Debtors

1    have not paid such fees and expenses prior thereto.  None of such costs, fees, charges, and expenses

2    shall be subject to Court approval or required to be maintained in accordance with the United States

3    Trustee Guidelines and no recipient of any such payment shall be required to file with respect

4    thereto any interim or final fee application with the Court.  Notwithstanding any other provision in

5    this Order, subject to entry of the Final DIP Order, all fees and costs incurred by the DIP Agent, DIP

6    Lenders or the Prepetition Agent, whether incurred prior or subsequent to the Debtors' entry into the

7    DIP Loan Agreement and Plan Support Agreement, and including, without limitation, all legal and

8    other advisory fees and expenses incurred in the negotiation, preparation and/or litigating the DIP

9    Loan Documents, the Plan Support Agreement, the Plan Term Sheet, the Plan, the Disclosure

10   Statement and any exit financing facility to be provided by the DIP Lenders, shall be paid in full,

11   irrespective of any amounts designated for such parties in the Budget.

12         12.    **Priority of Liens**.  Other than the Carve-Out, the Permitted Liens and the

13   IndyMac Lancaster Account Lien, no claim or Lien having a priority superior or *pari passu* with

14   those granted by this Order to the DIP Agent, DIP Lenders, Prepetition Agent or Prepetition Lenders

15   shall be granted by the Debtor, while any obligations under the DIP Facility (or refinancing

16   thereof) or any Prepetition Indebtedness remains outstanding without the written consent of the DIP

17   Agent and Prepetition Agent.  Except as expressly permitted by the DIP Loan Documents and this

18   Order, the Debtors will not, at any time during the Chapter 11 Cases while any obligations under the

19   DIP Loan Agreement and/or the Prepetition Credit Agreement remain outstanding, grant senior or

20   *pari passu* mortgages or security interests in the Collateral, or any portion thereof, pursuant to

21   section 364(d) of the Bankruptcy Code or otherwise.  With respect to the Adequate Protection Liens,

22   (x) the priority of the Revolving Agent's lien on any and all Collateral and the Proceeds thereof or

23   therefrom for the benefit of the Revolving Loan Lenders and (y) the right to receive payment out of

24   the Collateral or the Proceeds thereof or therefrom compared to the Term Loan Agent's lien for the

25   benefit of the Term Loan Lenders, shall each be determined in accordance with the Intercreditor

26   Agreement; provided, however, the Adequate Protection Liens shall not operate to create a new

27   class of claims or alter the voting rights of the Prepetition Revolving Loan Lenders with respect to

28

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

the Prepetition Term Loan Lenders and vice versa in connection with the voting on any plan of

reorganization that may be proposed in this case by any party in interest.

13.  **Release of Collateral; No Subordination**.  The DIP Agent, at its option, may

release at any time, with the consent of the Requisite DIP Lenders (as defined in the DIP Loan

Agreement), and the Prepetition Agent, at its option, may release at any time, with the consent of the

Prepetition Lenders holding more than 60% of the Prepetition Indebtedness, from its respective

Liens any assets determined by the DIP Agent or the Prepetition Agent (as applicable) to have a risk

of environmental liabilities which the DIP Agent or the Prepetition Agent (as applicable) in its sole

discretion deems unacceptable.  In addition, except to the extent otherwise expressly set forth in the

Final DIP Order, this Order, or in a written instrument, agreement or other document executed by

the DIP Agent or the Prepetition Agent (as applicable), no Liens granted to the DIP Agent or to the

Prepetition Agent (as applicable) pursuant this Order or any Final DIP Order and no claim or

expense of the DIP Agent, DIP Lenders, Prepetition Agent or Prepetition Lenders under this Order

or any Final DIP Order shall be subject to subordination to any other Liens or claims under

section 510 of the Bankruptcy Code or otherwise.  Any Lien upon the Collateral that is avoided or

otherwise preserved for the benefit of the estate under section 551 of the Bankruptcy Code or any

other provision of the Bankruptcy Code shall be subordinate to the Liens of the DIP Agent and

Prepetition Agent upon the Collateral.

14.  **Information and Access**.  The Debtors shall provide to the DIP Agent and

the Prepetition Agent, as and when required under the DIP Loan Documents and the Prepetition

Financing Documents, in each case as applicable, all financial statements, certificates and

information that are required to be provided pursuant to same or this Order, provided however, that

the Debtors shall not be obligated to provide the Prepetition Revolving Agent with any borrowing

base or similar certificates.  In addition, the Debtors shall deliver to the DIP Agent and the

Prepetition Agent (i) on or before the 15th day of the successive month, operating reports that reflect

revenues as well as expenditures of the Debtors' funds during the preceding month, and (ii) such

other financial reports and information as are required by the U.S. Trustee, the Local Bankruptcy

Rules, or reasonably requested by the DIP Agent or the Prepetition Agent.  Upon reasonable notice

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

and at such reasonable times during normal business hours and otherwise as may reasonably be

requested, the Debtors shall permit any representatives designated by the DIP Agent, any DIP

Lender, the Prepetition Agent and any Prepetition Lender to visit and inspect any of their properties,

to inspect, copy and take extracts from their financial and accounting records, and to discuss their

affairs, finances, and accounts with their officers, financial advisors and independent public

accountants.

15.   **Access to Collateral – No Landlord's Liens**.  Upon entry of a Final DIP

Order providing for such relief and subject to applicable state law, notwithstanding anything

contained herein to the contrary and without limiting any other rights or remedies of the DIP Agent,

for the benefit of the DIP Lenders, contained in this Order or the DIP Loan Documents, or otherwise

available at law or in equity, and subject to the terms of the DIP Loan Documents and paragraph 22

below, upon written notice to the landlord of any leased premises that an Event of Default has

occurred and is continuing under the DIP Loan Documents, the DIP Agent may, subject to any

separate agreement by and between such landlord and the DIP Agent that may exist (the "Separate

Agreement"), enter upon any leased premises of the Debtors for the purpose of exercising any

remedy with respect to Collateral located thereon and, subject to the Separate Agreement, if any,

shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without

interference from such landlord; provided, that, subject to the Separate Agreement, if any, the DIP

Agent shall only pay rent of the Debtors that first accrues after the written notice referenced above

and that is payable during the period of such occupancy by the DIP Agent, calculated on a per diem

basis.  Nothing herein shall require the DIP Agent to assume any lease as a condition to the rights

afforded to the DIP Agent in this paragraph.

16.   **Perfection of Liens**.  All Liens on the Collateral granted to the DIP Agent

and the Prepetition Agent by this Order shall be, and they hereby are, deemed duly perfected and

recorded under all applicable federal or state or other laws as of the date hereof, and no notice,

filing, mortgage recordation, possession, further order, or other act, shall be required to effect such

perfection; provided, however, that notwithstanding the provisions of section 362 of the Bankruptcy

Code, (i) each of the DIP Agent and the Prepetition Agent may, at its sole option, file or record or

cause the Debtors to execute, file or record, at the Debtors' expense, such UCC financing statements, notices of Liens, mortgages and other similar documents or obtain landlord or warehousemen Lien waivers or other third party consents as the DIP Agent and/or the Prepetition Agent, as the case may be, may require, and (ii) each of the DIP Agent and the Prepetition Agent may require the Debtors to deliver to it any chattel paper, instruments or securities evidencing or constituting any Collateral, and the Debtors are directed to cooperate and comply therewith.  If either of the DIP Agent or Prepetition Agent, in its sole discretion, shall elect for any reason to cause to be obtained any such landlord or warehousemen Lien waivers or other third party consents or cause to be filed or recorded any such notices, financing statements, mortgages or other documents with respect to such Liens, or if either of the DIP Agent or Prepetition Agent shall elect to take possession of any Collateral, all such landlord or warehousemen Lien waivers or other third party consents, financing statements or similar documents or taking possession shall be deemed to have been filed or recorded or taken in the Chapter 11 Cases as of the commencement of such Chapter 11 Cases but with the priorities as set forth herein.  Each of the DIP Agent and the Prepetition Agent may (each in its discretion) but shall not be required to file a certified copy of this Order in any filing or recording office in any county or other jurisdiction in which any Debtor has real or personal property (including, in addition to any filing in applicable real estate records, UCC-1 filings in the Office of the Secretary of State for the State of California and any other applicable state) and such filing or recording shall be accepted and shall constitute further evidence of perfection of the DIP Agent's or Prepetition Agent's interests in the Collateral, as applicable.  Neither the granting of the Liens to the DIP Agent or the Prepetition Agent in the Collateral nor the exercise of any rights or remedies by the DIP Agent and/or any DIP Lender, or the Prepetition Agent and/or any Prepetition Lender in connection therewith will result in any breach, violation or infringement of (i) any trademark, copyright or other intellectual property right of the Debtors or any third party, or (ii) any contract to which the Debtors or any of their properties is subject.

17.    **Restrictions Regarding Collateral**.

(a)    On the date of any sale, lease, transfer, license, or other disposition of property outside the ordinary course of business of any Debtor that constitutes Collateral, the

#4844-6890-4199 -30-

Debtors shall escrow, and not be permitted to use, one hundred percent (100%) of the net proceeds (after paying any senior Liens) resulting therefrom, subject to the entry of an order of the Court authorizing and directing the payment thereof to the DIP Agent, for the benefit of the DIP Lenders, in accordance with the DIP Loan Documents, or if DIP Obligations have been paid in full, to the Prepetition Agent, for the benefit of the Prepetition Lenders, in accordance with the Prepetition Financing Documents and subject to the priorities set forth in the Intercreditor Agreement, .

(b)     In the event of any casualty, condemnation, or similar event with respect to property that constitutes Collateral, the Debtors shall escrow, and not be permitted to use, one hundred percent (100%) of any insurance proceeds, condemnation award, or similar payment, subject to the entry of an order of the Court authorizing and directing the payment thereof to the DIP Agent, for the benefit of the DIP Lenders, unless otherwise agreed in writing, or, if DIP Obligations have been paid in full, to the Prepetition Agent, for the benefit of the Prepetition Lenders, in accordance with the Prepetition Financing Documents and subject to the priorities set forth in the Intercreditor Agreement.

(c)     To the extent of any Collateral Diminution and the Carve-Out, in the event any Debtor receives any proceeds pursuant to a successful Avoidance Action, the Debtors are authorized and directed to pay to the DIP Agent, for the benefit of the DIP Lenders, one hundred percent (100%) of such proceeds within two (2) business days of receipt thereof.  To the extent the DIP Obligations have been paid in full, the Debtors are authorized and directed, in accordance with the Prepetition Financing Documents and subject to the priorities set forth in the Intercreditor Agreement, to pay to the Prepetition Agent, for the benefit of the Prepetition Lenders, one hundred percent (100%) of such proceeds within two (2) business days of receipt thereof.

18.    **Insurance Policies**.  Upon entry of this Order, the DIP Agent, on behalf of the DIP Lenders, shall be, and shall be deemed to be, without any further action or notice, named as the first additional insured and first loss payee on each insurance policy maintained by any of the

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

1  Debtors which in any way relates to the Collateral and each liability insurance policy maintained by

2  any of the Debtors (other than D&O insurance and any "tail" policy).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

19.    **Survival**.

(a)    The provisions of this Order shall not be discharged by and shall survive the entry of any order (i) confirming any chapter 11 plan in any of the Chapter 11 Cases (and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors hereby waive such discharge), (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or (iii) dismissing any or all the Chapter 11 Cases, and the terms and provisions of this Order, including, but not limited to, the financing protections granted hereunder, shall continue in full force and effect notwithstanding the entry of such order, and such protections shall retain their effect as provided by this Order until all obligations of the Debtors pursuant to this Order and the DIP Loan Documents are indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in this Order which survive such discharge by its terms).

(b)    Until all of the DIP Obligations, Prepetition Indebtedness and all Adequate Protection Payments required under this Order (including, without limitation, Paragraph 5 hereof) shall have been indefeasibly paid in full in cash and satisfied in the manner provided in this Order, no Debtor shall seek an order dismissing any of the Chapter 11 Cases.  If an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349(b) of the Bankruptcy Code) that (i) the Superpriority Claims, DIP Liens and Adequate Protection Liens granted pursuant to this Order and any subsequent order to or for the benefit of the DIP Agent, DIP Lenders, Prepetition Agent and/or the Prepetition Lenders shall continue in full force and effect and shall maintain their perfection and priorities as provided in this Order and subsequent orders until all obligations in respect thereof shall have been indefeasibly paid in full in cash and satisfied in the manner provided in this Order (and that such claims and Liens shall, notwithstanding such dismissal, remain binding on all persons and entities) and (ii) to the extent permitted by applicable law, this

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

1    Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing

2    such claims and Liens.

3          (c)    Under no circumstances shall any chapter 11 plan in any of the

4    Chapter 11 Cases be confirmed or become effective unless such chapter 11 plan provides

5    that the Adequate Protection Payments to be paid under this Order shall be paid in full in

6    cash and satisfied in the manner provided for in this Order and the DIP Loan Documents on

7    or before the effective date of such chapter 11 plan.

8          20.    **Subsequent Reversal**.  Based on the findings set forth in this Order, if any or

9    all of the provisions of this Order or the DIP Loan Documents are hereafter modified, vacated,

10   amended, or stayed by subsequent order of this Court or any other court:  (i) such modification,

11   vacatur, amendment, or stay shall not affect (A) the validity of any obligation of any Debtors to the

12   DIP Agent, DIP Lenders, Prepetition Agent or Prepetition Lenders pursuant to this Order that is or

13   was incurred prior to such party receiving written notice of the effective date of such modification,

14   vacatur, amendment, or stay (the "Effective Date"), or (B) the validity, enforceability or priority of

15   the Superpriority Claims, DIP Liens, Adequate Protection Liens or other grants authorized or

16   created by this Order and/or the DIP Loan Documents that are or were incurred prior to such party

17   receiving written notice of the Effective Date; (ii) the DIP Obligations and adequate protection given

18   pursuant to this Order and the DIP Loan Documents arising prior to the Effective Date shall be

19   governed in all respects by the provisions of this Order and the DIP Loan Documents in effect

20   immediately prior to the Effective Date; and (iii) the use of Cash Collateral and the validity of any

21   financing provided or Liens or claims granted pursuant to this Order and the DIP Loan Documents

22   is and shall be protected by section 364(e) of the Bankruptcy Code.  Notwithstanding any language

23   in this Order to the contrary, all findings and orders contained in this Order shall be without

24   prejudice to modification in any Final DIP Order regarding the use of cash collateral or DIP

25   financing, except that any such modification shall not apply with respect to any advances made

26   pursuant to this Order (with all such advances governed by the terms of this Order and DIP Loan

27   Documents).

28

#4844-6890-4199 -34-

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

21.    **Covenants**.  The Debtors shall timely comply with all of the covenants set forth in the DIP Loan Documents and in the Prepetition Financing Documents (as amended by this Order or any other order of the Court, and excluding compliance with any financial covenants); provided, however, that it shall not be a covenant or condition of this Order for the Debtors to cure any preexisting breach of the Prepetition Financing Documents which may have occurred prior to the Petition Date with the exception of the payments to be made pursuant to paragraph 6 of this Order.  Nothing in this paragraph shall relieve any Debtor of its duty to comply with all provisions of the Bankruptcy Code and applicable non-bankruptcy law.

22.    **Automatic Stay Modification.**

(a)    Subject to the provisions of subparagraphs (b) and (c) hereof, the automatic stay provisions of section 362 of the Bankruptcy Code hereby are, to the extent applicable, vacated and modified to the extent necessary:

(i)    After the passage of three (3) business days after written notice (the "Waiting Period") to the Debtors, their counsel and counsel to the Prepetition Agent (if different from counsel to the DIP Agent) of the occurrence of an Event of Default, the DIP Agent shall have immediate and automatic relief from the automatic stay without any requirement of prior authorization of the Court to exercise all rights and remedies provided for in the DIP Loan Documents, this Order, or under other applicable bankruptcy and nonbankruptcy law to the extent permitted under the DIP Loan Documents and this Order (provided, that, written notice of the right to setoff funds in accounts maintained by the Debtors with the DIP Agent or any of the DIP Lenders or to repay the DIP Obligations shall not be required); and

(ii)    immediately upon the occurrence of an Event of Default, without providing any prior notice thereof (i) the DIP Agent, for the benefit of the DIP Lenders, may charge interest at the default rate set forth in the DIP Loan Agreement, (ii) neither the DIP Agent nor any of the DIP Lenders shall have any further obligation to

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

provide financing under the DIP Loan Documents, this Order or otherwise and may, at their

discretion, terminate all commitments with respect to the DIP Loans, and (iii) any

authorization to use Cash Collateral or the proceeds of the DIP Loan shall terminate.

(b)     During the Waiting Period, the Debtors shall not use any Cash

Collateral or any DIP Loan proceeds to pay any claims or expenses except those reasonably

necessary to preserve the Debtors' going concern value as approved by the DIP Agent.  The

Debtors shall have the burden of proof at any hearing on any request by them to re-impose or

continue the automatic stay of section 362(a) of the Bankruptcy Code or to obtain any other

injunctive relief, and the only issue that may be raised at any such hearing shall be whether,

in fact, an Event of Default has occurred and is continuing.

(c)     This Court shall retain exclusive jurisdiction to hear and resolve any

disputes and enter any orders required by the provisions of this Order and relating to the

application, re-imposition or continuance of the automatic stay of section 362(a) of the

Bankruptcy Code, or other injunctive relief request.

23.     **Remedies.**  If, subject to its rights in the Collateral as set forth herein, the DIP

Agent, any DIP Lender, the Prepetition Agent or any Prepetition Lender shall at any time exercise

any of their respective rights and remedies hereunder or under applicable law, including without

limitation, foreclosing upon and selling all or a portion of the Collateral, the DIP Agent, such DIP

Lender, the Prepetition Agent and such Prepetition Lender shall have the right without any further

action or approval of this Court (but subject to its rights in the Collateral as set forth herein) to

exercise such rights and remedies as to all or such part of the Collateral as the DIP Agent, DIP

Lender, Prepetition Agent or Prepetition Lender shall elect in its sole discretion, subject to the

provision by the applicable DIP Agent, DIP Lender, Prepetition Agent or Prepetition Lender of the

written notice as provided in paragraph 22 above.  The DIP Agent, DIP Lender, Prepetition Agent or

Prepetition Lender, as applicable, shall be entitled to apply the payments or proceeds of the

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

1    Collateral in accordance with the provisions of this Order and, as applicable, the provisions of the

2    DIP Loan Documents or Prepetition Financing Documents.

3       24. **Reservation of Prepetition Agent and Prepetition Lender Rights.** Except

4    as set forth herein, the entry of this Order is without prejudice to, and does not constitute a waiver

5    of, expressly or implicitly, or otherwise impair any of the rights of the Prepetition Agent or any of

6    the Prepetition Lenders under the Bankruptcy Code or under any non-bankruptcy law, including,

7    without limitation, the right of any of the Prepetition Agent or Prepetition Lenders to (i) request

8    termination, lifting or modification of the automatic stay of section 362 of the Bankruptcy Code,

9    (ii) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to a

10   case or cases under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or

11   examiner (including with expanded powers), (iii) request additional restrictions upon the Debtors'

12   business activities or use of the Cash Collateral, (iv) request termination or modification of this

13   Order, (v) request additional adequate protection, (vi) propose, subject to the provisions of section

14   1121 of the Bankruptcy Code, a chapter 11 plan or plans, (vii) oppose any request to use Cash

15   Collateral without the consent of the Prepetition Agent, or (viii) exercise or assert any other rights,

16   claims or privileges (whether legal, equitable or otherwise) of any of the Prepetition Agent or the

17   Prepetition Lenders.

18      25. **No Waiver.** This Order shall not be construed in any way as a waiver or

19   relinquishment of any rights that the DIP Agent, DIP Lenders, Prepetition Agent or Prepetition

20   Lenders may have to bring or be heard on any matter brought before this Court, including, without

21   limitation, any matter in connection with any act or omission of the Debtors or their representatives.

22   The failure or delay by the DIP Agent, DIP Lenders, Prepetition Agent or Prepetition Lenders to

23   seek relief or otherwise exercise its rights and remedies under this Order shall not constitute a

24   waiver of any of the rights of same hereunder or under any of the DIP Loan Documents or

25   Prepetition Financing Documents (as applicable) or otherwise, and any single or partial exercise of

26   such rights and remedies against any of the Debtors or the Collateral shall not be construed to limit

27   any further exercise of such rights and remedies against any or all of the other Debtors and/or

28   Collateral.

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

#4844-6890-4199 -37-

26.    **Valid and Binding.**  This Order shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors and their estates in accordance with their terms.  No obligation, payment, transfer or grant of security under this Order shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or any applicable nonbankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

27.    **Successor and Assigns.**  The provisions of this Order shall be binding upon and inure to the benefit of each of the DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders and the Debtors and their respective successors and assigns (including any trustee or fiduciary hereafter appointed or elected as a legal representative of any of the Debtors, their estates, or with respect to the property of any of their estates) whether in the Chapter 11 Cases, in any successor cases, or upon dismissal of any such chapter 11 or chapter 7 case.

28.    **Allowance of Liens and Claims.**  The Prepetition Indebtedness and Prepetition Agent's security interests in and liens on the Prepetition Collateral are (a) valid, binding, in full force and effect, not subject to any claims, counterclaims, setoff or defenses (other than the Reserved Claims and Defenses described in paragraph 29 below), (b) perfected and senior to all other liens upon and claims against the Prepetition Collateral and the Prepetition Indebtedness (c) allowed claims under sections 502 and 506 of the Bankruptcy Code in each of the Chapter 11 Cases, and (d) the provisions of paragraph D of this Order are binding on all parties in interest (with the exception that the Debtors' admissions as set forth in clause (iii) of paragraph D.9. shall not constitute an admission by the Prepetition Agent or any of the Prepetition Lenders for any purpose, including, without limitation, in connection with any subsequently conducted valuation of the Collateral under section 506(b) or any other provision of the Bankruptcy Code or Bankruptcy Rules and as set forth in the final sentence of this paragraph 28).  For the avoidance of doubt, nothing in this paragraph 28 or the provisions of paragraph D of this Order shall waive, release, impair, or hinder the Reserved Claims and Defenses

29.    **Release of Claims and Defenses.**  Each Debtor in its individual capacity forever releases, waives and discharges the Prepetition Agent and each of the Prepetition Lenders (whether in their prepetition or postpetition capacity), together with their respective officers,

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

directors, employees, agents, attorneys, professionals, affiliates, subsidiaries, assigns and/or successors (collectively, the "Released Parties"), from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the Prepetition Financing Documents, any aspect of the prepetition relationship between any Debtor relating to any of the Prepetition Financing Documents or any transaction contemplated thereby, on the one hand, and any or all of the Released Parties, on the other hand, or any other acts or omissions by any or all of the Released Parties in connection with any of the Prepetition Financing Documents or their prepetition relationship with any Debtor or any affiliate thereof relating to any of the Prepetition Financing Documents or any transaction contemplated thereby, including, without limitation, any claims or defenses as to the extent, validity, priority or perfection of the Prepetition Liens or Prepetition Indebtedness, "lender liability" claims and causes of action, any actions, claims or defenses under chapter 5 of the Bankruptcy Code or any other claims and causes of action (all such claims, defenses and other actions described in this paragraph are collectively referred to as the "Claims and Defenses"); provided, however, that (i) nothing herein shall affect any party's rights, including the Debtors' Claims and Defenses, with respect to the Luxor Exit Financing Dispute (the "Reserved Claims and Defenses") and (ii) that the Reserved Claims and Defenses are subject to the Plan Support Agreement.

30.    **Controlling Effect of Order.**  To the extent any provision of this Order conflicts with any provision of the Motion, any documents executed or delivered prior to the Petition Date, or any DIP Loan Documents, the provisions of this Order shall control.  This Order shall supersede and control any Cash Collateral Order.

31.    **No Third Party Rights.**  Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder, or any other direct, indirect or incidental beneficiary.

32.    **Additional Debtors.**  Any "affiliate" (as defined by section 101(2) of the Bankruptcy Code, "Affiliate") of any Debtor that hereafter becomes a debtor in a case under chapter 11 of the Bankruptcy Code in this Court automatically and immediately, upon the filing of a petition for relief for such Affiliate, shall be deemed to be one of the "Debtors" hereunder in all respects, the

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

chapter 11 case of such Affiliate shall be deemed to be a "Chapter 11 Case" hereunder in all respects and all of the terms and provisions of this Order, including, without limitation, those provisions granting liens on the Collateral of each of the Debtors and claims in each of the Chapter 11 Cases, automatically and immediately shall be applicable in all respects to such Affiliate and its chapter 11 estate; provided, however, no Cash Collateral may be used by or for the benefit of such affiliate unless the DIP Agent, in its sole discretion, approves such use, in writing.

33.    **Prepetition Credit Agreements Master Proofs of Claim**.  Notwithstanding anything to the contrary in any order entered in these cases establishing deadlines for the filing of proofs of claim in the Bankruptcy Cases, neither the Prepetition Agents nor any Prepetition Lender shall be required to file a proof of claim for any claim arising under the Prepetition Financing Documents or hereunder.  Nor shall either Prepetition Agent be required to file a verified statement pursuant to Bankruptcy Rule 2019.  But, each Prepetition Agent shall (to the extent necessary) be authorized (but not required) to file a master proof of claim against the Debtors (each a "Master Proof of Claim") on behalf of itself and the applicable Prepetition Lenders on account of their respective prepetition claims arising under the Prepetition Financing Documents.  If either Prepetition Agent should file a Master Proof of Claim against the Debtors, the applicable Prepetition Agent and each Prepetition Lender (as applicable) and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in respect of its claims against the Debtors arising under the respective Prepetition Financing Documents, and, subject to Order Approving Settlement Among The Debtors, The Agent, And The Prepetition Secured Lenders Pursuant To Fed. R. Bankr. P. 9019 [Docket No. 415], such shall be allowed or disallowed as if such entity had filed a separate proof of claim in each Chapter 11 Case in the amount set forth in the applicable Master Proof of Claim.  Each Prepetition Agent shall further be authorized to amend any Master Proof of Claim it has filed from time to time.

34.    **Plan Support Agreement Approved on a Final Basis**.  Pursuant to sections 105, 363, and 1125(b) of the Bankruptcy Code, the Debtors and the other parties to the Plan Support Agreement are hereby authorized, on a final basis, to enter into the Plan Support Agreement, to perform all obligations thereunder and to take any and all actions necessary and appropriate to enter

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

1    into and implement the terms of the Plan Support Agreement and the Plan Term Sheet attached

2    thereto.

3          35.    **Authorization to Act**.  The Debtors are authorized and empowered to do and

4    perform all acts, to make, execute and deliver all instruments and documents and to pay interest,

5    fees and all other amounts as provided under this Order and the DIP Loan Documents, which may

6    be reasonably required or necessary for the Debtors to fully and timely implement and effectuate

7    this Order, including, without limitation:

8          (i)    the execution of the DIP Loan Documents;

9          (ii)    the non-material modification or amendment of the DIP Loan

10    Agreement or any other DIP Loan Documents without further order of this Court, in each case, in

11    such form as the Debtors and the DIP Agent may agree and subject to the provisions of the DIP

12    Loan Documents; provided, however, that notice of any material modification or amendment shall

13    be provided to (a) counsel for the Prepetition Agent and Luxor and (b) be subject to approval by this

14    Court; and

15          (iii)    the making of non-refundable payments to the DIP Agent or the DIP

16    Lenders, as the case may be, of the fees referred to in the DIP Loan Agreement, and reasonable costs

17    and expenses as may be due from time to time as provided in this Order, including, without

18    limitation, reasonable attorneys' and other professional fees and disbursements as provided in the

19    DIP Loan Documents.

20          36.    **Notice of Final Hearing.**  The Debtors shall promptly serve by United States

21    mail, first class postage prepaid a notice of the Final Hearing (the "Final Hearing Notice") to be held

22    on January 12, 2011 at 10:00 a.m. (the "Final Hearing") to consider entry of the Final DIP Order on

23    the Interim Notice Parties.  Copies of this Order and the Final Hearing Notice also shall be served

24    upon all persons requesting service of papers pursuant to Bankruptcy Rule 2002 by United States

25    mail, first class postage prepaid promptly following the receipt of such request.  The Final Hearing

26    Notice shall state that any party in interest objecting to the entry of the Final DIP Order shall file

27    written objections with the Court no later than fourteen days prior to the Final Hearing (the

28    "Objection Deadline"), which objections shall be served so that the same are received on or before

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

1  such date and time by: (a) Hennigan, Bennett & Dorman LLP, 865 S. Figueroa St., Suite 2900, Los

2  Angeles, California 90017, Attn: Joshua M. Mester, counsel to the Debtors, (b) Milbank, Tweed,

3  Hadley & McCloy LLP, 601 S. Figueroa St., 30th Floor, Los Angeles, CA 90017, Attn: Mark

4  Shinderman and David B. Zolkin, counsel to the Prepetition Agent and the DIP Agent; (c) Gibson,

5  Dunn & Crutcher, LLP, 200 Park Avenue, New York, NY 10166-0193, Attn: David Feldman and

6  Matthew Kelsey, counsel to Luxor; and (d) the Office of the United States Trustee, 11 West Fourth

7  St. Suite 9041, Santa Ana, CA 92701, provided however, that the Objection Deadline for the

8  Prepetition Agent may be extended with the consent of the Debtors to a date no later than five days

9  prior to the Final Hearing without further order of this Court.

10          37.  **Findings of Fact and Conclusions of Law.**  This Order shall constitute

11  findings of fact and conclusions of law pursuant to Rule 7052 of the Bankruptcy Rules and shall

12  take effect and be fully enforceable immediately upon execution hereof.

13          38.  **Jurisdiction.**  The Court has and will retain jurisdiction to enforce this Order

14  according to its terms.

15          39.  **Shortening Time for Hearing on Disclosure Statement**.  For good cause

16  shown pursuant to Local Bankruptcy Rule 3017-1, the Court hereby shortens the notice period for

17  consideration of approval of a disclosure statement.  To the extent that the Debtors file a disclosure

18  statement on or before December 20, 2010, a hearing to consider any motion for approval of such

19  disclosure statement shall be held on January 12, 2011 at 10:00 a.m. and any objections to approval

20  of such disclosure statement shall be filed no later than January 5, 2011 at 5:00 p.m. Pacific Time.

21

22

23  DATED: December 21, 2010

_Theodor C. Albert_
United States Bankruptcy Judge

24

25

26

27

28

Hennigan, Bennett & Dorman llp
lawyers
los angeles, california

| In re: | CHAPTER: 11 |
|---|---|
| ☐ CALIFORNIA COASTAL COMMUNITIES, INC | CASE NUMBER: 8:09-21712-TA |
| ☐ SIGNAL LANDMARK HOLDINGS INC. | |
| ☐ SIGNAL LANDMARK | |
| ☐ HEARTHSIDE HOLDINGS, INC. | |
| ☐ HEARTHSIDE HOMES, INC. | |
| ☐ HHI CHANDLER, L.L.C. | |
| ☐ HHI CHINO II, L.L.C. | |
| ☐ HHI CROSBY, L.L.C. | |
| ☐ HHI HELLMAN, L.L.C. | |
| ☐ HHI LANCASTER I, L.L.C. | |
| ☐ HHI SENECA, L.L.C. | |
| ☒ All Debtors. | |

## NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled **INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 364 OF THE BANKRUPTCY CODE (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND USE CASH COLLATERAL, (II) GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS, (III) GRANTING ADEQUATE PROTECTION AND FINAL ORDER APPROVING PLAN SUPPORT AGREEMENT AMONG DEBTORS AND PREPETITION LENDERS AND (IV) SHORTENING TIME FOR NOTICE OF AND HEARING ON DISCLOSURE STATEMENT** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of December 16, 2010, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case to receive NEF transmission at the email addresses indicated below.

    Mark Bradshaw – mbradshaw@shbllp.com
    Richard W. Brunette – rbrunette@sheppardmullin.com
    Robert H. Garretson – rgarretson@ptwww.com
    Nancy S. Goldenberg – nancy.goldenberg@usdoj.gov
    Aluyah I. Imoisili - aimoisili@milbank.com
    Harold D. Israel – hisrael@kayescholer.com
                jben@kayescholer.com
                ssolow@kayescholer.com
    Ralph L. Landy – efile@pbgc.gov
    Joshua M. Mester – mesterj@hbdlawyers.com
    Craig Millet - cmillet@gibsondunn.com
                pcrawford@gibsondunn.com
    Rosana Miramontes - rosana.miramontes@doj.ca.gov
    Randy Orlik – rorlik@coxcastle.com
    Kirsten A. Roe – kroe@wthf.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                **F 9021-1.1**

dfunsch@wthf.com
Kenneth N. Russak – krussak@frandzel.com
efiling@frandzel.com
banderson@frandzel.com
Joel G. Samuels – jsamuels@sidley.com
United States Trustee (SA) – ustpregion16.sa.ecf@usdoj.gov
Delilah Vinzon - dvinzon@milbank.com
Michael A. Wallin – mwallin@sheppardmullin.com

☐ Service information continued on attached page

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following entity at the address indicated below:

California Coastal Communities, Inc.
6 Executive Circle, Suite 250
Irvine, CA 92614

☐ Service information continued on attached page

**III.  TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                          **F 9021-1.1**