HENNIGAN, BENNETT & DORMAN LLP
BRUCE BENNETT (Cal. Bar No. 105430)
JOSHUA M. MESTER (Cal. Bar No. 194783)
MICHAEL C. SCHNEIDEREIT (Cal. Bar No. 234956)
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200
Fax: (213) 694-1234

*Reorganization Counsel for*
*Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

In re:

☐ CALIFORNIA COASTAL
  COMMUNITIES, INC.
☐ SIGNAL LANDMARK HOLDINGS INC.
☐ SIGNAL LANDMARK
☐ HEARTHSIDE HOLDINGS, INC.
☐ HEARTHSIDE HOMES, INC.
☐ HHI CHANDLER, L.L.C.
☐ HHI CHINO II, L.L.C.
☐ HHI CROSBY, L.L.C.
☐ HHI HELLMAN, L.L.C.
☐ HHI LANCASTER I, L.L.C.
☐ HHI SENECA, L.L.C.

☒ All Debtors

                    Debtors.

Case No. 8:09-21712-TA

Jointly Administered with Case Nos.
8:09-21713-TA; 8:09-21714-TA;
8:09-21715-TA; 8:09-21717-TA;
8:09-21718-TA; 8:09-21719-TA;
8:09-21720-TA; 8:09-21721-TA;
8:09-21722-TA; 8:09-21723-TA

Chapter 11

**DEBTORS' SUBMISSION OF
(I) PROPOSED SUMMARY OF
DISCLOSURE STATEMENT; AND
(II) EXHIBIT E TO DISCLOSURE
STATEMENT**

Hearing

Date: January 12, 2011
Time: 10:00am
Place: Courtroom "5B"
       411 West Fourth Street
       Santa Ana, CA 92701

-1-

California Coastal Communities, Inc. and its affiliated debtors and debtors in possession herein (collectively, the "Debtors") hereby submit the following documents in connection with approval of the Debtors' Disclosure Statement (the "Disclosure Statement") for their Sixth Amended Joint Plan of Reorganization dated December 20, 2010:

A.    Attached hereto as Exhibit 1 is the Debtors' proposed summary of the Disclosure Statement.

B.    Attached hereto as Exhibit 2 is the Debtors' liquidation analysis to be attached as Exhibit E to the Disclosure Statement.

DATED: January 12, 2011

HENNIGAN, BENNETT & DORMAN LLP
865 South Figueroa Street, Suite 2900
LOS ANGELES, CA 90017

By: */s/ Joshua M. Mester*
      Bruce Bennett
      Joshua M. Mester
      Michael C. Schneidereit

*Reorganization Counsel for the Debtors and Debtors in Possession*

# EXHIBIT 1

HENNIGAN, BENNETT & DORMAN LLP
BRUCE BENNETT (Cal. Bar No. 105430)
JOSHUA M. MESTER (Cal. Bar No. 194783)
MICHAEL C. SCHNEIDEREIT (Cal. Bar No. 234956)
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200
Fax: (213) 694-1234

*Reorganization Counsel for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA DIVISION**

| | |
|---|---|
| *In re* | Case No. 8:09-21712-TA |
| ☐ CALIFORNIA COASTAL COMMUNITIES, INC. | Jointly Administered with Case Nos. 8:09-21713-TA; 8:09-21714-TA; 8:09-21715-TA; 8:09-21717-TA; 8:09-21718-TA; 8:09-21719-TA; 8:09-21720-TA; 8:09-21721-TA; 8:09-21722-TA; 8:09-21723-TA |
| ☐ SIGNAL LANDMARK HOLDINGS, INC. | |
| ☐ SIGNAL LANDMARK | |
| ☐ HEARTHSIDE HOLDINGS, INC. | |
| ☐ HEARTSIDE HOMES, INC. | |
| ☐ HHI CHANDLER, L.L.C. | |
| ☐ HHI CHINO II, L.L.C. | Chapter 11 |
| ☐ HHI CROSBY, L.L.C. | |
| ☐ HHI HELLMAN, L.L.C. | **SUMMARY OF DISCLOSURE STATEMENT FOR SIXTH AMENDED PLAN OF REORGANIZATION DATED DECEMBER 20, 2010** |
| ☐ HHI LANCASTER I, L.L.C. | |
| ☐ HHI SENECA, L.L.C. | |
| ☒ All Debtors | |
| Debtors. | |

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS SUMMARY OF THE AMENDED DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT**

778943.4

California Coastal Communities, Inc. (OTCQB: CALCQ); Signal Landmark Holdings Inc.; Signal Landmark; Hearthside Holdings, Inc.; Hearthside Homes, Inc.; HHI Lancaster I, L.L.C.; HHI Chandler, L.L.C.; HHI Chino II, L.L.C.; HHI Crosby, L.L.C.; HHI Hellman, L.L.C.; and HHI Seneca, L.L.C. (collectively, the "Debtors") are residential land development and homebuilding companies with properties located primarily in Orange County and Los Angeles County, California. Once the Debtors' residential land is entitled, the Debtors build homes, sell unimproved land to other developers or homebuilders, sell improved land to homebuilders, or participate in joint ventures with other developers, investors or homebuilders to finance and construct infrastructure and homes. The Debtors' largest project is Brightwater, a 356-unit master planned community located in the City of Huntington Beach overlooking the Pacific Ocean.

The Debtors have filed a Sixth Amended Joint Plan of Reorganization dated December 20, 2010 (the "Plan") that provides for a financial reorganization of the Debtors and for the treatment of all claims against and interests in the Debtors. The Debtors have also prepared an amended disclosure statement (the "Disclosure Statement") that describes the Plan, the Debtors' business and financial results, and contains additional information to help you to make an informed judgment about the Plan. Each creditor that has the right to vote on the Plan should read the Disclosure Statement, the Plan, the order approving the Disclosure Statement, the ballots to vote to accept or reject the Plan, and the instructions accompanying the ballots, and the accompanying notice regarding certain deadlines for confirmation of the Plan in their entirety before voting to accept or reject the Plan.

This memorandum briefly summarizes the treatment proposed for creditors and shareholders under the Plan and certain other factors for your consideration.

**I.     WHAT CREDITORS WILL RECEIVE UNDER THE PLAN.**

    **A.     Claims Against The Reorganizing Debtors.**

Under the Plan, California Coastal Communities, Inc., Signal Landmark Holdings, Inc., Signal Landmark, Hearthside Holdings, Inc., Hearthside Homes, Inc., and HHI Lancaster I, LLC will continue to operate their businesses after emerging from chapter 11. These entities are referred

778943.4

to as the "Reorganized Debtors" in the Plan. The Plan identifies the following types of claims against the Reorganized Debtors:

### 1. Revolver Loan Claims.

Under the Plan, holders of Revolver Loan Claims will receive a *pro rata* share of $81,679,317.58 in principal amount of New Second Lien Loans. The New Second Lien Loan shall have a total principal amount of $82,679,317.58, shall mature on the fifth anniversary of the effective date, shall bear interest at the variable rate of LIBOR plus 7.5% with a LIBOR floor of 2.5% for an initial annual interest rate of 10% payable in cash, and shall have the other terms and conditions set forth on Exhibit 4.1.1 to the Plan.

### 2. Prepetition Term Loan Claims.

Under the Plan, holders of Term Loan Claims will receive a *pro rata share* of New Third Lien Loans and 100% of the New CALC Common Stock. The New Third Lien Loans shall have a principal amount of $44,000,000, mature on the first business day prior to the sixth anniversary of the effective date, shall bear interest at the fixed rate of 15% to be payable in kind, and shall have the other terms and conditions set forth on Exhibit 4.1.2 to the Plan.

### 3. Administrative Expense Claims.

The Plan provides that holders of claims entitled to an administrative expense priority will be paid in full on the date that the Plan becomes effective or when their claim becomes allowed, whichever is later. Holders of administrative expense claims are not entitled to vote to accept or reject the Plan.

### 4. Priority Tax Claims.

The Plan provides that holders of tax claims that are entitled to a priority under the Bankruptcy Code either (a) will be paid in full, in cash on the later of (i) the date that the Plan becomes effective and (ii) the date the tax claim becomes allowed Claim, or as soon thereafter as practicable, or (b) will be paid in full in equal annual cash payments aggregating the amount of such tax claim, together with interest at the applicable non-bankruptcy rate over a period not exceeding five (5) years after the date on which the bankruptcy cases commenced. Holders of priority tax claims are not entitled to vote to accept or reject the Plan.

### 5. Priority Claims.

The Plan provides that holders of claims entitled to any other priority under the Bankruptcy Code, such as claims for wages or commissions, will be paid in full on or about the date that the Plan becomes effective. Holders of priority claims are not entitled to vote to accept the Plan.

### 6. Unsecured Claims.

The Plan provides that unsecured creditors with claims under $10,000 will receive payment in full on the effective date. Holders of unsecured claims in excess of $10,000 will also have the option of reducing their claims to $10,000 and receive a cash payment of $10,000 in full satisfaction of their claim. For holders of unsecured claims in excess of $10,000, those creditors will receive a pro rata share of a trust that will be funded with cash over a two-year period. The amount deposited into the trust and available for distribution to unsecured creditors will depend on whether unsecured creditors vote to accept the Plan. Subject to Section 5.14 of the Plan, if unsecured creditors vote to accept the Plan, then the trust will be funded with a total amount of $2,000,000. Subject to Section 5.14 of the Plan, if unsecured creditors do not vote to accept the Plan, the trust will be funded with a total amount of $1,000,000. Unsecured creditors will not receive payment of interest on account of their claims. Unsecured creditors are entitled to vote to accept or reject the Plan.

Additional information concerning the trust for unsecured creditors under the Plan is contained in section III.D of the Disclosure Statement.

### 7. Shareholders of California Coastal Communities, Inc.

The Plan provides that holders of common stock in California Coastal Communities, Inc. will not receive any distribution under the Plan and will have their common stock in California Coastal Communities, Inc. cancelled. Shareholders of California Coastal Communities, Inc. are not entitled to vote to accept or reject the Plan.

Additional information concerning distributions by the Reorganized Debtors under the Plan is contained in section III.B of the Disclosure Statement.

**II.   CLAIMS AGAINST INACTIVE DEBTORS.**

Under the Plan, HHI Chandler, LLC, HHI Chino II, LLC, HHI Crosby, LLC, HHI Hellman, LLC or HHI Seneca, LLC will cease operations and be dissolved. These entities are referred to as

the "Inactive Debtors" in the Plan.  Holders of administrative claims, priority tax claims, priority claims, Prepetition Revolver Claims, Prepetition Term Loan Claims, and unsecured claims will not receive a distribution on account of their claims against the Inactive Debtors.

Additional information concerning the treatment of claims against the Inactive Debtors under the Plan is contained in section III.B.3 of the Disclosure Statement.

### III. MEANS OF IMPLEMENTATION/FUNDING OF THE PLAN.

As indicated above, holders of Term Loan Claims (the aggregate principal amount of which total $99,800,000) will receive a *pro rata share* of New Third Lien Loans (the aggregate principal amount of which total $44,000,000) and 100% of the New CALC Common Stock.  In addition, certain holders of the Revolver Loan Claims and the Term Loan Claims (the "DIP Lenders") have agreed to provide to the Debtors postpetition financing of $15,000,000 to provide the Debtors with additional liquidity.  The DIP Lenders have further agreed, subject to the terms and conditions of the Plan to convert such postpetition financing into the New First Lien Loans.

The additional liquidity, reduced leverage and favorable terms of the New First Lien Loans, New Second Lien Loans and New Third Lien Loans are essential to the Debtors' ability to implement the Plan and exit these bankruptcy cases.

### IV. FEASIBILITY.

To confirm the Plan, the Bankruptcy Court must find that confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors and is therefore "feasible."  The Debtors have prepared forecasts of their operations for the four-year period after exiting bankruptcy to demonstrate that the Debtors believe that they will be able to perform their obligations under the Plan.  Those projections are included with the Disclosure Statement as Exhibit D.  Additional information concerning the feasibility of the Plan is contained in section VIII.F of the Disclosure Statement.

### V. TAX CONSEQUENCES OF THE PLAN.

The federal income tax consequences of the Plan are complex and are subject to significant uncertainties.  In general, you may recognize a gain or loss as a result of the distribution that you receive under the Plan or the discharge of your claim.  The gain or loss will generally be equal to the

difference between (i) the "amount realized" in satisfaction of your claim (other than a claim for accrued but unpaid interest) and (ii) your adjusted tax basis in your claim (other than any Claim for accrued but unpaid interest). The "amount realized" will generally be equal to the amount of any cash received. The Disclosure Statement contains a fuller description of the potential tax consequences resulting from the payments that you will receive under the Plan. You are urged to consult a tax advisor regarding the tax consequences of the distributions that you receive under the Plan, including the allocation of payments between principal and interest and the deductibility of unpaid interest for tax purposes. Additional information concerning the tax consequences of the Plan is contained in section IX of the Disclosure Statement.

**VI.   RISKS TO THE PLAN.**

    **A.   The Homebuilding Industry Has Undergone A Significant And Sustained Downturn.**

The homebuilding and mortgage lending industries have experienced a significant and sustained downturn as a result of, among other things: reduced consumer confidence; significant concerns over the impact of higher-risk mortgage loan products on the banking system and financial markets; reduced availability and higher costs of mortgage loan financing; the absence of home price stability; and continued declines in the value of new homes. All of these factors, in an economy that was in recession from December 2007 to June 2009 and appears to be slowly recovering, have contributed to the significant decline in the demand for new homes. If the downturn in the homebuilding and mortgage lending industries continues or the recovery occurs slower than expected, the Debtors could experience further declines in the market value and demand for their homes, which could have a significant negative impact on their gross margins from home sales and financial and operational results. The Debtors can provide no assurances that the homebuilding market will improve in the near future.

    **B.   The Reorganized Debtors will have Substantial Indebtedness.**

Following the effectiveness of the Plan, although the Debtors will be relieved of substantial indebtedness, the Debtors will still have a significant amount of indebtedness and other fixed obligations. The amount of the Debtors debt obligations could have important consequences,

including, but not limited to: (i) making it more difficult to pay interest and satisfy debt obligations, (ii) increasing the Debtors' vulnerability to general adverse economic and industry conditions, (iii) requiring the dedication of a substantial portion of the Debtors' cash flow from operations for the payment of indebtedness and interest thereon, thereby reducing the availability of the cash flow to fund working capital or other general corporate requirements of the Debtors, (iv) limiting the ability of the Debtors to obtain additional financing, and (v) placing the Debtors at a competitive disadvantage compared to less leveraged competitors.

**C.     There are Risks Related to the New Loans Issued under the Plan.**

The New Credit Agreements for the new loans issued pursuant to the Plan will require the Reorganized Debtors to comply with certain financial and operational covenants following the effective date. These include limitations on the incurrence of indebtedness and in certain circumstances, minimum home sales. There can be no assurance that a default or potential default will not arise under the covenants or other terms of the New Credit Agreements. Such a default or potential default may have the effect of limiting or prohibiting payments required to be made under the Plan.

**D.     The Homebuilding Industry Is Highly Competitive.**

The homebuilding industry is highly competitive. The Debtors compete with numerous other residential construction firms, including large national and regional firms, for customers, land, financing, raw materials, skilled labor and employees. The Debtors compete for customers primarily on the basis of the location, design, quality and price of their homes and the availability of mortgage financing. Some of the competitors have substantially larger operations and greater financial resources than the Debtors do and as a result may have lower costs of capital, labor and materials, and may be able to compete more effectively. However, there is a very limited supply of land entitled for residential development along the coast of Southern California, and the Brightwater project offers a unique location that is expected to attract more home buyers as the housing market recovers.

Additional information concerning risks to the Plan is contained in section VII of the Disclosure Statement.

**VII.    ADDITIONAL INFORMATION.**

The Notice that accompanied this memorandum has important information regarding dates related to confirmation of the Plan, including the deadline to submit ballots to accept or reject the Plan, the deadline to object to confirmation of the Plan, and the date of the hearing to consider confirmation of the Plan.  If you have any questions or require further information about the voting procedure for voting your claim or about the packet of material you received, or if you wish to obtain an additional copy of the Plan, this Disclosure Statement, or any exhibits or appendices to such documents (at your own expense, unless otherwise specifically required by Bankruptcy Rule 3017(d)), please contact Hennigan, Bennett & Dorman LLP:

> Hennigan, Bennett & Dorman LLP
> Attention:  Mr. Kevin Floyd
> 865 S. Figueroa St., Suite 2900
> Los Angeles, CA  90017
> Telephone: 213-694-1200
> Email:  CALCbkcase@hbdlawyers.com

**VIII.    CONCLUSION.**

For all of the reasons set forth in this memorandum and the Disclosure Statement, the Debtors believe that the confirmation and consummation of the Plan is preferable to all other alternatives.  Consequently, the Debtors urge you to vote to accept the Plan by duly completing and returning your ballots so that they will be received on or before the voting deadline.

DATED: January __. 2011

By:_____
Raymond J. Pacini
Chief Executive Officer
California Coastal Communities, Inc.

# EXHIBIT 2

# EXHIBIT E
# Liquidation Analysis

The Liquidation Analysis reflects the Debtors' estimate of a hypothetical chapter 7 liquidation of California Coastal Communities, Inc., Signal Landmark, HHI Lancaster I, LLC, and Hearthside Homes, Inc.

I.   Secured Claims Against the Debtors' Assets

Pursuant to the various cash collateral orders that have been entered in the case, the Debtors have stipulated that the holders of Revolving Loan Claims and Term Loan Claims were fully secured as of the Petition Date in an amount in excess of $181,400,000.  In exchange for the right to use cash collateral and to protect the Prepetition Secured Lenders against diminution in value resulting from the imposition of the automatic stay and the use of their collateral, the various cash collateral orders granted the Prepetition Secured Lenders with liens against all of the Debtors' assets to the extent of any diminution in value of the original prepetition collateral.

In addition, the Debtors have incurred, or are expected to incur, $15 million in postpetition financing that is secured by all of the Debtors' assets and is senior to the liens in favor of the Prepetition Secured Lenders.

II.   The Brightwater Project and Other Assets

The Liquidation Analysis assumes that Hearthside Homes, Inc. ceases operations and a chapter 7 trustee markets and sells the Brightwater project, the Ridge, and real property owned by HHI Lancaster I, LLC within three months.  The Liquidation Analysis further assumes that the sale price obtained by a chapter 7 trustee for Brightwater would take into account that a purchaser would incur increased property taxes with respect to Brightwater, that it would take between six to 12 months to restart the permitting process, construction and sales efforts at Brightwater, and that the purchaser would expect to incur additional costs.  Based upon these assumptions, the Debtors' estimate that a liquidation of the Debtors' assets would result in the following, prior to considering costs of sale.

| Asset | Gross Liquidation Proceeds |
|---|---|
| Cash | $ 14,200,000 |
| Brightwater Project | $130,000,000 |
| The Ridge | $  2,500,000 |
| Lancaster Lots | $     200,000 |
| Other Personal Property | *de minimis* |

    III.    Costs of Sale

Costs of sale for real estate projects, such as Brightwater, The Ridge, and the Lancaster lots are assumed to be 8% of the sales prices for such properties based upon a range of possible commissions charged by land brokers.

    IV.    Claims

The DIP Lenders have a first priority security interest in the Debtors' cash collateral. The Liquidation Analysis assumes that the Debtors' cash would be used to reduce the amounts outstanding under the DIP Facility. Any remaining unpaid amounts under the DIP Facility would then be satisfied from the Debtors' remaining assets, including the Brightwater Project. After satisfaction of the DIP Facility, the remaining Brightwater Project proceeds would be paid to the Prepetition Secured Lenders, which would result in a deficiency claim in excess of $50,000,000. Under the cash collateral orders, the Prepetition Secured Lenders' deficiency claim would be treated as an adequate protection claim entitled to a lien against the Debtors' remaining assets. As shown above, the liquidation value of the remaining assets is less than the Prepetition Secured Lenders' hypothetical adequate protection claim. Accordingly, there would be no remaining assets available for distribution to administrative, priority, or unsecured creditors.

    V.    Remaining Debtors

This Liquidation Analysis further assumes that the Inactive Debtors, Hearthside Holdings, Inc., and Signal Landmark Holdings, Inc. are found to be no-asset cases that would not be administered by a chapter 7 trustee.

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case.  My business address is:

Hennigan, Bennett & Dorman LLP
865 S. Figueroa Street, Suite 2900
Los Angeles, CA 90017

True and correct copies of the foregoing document described <u>Debtors' Submission of (I) Proposed Summary of Disclosure Statement; and (II) Exhibit E to Disclosure Statement</u> were served in the manners indicated below:

**I. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>**: Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On <u>January 12, 2011</u>, I checked the CM/ECF docket for this bankruptcy case and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses indicated below:

**SEE ATTACHED SERVICE LIST**

&boxtimes;    Service information continued on attached page

**II. <u>TO BE SERVED BY U.S. MAIL</u>**: On <u>January 12, 2011</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case by placing true and correct copies thereof in sealed envelopes in the United States Mail, first class, postage prepaid, addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

**SEE ATTACHED SERVICE LIST**

&boxtimes;    Service information continued on attached page

**III. <u>TO BE SERVED BY PERSONAL DELIVERY</u>**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>January 12, 2011</u>, the following person(s) and/or entity(ies) will be by personal delivery as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

**SEE ATTACHED SERVICE LIST**

&boxtimes;    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 12, 2011 | Kevin Floyd | /s/ Kevin Floyd |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

-1-

# SERVICE LIST

## I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF"):

Mark Bradshaw – mbradshaw@shbllp.com
Richard W. Brunette – rbrunette@sheppardmullin.com
Robert H. Garretson – rgarretson@ptwww.com
Nancy S. Goldenberg – nancy.goldenberg@usdoj.gov
Aluyah I. Imoisili - aimoisili@milbank.com
Harold D. Israel – hisrael@kayescholer.com
    jben@kayescholer.com
    ssolow@kayescholer.com
Ralph L. Landy – efile@pbgc.gov
Joshua M. Mester – mesterj@hbdlawyers.com
Craig Millet - cmillet@gibsondunn.com
    pcrawford@gibsondunn.com
Rosana Miramontes - rosana.miramontes@doj.ca.gov
Randy Orlik – rorlik@coxcastle.com
Kirsten A. Roe – kroe@wthf.com
    dfunsch@wthf.com
Kenneth N. Russak – krussak@frandzel.com
    efiling@frandzel.com
    banderson@frandzel.com
Joel G. Samuels – jsamuels@sidley.com
United States Trustee (SA) – ustpregion16.sa.ecf@usdoj.gov
Delilah Vinzon - dvinzon@milbank.com
Michael A. Wallin – mwallin@sheppardmullin.com
Andrew F. Whatnall – awhatnall@daca4.com

## II. TO BE SERVED BY U.S. MAIL:

### OFFICE OF THE U.S. TRUSTEE

United States Trustee
411 West Fourth Street, Suite 9041
Santa Ana, CA 92701

### TOP 25 CREDITORS (ON A CONSOLIDATED BASIS)

Judy Dickenson
Insurance Company of the West
11455 El Camino Real
San Diego, CA 92130

Freda Hampton
Grading Department
County of Orange
300 North Flower Street
Santa Ana, CA 92703

Valerie Oxford
Public Works Department
County of Orange
300 North Flower Street
Santa Ana, CA 92703

Ms. Terri Elliott
City of Huntington Beach
2000 Main Street
Huntington Beach, CA 92648

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

| | | |
|---|---|---|
| 1 | Anthony Lopilato<br>Comerica<br>2321 Rosecrans Avenue, 5th Floor<br>El Segundo, CA 90245 | Ralph Landy<br>PBGC<br>Office of the Chief Counsel<br>1200 K Street, N.W.<br>Washington, DC 20005-4026 |
| 4 | Nan Williams<br>County of Riverside, TLMA<br>4080 Lemon Street, Second Floor<br>Riverside, CA 92502 | Gina Armstrong<br>Public Works Department<br>City of Lancaster<br>44933 North Fern Avenue<br>Lancaster, CA 93534 |
| 7 | Deepak Moorjani<br>Public Works Department<br>City of Beaumont<br>550 East 6th Street<br>Beaumont, CA 92223 | David L. Wysocki<br>Aklufi & Wysocki<br>3403 10th St., Suite 610<br>Riverside, CA 92501 |
| 10 | Pamela Griggs<br>State Lands Commission of CA<br>100 Howe Avenue, Suite 100-South<br>Sacramento, CA 95825 | Robert Day<br>c/o Oakmont Corporation<br>865 S. Figueroa Street, Ste. 700<br>Los Angeles, CA 90071 |
| 13 | John Van Eck<br>100 Worth Avenue, # 512<br>Palm Beach, FL 33480 | Philip Beekman<br>c/o Owl Hollow Enterprises,<br>6693 E. Pleasant<br>Indianapolis, IN 46219 |
| 15 | Wheelabrator Technologies, Inc.<br>c/o Christina M. Padien<br>Akin Gump<br>2029 Century Park East, Suite 2400<br>Los Angeles, CA 90067 | Gerald Lewis<br>PO Box 325<br>Pauma Valley, CA 92061 |
| 18 | Pacific Masonry<br>c/o Law Office of Thomas Casey<br>22342 Avenida Empresa, Suite 260<br>Rancho Santa Margarita, CA 92688 | Norma Chavez, A/R<br>South Coast Cabinet<br>755 Pinefalls Avenue<br>Walnut, CA 92880 |
| 20 | Mark Scholten<br>Residential Design Services<br>4900 East Hunter Avenue<br>Anaheim, CA 92630 | Jerry Blum<br>Planning Director<br>City of Ontario<br>303 East B Street<br>Ontario, CA 91764 |
| 23 | Laurie Helms<br>Brightwater Maintenance Corp.<br>c/o Keystone Pacific Property Mgmt.<br>16845 Von Karman Avenue, Suite 200<br>Irvine, CA 92606 | Terry Russell<br>Vintage Design Services<br>22895 Eastpark Drive<br>Yorba Linda, CA 92887 |
| 26 | James Pattison<br>1800 1067 West Cordova Street<br>Vancouver, BC V6C1C7 | Bertram Firestone<br>Newstead Farm<br>33525 Newstead Lane<br>Upperville, VA 20184 |

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

| | |
|---|---|
| Steve Stein<br>Bova Contracting Corporation<br>3334 East Coast Highway, Suite 427<br>Corona Del Mar, CA 92625 | Noemi Guzman<br>BAS Appliance Gallery, LLC<br>17138 Von Karman Avenue<br>Irvine, CA 92614 |
| Jay W. Pruitt<br>IHP Capital Partners<br>19800 MacArthur Blvd., Suite 700<br>Irvine, CA 92612 | Frank Scardino<br>Gateway Plastering<br>966 North Amelia<br>San Dimas, CA 91773 |
| Will Milligan<br>Irvine Company Office Properties<br>111 Innovation Drive<br>Irvine, CA 92617 | |

### COUNSEL TO LENDERS

| | |
|---|---|
| Robert Jay Moore<br>Linda Dakin-Grimm<br>David Zolkin<br>Milbank, Tweed, Hadley & McCloy LLP<br>601 South Figueroa Street, 30th Floor<br>Los Angeles, CA 90017 | Matthew Barr<br>Milbank, Tweed, Hadley & McCloy LLP<br>One Chase Manhattan Plaza<br>New York, NY 10005 |

### PARTIES REQUESTING SPECIAL NOTICE

| | |
|---|---|
| T. Scott Leo<br>Grace Winkler Cranley<br>Leo & Weber, P.C.<br>One N. LaSalle Street, Suite 3600<br>Chicago, IL 60602<br>*Counsel for Insurance Company of the West* | Robert C. Niesley<br>Kirsten Roe<br>Watt, Tieder, Hoffar & Fitzgerald,<br>2040 Main Street, Suite 300<br>Irvine, CA 92614<br>*Counsel for Insurance Company of the West* |
| Norman J. Rodich<br>Robert H. Garretson<br>Palmieri, Tyler, Wiener, Wilhelm & Waldron<br>2603 Main Street, Suite 1300<br>Irvine, CA 92614<br>*Counsel for Palmieri, Tyler, Wiener, Wilhelm & Waldron* | Alan H. Martin<br>Michael A. Wallin<br>Sheppard, Mullin, Richter & Hampton<br>650 Town Center Drive, 4th Floor<br>Costa Mesa, CA 92626<br>*Counsel for IndyMac Venture, LLC* |

### GOVERNMENT AGENCIES

| | |
|---|---|
| Sarah D. Moyed<br>Securities and Exchange Commission<br>5670 Wilshire Blvd., 11th Floor<br>Los Angeles, CA 90036 | Internal Revenue Service<br>PO Box 21126<br>Philadelphia, PA 19114 |

1   **III.**   <u>**TO BE SERVED BY PERSONAL DELIVERY**</u>**:**

2                                        **JUDGE**

3   Hon. Theodor C. Albert
    U.S. Bankruptcy Court
4   411 West Fourth Street
    Santa Ana, CA 92701

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA